Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:     (757) 687-7768
Facsimile:     (757) 687-1505

Richard M. Cieri (*pro hac vice* pending)
Christopher J. Marcus (*pro hac vice* pending)
Michael A. Cohen (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Proposed Attorneys for the Debtor and
Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-_____ (___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## MOTION OF BEAR ISLAND PAPER COMPANY, L.L.C. FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND (B) MAINTAIN POSTPETITION FINANCING OF INSURANCE PREMIUMS

Bear Island Paper Company, L.L.C., as a debtor and debtor in possession ("Bear Island" or "Debtor"), files this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to (a) continue prepetition insurance policies and programs and (b) maintain premium financing agreements for insurance coverage entered into prepetition. In support of the Motion, the Debtor relies upon and incorporates by reference the Declaration of Edward D. Sherrick, Senior Vice President and Chief Financial Officer for Bear Island Paper Company, L.L.C., in Support of the Chapter 11 Petition and First

---

[1] The last four digits of the Debtor's federal tax identification number are 0914. The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

Day Pleadings (the "<u>Sherrick Declaration</u>"), filed concurrently herewith.[2]  In further support of the Motion, the Debtor respectfully states as follows:

**<u>Jurisdiction</u>**

1.      The United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Court</u>" or "<u>Bankruptcy Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 361, 363, 364, 503, 541 and 1112 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Local Bankruptcy Rules</u>").

**<u>Relief Requested</u>**

4.      By this Motion, the Debtor seeks an entry of an order authorizing the Debtor to (a) continue insurance coverage currently in effect and (b) maintain existing Financing Agreements (as defined herein) by authorizing White Birch Paper Company to record an intercompany charge against the Debtor in the approximate amount of $41,000 a month on account of coverage provided to Bear Island under certain of White Birch Paper Company's insurance policies.

---

[2]      Capitalized terms used but not otherwise defined shall have the meaning set forth in the Sherrick Declaration.

**Background**

5.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      Simultaneously with the commencement of this chapter 11 case, the Debtor's indirect parent -- White Birch Paper Holding Company ("WB Holding") -- and ten of WB Holding's direct and indirect Canadian subsidiaries (collectively the "CCAA Applicants," and, together with Bear Island, the "WB Group") have sought relief under the *Companies' Creditors Arrangement Act* (the "CCAA") in the Quebec Superior Court of Justice (the "Canadian Court") in Montreal, Quebec, Canada (the "CCAA Cases").[3]  So as to ensure consistency and comity among the courts overseeing these related cases, the Debtor and the CCAA Applicants intend to seek Bankruptcy Court and Canadian Court approval of a customary cross-border protocol that will govern procedures for, among other things, court-to-court communications and matters requiring approval by both Courts.  Moreover, six of the CCAA Applicants, contemporaneously herewith, are seeking relief under chapter 15 of the Bankruptcy Code.[4]

7.      The WB Group is the second-largest newsprint manufacturer in North America. In fact, as of December 31, 2009, the WB Group held a 12% share of the North American

---

[3]      The CCAA Applicants include (a) WB Holding, (b) White Birch Paper Company, (c) Stadacona General Partner Inc., (d) Black Spruce Paper Inc., (e) F.F. Soucy General Partner Inc., (f) 3120772 Nova Scotia Company, (g) Arrimage De Gros Cacouna Inc., (h) Papier Masson Ltee, (i) Stadacona Limited Partnership, (j) F.F. Soucy Limited Partnership and (k) F.F. Soucy Inc. & Partners, Limited Partnership.

[4]      The six chapter 15 debtors include (a) White Birch Paper Company, (b) Stadacona General Partner Inc., (c) Stadacona Limited Partnership, (d) F.F. Soucy Limited Partnership, (e) F.F. Soucy Inc. & Partners, Limited Partnership and (f) Papier Masson Ltee.

newsprint market and employed approximately 1,300 individuals. Additionally, for the twelve months ended December 31, 2009, the WB Group's mills maintained a production capacity of approximately 1.3 million metric tons of newsprint and directory paper (50% of which is made from recycled content) and achieved net sales of approximately $667 million.

8.      The WB Group operates four integrated paper mills strategically located to serve many of the largest newsprint markets in North America. The WB Group's mills include the Bear Island mill, located in Ashland, Virginia, the Soucy mill located on the St. Lawrence River in Riviere-du-Loup, Quebec, the Stadacona mill located on the St. Lawrence River in Quebec City, Quebec and the Papier Masson mill, located in Gatineau, Quebec. In addition to newsprint, the WB Group produces small amounts of directory paper, paperboard and lumber. Its customers include publishers like Gannett and Dow Jones, as well as commercial printers such as Transcontinental.

9.      Bear Island is a Virginia limited liability company that was organized in 1997 as a wholly-owned subsidiary of White Birch Paper Company and employs approximately 200 of the WB Group's 1,300 employees. Strategically located in Ashland, Virginia, the Bear Island mill annually produces approximately 235 thousand metric tons of newsprint paper that services customers in New York, Philadelphia, Baltimore and Washington, D.C. Bear Island also operates a paper machine, woodyard, pulping system, recycling facility, an on-site waste and water treatment facility, an industrial landfill for its on-site solid waste disposal, as well as storage and transportation facilities. For the twelve months ended December 31, 2009, Bear Island's net sales totaled approximately $125 million, which accounted for 19% of the WB Group's net sales for the same period. On the date hereof (the "Petition Date"), Bear Island filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to

operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## Basis for Relief

**I.      The Debtor's Insurance Policies and Related Payments**

10.      As set forth in the Sherrick Declaration, in the ordinary course of business, White Birch Paper Company entered into numerous insurance policies that provide coverage for the Debtor.  Collectively, these policies provide coverage for, among other things, general and employee benefits liability, excess liability, directors and officers' liability, fiduciary liability, excess fiduciary liability, property, ocean marine cargo, crime, automobile and total umbrella (collectively, the "Policies").[5]  A schedule of the current Policies set forth on **Exhibit 1** annexed to **Exhibit A** attached hereto and incorporated herein by reference (the "Policy Schedule").

11.      The Policies are essential to the preservation of the value of the Debtor's business, properties and assets.  In many cases, insurance coverage such as that provided by the Policies is required by the diverse regulations, laws and contracts that govern the Debtor's commercial activities.

12.      Additionally, it is worth noting that the Debtor does not directly pay the broker's fees or financing payments related to the Policies.  This is because White Birch Paper Company -- not the Debtor -- entered into all of the Policies.  The Debtor, however, is an insured under these Policies and White Birch Paper Company records an intercompany charge of approximately $41,000 on a monthly basis on account of the coverage the Debtor receives.  This

---

[5]      The Debtor's workers' compensation insurance policy is discussed in further detail in the *Motion of Bear Island Paper Company, L.L.C. For Entry of an Order Authorizing, But Not Directing, the Debtor to Pay Prepetition (a) Wages, Salaries, and Other Compensation, (b) Reimbursable Employee Expenses and (c) Employee Medical and Similar Benefits*.

amount is based upon the portion of White Birch Paper Company's premiums that are incurred as a result of providing coverage to Bear Island.

## II.     Broker's Fee Payments

13.     White Birch Paper Company employs The Rubin Group ("The Rubin Group" or "Broker") to assist with the procurement and negotiation of its Policies.  In connection with these services,  White Birch Paper Company pays The Rubin Group approximately $145,000 for (a) an annual risk management outsourcing fee, payable in quarterly installments and (b) an annual broker policy fee, payable in quarterly installments (collectively, the "Broker's Fees").  As of the Petition Date, White Birch has paid $110,000 in Broker's Fees for the policies currently in effect.

14.     As explained above, although the Debtor does not directly owe any Broker's Fees to The Rubin Group for services related to the prepetition period, White Birch Paper Company records a monthly charge of approximately $3,500 on the Debtor's books in respect of the Broker's Fees.  By this Motion, the Debtor requests that White Birch Paper Company be allowed to continue recording these monthly charges against the Debtor.

## III.    The Financing Agreements

15.     All of White Birch Paper Company's insurance policies require payment of the entire applicable premium at the inception of the applicable coverage period.  It is not always in White Birch Paper Company's best interests, however, to pay its full insurance premiums up front.  Accordingly, in the ordinary course of business, White Birch Paper Company finances the premiums on the Policies pursuant to premium financing agreements with various third-party lenders.  These premium financing arrangements benefit White Birch Paper Company, as well as the Debtor, by spreading out the cost of the Policies' premiums over the term of the respective coverage period.

16.     As of the Petition Date, White Birch Paper Company maintains two premium financing agreements (together, the "Financing Agreements").  The first Financing Agreement (the "First Financing Agreement"), entered into between White Birch Paper Company and First Insurance Funding Corp. ("First Insurance"), finances the following Policies:

a.      Commercial general and employee benefits insurance policy issued by The Charter Oak Fire Insurance Company, which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $13,950;

b.      Automobile insurance policy issued by Travelers Property Casualty Company of America ("Travelers"), which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $71,584;

c.      Commercial excess umbrella insurance policy issued by Travelers, which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $62,998;

d.      Excess liability insurance policy issued by Liberty Mutual Insurance Company, which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $22,500;

e.      Directors, officers and organization liability insurance policy issued by U.S. Specialty Insurance Company, which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $86,500;

f.      Fiduciary liability insurance policy issued by Houston Casualty Company, which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $28,800;

g.      Excess fiduciary liability insurance policy issued by Axis Insurance Company, which covers the period June 28, 2009 through June 28, 2010, for an annual premium of $20,500;

h.      Crime insurance policy issued by The Hartford, which covers the period June 28, 2001 until cancelled, for an annual premium of $3,349; and

i.      Ocean cargo insurance policy issued by the Chubb Group of Insurance Companies, which covers the period June 30, 2009 through June 30, 2010, for an annual premium of $14,768.

17.     The total amount financed under the First Financing Agreement, for the policy period of June 28, 2009 through June 28, 2010, is approximately $410,000.  The First Financing Agreement carries a 3.7% interest rate resulting in an annual finance charge of approximately

$2,100. The initial payment under the First Financing Agreement was due on July 28, 2009 with subsequent payments due thereafter on a monthly basis.

18. As of the Petition Date, White Birch Paper Company owes a total of approximately $82,000 has accrued and remains owing to First Insurance on account White Birch Paper Company's obligations under the First Financing Agreement.

19. The second Financing Agreement, entered into between White Birch Paper Company and AFCO (the "Second Financing Agreement"), finances White Birch Paper Company's, and the Debtor's, property insurance policy issued by Factory Mutual Company (the "Factory Policy").

20. The Factory Policy covers the period from July 31, 2009 through June 30, 2010. White Birch Paper Company financed approximately $1.2 million under the Second Financing Agreement, which carries an annual finance charge of approximately $17,100 at an annual percentage interest rate of 3.10%. Ten monthly payments of approximately $121,000 are due under the Second Financing Agreement. The first seven such payments have been paid and each subsequent payment is due on the first day of each month. As of the date of Petition Date, approximately $361,000 has accrued and remains owing on account of White Birch Paper Company's obligations to AFCO under the Second Financing Agreement.

21. By this Motion, the Debtor requests that the Court authorize White Birch Paper Company to continue to record a monthly intercompany charge against Bear Island in the approximate amount of $41,000 on account of coverage that Bear Island receives under certain of White Birch Paper Company's Policies.

## Supporting Authority

22.     Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824-845 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, a debtor may pay prepetition claims that are essential to the continued operation of the debtor's business); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.), 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).  When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

23.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary charged with "holding the bankruptcy estate[s] and operating the business for the benefit of its creditors and (if the value justifies) equity owners."  In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Inherent in a debtor in possession's fiduciary duties is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim."  Id.  Indeed, the CoServ court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ."  Id.

24.     Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code.  <u>See</u>, <u>e.g.</u>, <u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); <u>In re James A. Phillips, Inc.</u>, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

25.     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan.  <u>See In re UNR Indus.</u>, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); <u>Ionosphere Clubs</u>, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

26.     In addition to the authority granted to a debtor in possession under sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286 (1882). Since Miltenberger, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, (see Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations)), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981).

27.     In Lehigh, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. Id. (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); see also In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment rule permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Just for Feet, Inc., 242 B.R. at 824-845 (noting that debtors may pay prepetition claims that are essential to continued operation of business); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

28.     Today, the rationale for the necessity of payment rule – the rehabilitation of a debtor in reorganization cases – is "the paramount policy and goal of Chapter 11." In re Ionosphere Clubs, Inc., 98 B.R. at 176; Just For Feet, 242 B.R. at 826 (finding that payment of

prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); see also In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . . ."); 3 Collier on Bankruptcy ¶ 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

29.     Continuing to allow White Birch Paper Company to charge amounts for insurance premiums to the Debtor will benefit the Debtor's estate and its creditors by ensuring that the Debtor has the insurance coverage needed to allow the Debtor's business operations to continue without interruption.  In addition, and as described more fully above, the maintenance of the Policies is critical to the preservation of the value of the Debtor's estate.  Accordingly, the Debtor believes it is in the best interest of its estate and its creditors to authorize the Debtor to maintain the Policies.

30.     Courts in this district and others have granted similar relief to that requested herein in previous chapter 11 cases.  In re Roper Bros. Lumber Co., No. 09-38215 (Bankr. E.D.

Va. Dec. 23, 2009); In re S & K Famous Brands, Inc., No. 09-30805 (Bankr. E.D. Va. Feb. 10, 2009); See, e.g., In re Movie Gallery, Inc., No. 07-33849 (Bankr. E.D. Va. Oct. 16, 2007) (authorizing the debtors to maintain their insurance policies and enter into new insurance policies); In re The Rowe Cos., No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006) (authorizing the debtors to pay any necessary prepetition insurance premiums); In re Dura Auto. Sys., Inc., No. 06-11202 (Bankr. D. Del. Nov. 20, 2006) (authorizing the debtors to pay any unpaid prepetition insurance premiums and maintain their insurance financing agreement); In re Calpine Corp., No. 05-60200 (Bankr. S.D.N.Y. Jan.4, 2006); (authorizing the debtors to maintain their insurance policies and to pay any outstanding prepetition amounts); In re The Boyds Collection, Ltd., No. 05-43793 (Bankr. D. Md. Nov. 1, 2005) (authorizing the debtors to pay any unpaid prepetition insurance premiums and enter into post-petition insurance financing agreements); In re Tower Auto., Inc., No. 05-10578 (Bankr. S.D.N.Y. February 3, 2005) (same); In re Primary Health Sys., Inc., 275 B.R. 709 (Bankr. D. Del. 2002) (clarifying that the debtors were authorized to pay insurance premium amounts in connection with prepetition disability, medical and workers' compensation insurance plans).[6]

### The Requirements of Bankruptcy Rule 6003 are Satisfied

31.     Under Bankruptcy Rule 6003, the Court may authorize the Debtor to satisfy the amounts related to the Policies within the first 21 days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate.  Fed. R. Bankr. Proc. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames

---

[6]     Because of the voluminous nature of the orders cited herein, they are not attached to the Motion.  Copies of these orders are available on request of the Debtor's counsel.

Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

32.     In this case, the Debtor submits that the requirement in Bankruptcy Rule 6003 is satisfied with respect to the relief sought in the proposed order. Specifically, if the Debtor does not obtain the relief requested in the proposed order, it would suffer immediate and irreparable harm because (a) the Debtor would not be able to continue its operations if an insurance company terminated coverage due to nonpayment of premiums since these Policies are required by law, (b) the Debtor would be at severe risk of jeopardizing its assets if the Debtor did not have coverage for high-cost occurrences, such as catastrophic property damage and (c) the Debtor's assets would be harmed by the subsequent need to obtain replacement insurance at a likely higher price. Accordingly, the Debtor submits that the relief sought in the proposed order is appropriate and should be approved.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

33.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Waiver of Memorandum of Points and Authorities

34.     The Debtor respectfully requests that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

## The Debtor's Reservation of Rights

35.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim,

or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim. The Debtor expressly reserves its rights to contest any invoice or claim with respect to the Customer Programs in accordance with applicable non-bankruptcy law.

### Notice

36. The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Virginia; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent under the Debtor's proposed postpetition financing agreement; (d) counsel to the agent under the First Lien Term Loan Agreement; (e) counsel to the agent under the Second Lien Term Loan Agreement; (f) counsel to the agent under the Revolving ABL Agreement; (g) counsel to counterparties under the Swap Agreements; (h) the monitor appointed in the CCAA Cases; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Virginia Secretary of State; and (l) the Virginia Secretary of Treasury. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

### No Prior Request

37. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Sherrick Declaration, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.


**BEAR ISLAND PAPER COMPANY, L.L.C.**

Dated:  February 24, 2010
      Richmond, Virginia      By:  */s/ Jonathan L. Hauser*
                                    Of Counsel


Jonathan L. Hauser, Esquire
VSB No. 18688
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:    (757) 687-7768
Facsimile:    (757) 687-1505

    - and -

Richard M. Cieri (*pro hac vice* pending)
Christopher J. Marcus (*pro hac vice* pending)
Michael A. Cohen (*pro hac vice* pending)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Proposed Attorneys for the Debtor and*
*Debtor in Possession*

## Exhibit A

## Proposed Order

Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:     (757) 687-7768
Facsimile:     (757) 687-1505

Richard M. Cieri (*pro hac vice* pending)
Christopher J. Marcus (*pro hac vice* pending)
Michael A. Cohen (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Proposed Attorneys for the Debtor and*
*Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) Case No. 10-_____ (___) |
|  | ) |
| Debtor. | ) |
|  | ) |

## ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND (B) MAINTAIN POSTPETITION FINANCING OF INSURANCE PREMIUMS

Upon the motion, dated February 24, 2010, (the "Motion"),[2] of Bear Island Paper Company, L.L.C., as a debtor and debtor in possession ("Bear Island" or "Debtor"), for entry of an order (the "Order") authorizing the Debtor to (a) continue insurance coverage currently in effect and (b) maintain postpetition premium financing agreements with respect to insurance premiums ("Financing Agreements"), all as more fully set forth in the Motion; and upon the Sherrick Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the

---

[1]     The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]     All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested is in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Debtor having provided adequate notice of the Motion and the opportunity for a hearing on the Motion under the particular circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted in its entirety.

2.     The Debtor is authorized to continue the Policies uninterrupted and, in its sole discretion, to have White Birch Paper deduct from its revenue any prepetition amounts related to the Policies (including Broker's Fees, if any) to the extent that the Debtor determines that such deduction is necessary or appropriate in an aggregate amount not to exceed $41,000 per month.

3.     The Debtor is authorized, but not directed, to honor the terms of the Financing Agreements.

4.     The banks and financial institutions on which checks were drawn, or electronic payment requests were made in payment of prepetition obligations approved herein, are authorized and directed to receive, process, pay and honor all such checks and electronic payment requests presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as being approved by this Order.

5.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of the Policies and the Financing Agreements that are dishonored or rejected.

6.     Nothing in the Motion or this Order, nor as a result of the Debtor's payment of any prepetition amounts pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtor or an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

7.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

8.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained hereunder, shall be subject to the requirements imposed on the Debtor under any approved debtor in possession financing facility, budget in connection therewith or any order regarding the use of cash collateral.

9.     The requirements set forth in Rule 6003(b) of the Bankruptcy Rules are satisfied by the contents of the Motion or otherwise deemed waived.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

11.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

12.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2010
        Richmond, Virginia

_____
United States Bankruptcy Judge

I ASK FOR THIS:

*/s/ Jonathan L. Hauser*
Jonathan L. Hauser
VSB No. 18688
**TROUTMAN SANDERS LLP**
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:      (757) 687-7768
Facsimile:      (757) 687-1505

- and -

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (*pro hac vice* pending)
Christopher J. Marcus (*pro hac vice* pending)
Michael A. Cohen (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Attorneys for the Debtor and*
*Debtor in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1 (C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Jonathan L. Hauser*

**Exhibit 1** to **Exhibit A**

**Policy Schedule**

**Insurance Policy Schedule**

| Type of Coverage | Insurance Carrier | Policy Number | Term | Annual Premium | Deductible | Coverage Limit | Financed |
|---|---|---|---|---|---|---|---|
| Commercial General Liability and Employee Benefits | The Charter Oak Fire Insurance Company | Y-660-77N4110-COF-09 | 12 Months | $13,950 | N/A | General: $10,000,000 Employee: $2,000,000 | Yes |
| Commercial Automobile | Travelers Property Casualty Company of America | Y-8107359N460-TIL-09 | 12 Months | $71,584 | N/A | $1,000,000 Per Accident | Yes |
| Commercial Excess Liability Umbrella | Travelers Property Casualty Company of America | YSM-CUP-7359N472-TIL-09 | 12 Months | $$62,998 | N/A | $25,000,000 | Yes |
| Excess Liability Insurance | Liberty Mutual Insurance Company | TL2-621-093858-019 | 12 Months | $22,500 | N/A | $25,000,000 | Yes |
| Directors, Officers and Organization Liability | U.S. Specialty Insurance Company | 14-MGU-09-A19390 | 12 Months | $86,500 | $75,000 for Loss on Account of Wrongful Acts Claims | $5,000,000 | Yes |

| Type of Coverage | Insurance Carrier | Policy Number | Term | Annual Premium | Deductible | Coverage Limit | Financed |
|---|---|---|---|---|---|---|---|
| Pension and Welfare Benefit Plan Fiduciary Liability | Houston Casualty Company | 14-MG-09-A9767 | 12 Months | $28,800 | $25,000 | $5,000,000 | Yes |
| Excess Fiduciary Liability | Axis Insurance Company | MNN587506 | 12 Months | $20,500 | N/A | $5,000,000 | Yes |
| Crime | The Hartford | 10BDDAP1041 | From 6/28/2001 Until Cancelled | $3,349 | $10,000 | $500,000 | Yes |
| Ocean Cargo | Chubb Group of Insurance Companies | 0025-89-08DTO | 12 Months | $14,768 | $25,000 | $3,000,000 Per Claim | Yes |
| Property | The Factory Mutual Company | 1-72576-XG633 | 12 Months | $1,482,444 | $250,000 | $2 Billion | Yes |