UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BEAR ISLAND PAPER COMPANY, L.L.C., | ) Case No.10-31202-DOT |
| | ) |
| Debtor. | ) |
| | ) |

**OBJECTION OF RAPPAHANNOCK ELECTRIC COOPERATIVE
TO THE MOTION OF BEAR ISLAND PAPER COMPANY, L.L.C. FOR
ENTRY OF INTERIM AND FINAL ORDERS DETERMINING ADEQUATE
<u>ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES</u>**

Rappahannock Electric Cooperative ("REC"), by counsel, objects to the *Motion of Bear Island Paper Company, L.L.C. For Entry of Interim and Final Orders Determining Adequate Assurance of Payment For Future Utility Services* (the "Utility Motion"), and sets forth the following:

<u>**Introduction**</u>

Section 366(c)(2) of the Bankruptcy Code clearly provides that the Debtor must provide its' utilities with adequate assurance of payment satisfactory to the utilities within 30 days of the petition date. If the Debtor wants to seek a modification of the amount deemed satisfactory by the utility, the Debtor must file a motion pursuant to Section 366(c)(3), and after notice and a

Russell R. Johnson III
V.S.B. No. 31468
John M. Craig
V.S.B. No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
(804) 749-8861 Telephone
(804) 749-8862 Facsimile
*Counsel for Rappahannock Electric Cooperative*

hearing, can have the Court determine the necessary amount of adequate assurance of payment.

In contravention of the foregoing statutory requirements and REC's due process rights, the Debtor filed the Utility Motion on the Petition Date and scheduled the initial hearing on one day's notice to establish the amount and form of adequate assurance of payment satisfactory to the Debtor (i.e. payment of a two-week deposit). Based on the short notice, REC is unable to have its lead counsel or witness present at the February 25, 2010 hearing (Counsel for REC contacted Debtor's counsel and asked for an adjournment of the February 25, 2010 hearing and Debtor's counsel declined.). REC is further prejudiced by the improper filing of the Utility Motion and unnecessary expedited hearing because the Utility Motion fails to set forth any basis why this Court should modify REC's adequate assurance of payment request. In this case, the Debtor was aware of what REC, the Debtor's largest utility with an estimated $2.5 of the Debtor's $3 million monthly utility charges, would request as adequate assurance of payment in this case because the parties just recently completed an agreement to secure REC's account that was approved by the Commonwealth of Virginia State Corporation Commission ("SCC"). Despite the foregoing knowledge, the Debtor fails to address in any fashion, why the Court should seek to modify the foregoing agreement. Accordingly, because neither the Utility Motion nor the timing of the February 25, 2010 hearing are in accord with the requirements of Section 366(c)(3) of the Bankruptcy Code, this Court should deny the Utility Motion and require the Debtor to comply with the requirements of Section 366(c) of the Bankruptcy Code.

### Facts

1.     On February 24, 2010 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that is now pending

with this Court.

2. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

### The Utility Motion

3. On the Petition Date, the Debtor filed the Utility Motion.

4. Through the Utility Motion, the Debtor seeks to avoid the procedural and substantive requirements of Section 366. Instead of responding to adequate assurance demands of its utility companies, the Debtor has elected to file the Utility Motion and seek burdensome procedures and a deposit amount that fails to provide its utilities with adequate assurance of payment as required by Section 366.

5. Specifically, in the Utility Motion, the Debtor proposes to provide its utilities with deposits equal to two-weeks of utility service calculated as an historical average over the past 12 months prior to the Petition Date. Utility Motion at ¶ 13.

6. On the Petition Date, the Debtor filed the *Motion of Bear Island Paper Company, L.L.C. For Entry of An Order Setting An Expedited Hearing On "First Day Motions" and Other Related Relief* which in part seeks on expedited hearing on the Utility Motion. Upon information and belief, the initial hearing on the Utility Motion is scheduled for February 25, 2010 at 2:00 p.m.

7. The Debtors claim that they spend approximately $3 million each month for utility charges. Utility Motion at ¶ 11.

**Facts Concerning REC**

8. Rappahannock Electric Cooperative (REC) is a member-owned utility that provides electric service to more than 100,000 connections in parts of 16 Virginia counties. It was formed in 1980 with the consolidation of two cooperatives, Virginia Electric Cooperative in Bowling Green and Northern Piedmont Electric Cooperative in Culpeper. The Cooperative's General Office is in Spotsylvania County.

9. REC maintains more than 12,000 miles of power lines through its service area, which ranges from the Blue Ridge Mountains to the mouth of the Rappahannock River. The Cooperative serves a variety of residential, commercial and industrial accounts. REC's largest customer is Bear Island Paper Company, the second largest consumer of electricity in Virginia.

10. On January 28, 2010, the Commonwealth of Virginia State Corporation Commission ("SCC") entered an Order, a copy of which is attached as **Exhibit 1** to this Objection, that approved a *Financial Security Agreement for Customers Utilizing Schedule LP-2* (the "Agreement"), a copy of which is attached as **Exhibit 2** to this Objection. The Debtor is the only customer on the closed LP-2 heavy industrial service rate.

11. In pertinent part, the Agreement that was to have gone into effect in February 2010 required the Debtor to:

    A. Provide a letter of credit in an amount equal to 1/3 of item A of the Monthly Charges Section of Schedule LP-2 (On February 4, 2010, REC sent the Debtor a letter requesting a letter of credit in the amount of $742,066 to satisfy this requirement. The Debtor, however, failed to satisfy this condition.); and

    B. Pay REC weekly in advance for utility services to be provided, with the

payments being sent to an agreed upon escrow agent that would release the funds to REC at the end of the month. The Debtor tendered the first payment due for February 2010 charges, but did not execute the agreed upon escrow agreement so the escrow agent has refused to release the funds to REC.

12.   In addition to failing to honor its obligations under the Agreement, the Debtor did not pay January 31, 2010 invoice in the amount of $2,308,443.73 for January 2010 charges. As a result of the foregoing, REC estimates that the prepetition amount owed by the Debtor to REC will be between $4 and $5 million. The foregoing is a material loss to REC.

13.   As the Debtor is aware, REC is the Debtor's largest utility provider accounting for approximately $2.5 million of the $3 million monthly utility charges incurred by the Debtor.

14.   REC's contract with the Debtor is set forth in its LP-2 *Closed Heavy Industrial Rate* (the "Tariff"), which only applies to the Debtor, and the Agreement, which is part of the Tariff. A true and accurate copy of the Tariff can be obtained at http://www.myrec.coop/shared/account/rate-schedule.cfm.

15.   Based on the amount of the prepetition loss, REC needs the Debtor to immediately start paying in advance for post-petition utility charges. Accordingly, instead of seeking a post-petition cash deposit, REC is asking for the following as adequate assurance of payment:

   A.   The Debtor shall promptly tender the $742,066 letter of credit (or a cash deposit) required by Section A.1. of the Agreement; and

   B.   The Debtor tender advance payments and reconciliation payments in accordance with Sections A.2, 3, 4 and 5 of the Agreement, but with the payments being sent directly to REC instead of the escrow agent.

**Discussion**

A.    **THE UTILITY MOTION SHOULD BE DENIED AS TO REC.**

Sections 366(b) and (c) of the Bankruptcy Code, in pertinent part, provide:

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the Debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.

    (c)(1)(A) For purposes of this subsection, the term "assurance of payment" means
        (i) a cash deposit;
        (ii) a letter of credit;
        (iii) a certificate of deposit;
        (iv) a surety bond;
        (v) a prepayment of utility consumption; or
        (vi) another form of security that is mutually agreed upon between the utility and the Debtor or the trustee.

        (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment,

    (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the Debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

    (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

        (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
            (i) the absence of security before the date of the filing of the petition;
            (ii) the payment by the Debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
            (iii) the availability of an administrative expense priority.

    (4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the Debtor before the date of the filing of the petition without notice or order of the court.

11 U.S.C. §366.

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request.

In this case, the Debtor completely ignores REC's adequate assurance request. Instead, the Debtor filed the Utility Motion to improperly shift the focus of its obligations under Section 366(c) from modifying the form of REC's adequate assurance request to establishing adequate assurance of payment acceptable to the Debtor. Accordingly, this Court should not reward the Debtor for its failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to REC. *See In re Viking Offshore (USA), Inc.*, 2008 WL 782449 at *3 (Bankr. S.D. Tex. Mar. 20, 2008) ("The relief requested by Debtors would reverse the burden, by making an advance determination that the proposed assurance was adequate. . . . the court lacks the power to reverse the statutory framework for provision of adequate assurance of payment."); s*ee also In re Pilgrim's Pride Corporation*, Case No. 08-45664 (DML)(Docket No. 447), United States

Bankruptcy Court For the Northern District of Texas, *Memorandum Order* entered on January 5, 2009 (Denying debtors' motion seeking to establish adequate assurance of payment); *see also In re Ramsey Holdings, Inc.*, Case No. 09-13998-M (TLM), United States Bankruptcy Court For the Northern District of Oklahoma, *Order Denying Debtor's Amended Motion For Entry of an Order Pursuant To Section 366 of the Bankruptcy Code Deeming Utility Companies Adequately Assured of Future Performance* entered on December 21, 2009 (Denying debtor's motion seeking to establish adequate assurance of payment, and holding that the debtor is required by Section 366 to first approach its utility providers and attempt to arrange a mutually agreeable form of adequate assurance of payment, and if such attempts are unsuccessful, the debtor can then petition the Court to establish adequate assurance.).

In addition, the Utility Motion fails to address why this Court should modify REC's request for adequate assurance of payment. Under Section 366(c)(3), the Debtor has the burden of proof as to whether REC's adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). The Debtor, however, offers the Court no evidence nor factually supported documentation to explain how or why REC's adequate assurance request should be modified. Indeed, the Debtor never even addresses the matter in the Utility Motion because the Debtor failed to: (1) contact REC concerning its adequate assurance request; and, (2) make any attempt to determine whether the REC's request for adequate assurance needed to be modified. Accordingly, the Court should deny the relief requested by Debtor in the Utility Motion and require the Debtor to comply with the requirements of Section 366(c) with respect to REC. *See In re Lucre, Inc.*, 333 B.R. 151,

154 (Bankr. W.D. Mich. 2005) (holding that the right of a debtor or trustee to seek modification of a utility's deposit request "arises only after the adequate assurance payment has been agreed upon by the parties.").

> B. **THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY REC PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

A determination of adequate assurance is within the court's discretion, and is made on a case-by-case basis, subject to the new requirements of Section 366(c). *See In re Utica Floor Maintenance, Inc.*, 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); *In re Cunha*, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979). Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr.

9

E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

In this case, the Debtor and REC reached an agreement on prepetition adequate assurance of payment that was approved by the SCC in late January 2010 and which was to have gone effective in February 2010. What could be more relevant in making a determination of adequate assurance of payment than an agreement reached by the parties and approved by the SCC less than a month before the Petition Date? Moreover, the Agreement does not require the Debtor to come out of pocket for a large post-petition deposit, but merely requires the Debtor to pay for service in advance each week. *See In re Cunha*, 1 B.R. at 333 ("Reduced to its simplest statement in utility cases, we seek to arrive at the nearest thing to cash-on-delivery (C.O.D.). Are not these the terms upon which many creditors put a debtor?"). Furthermore, based on REC's size and the amount of its prepetition loss in this case, approval of adequate assurance of payment in the form of the Agreement is necessary for REC.

In contrast to the foregoing, the Debtor does not provide an objective, much less an evidentiary, basis for its proposed two-week deposit. Accordingly, not only has the Debtor failed to satisfy its statutory burden under Section 366 as to why REC's adequate assurance request should be modified, but Debtor has also failed to demonstrate why its adequate assurance of payment proposal of a two-week deposit should be accepted by REC and approved by the Court. Hence, and for all of the foregoing reasons, the Court should deny the Utility Motion and require the Debtor to immediately begin providing REC with the form adequate assurance of payment requested herein.

      WHEREFORE, REC respectfully requests that this Court enter an order:

1. Denying the Utility Motion as to REC;

2. Awarding REC with the post-petition adequate assurance of payment requested herein; and,

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: February 24, 2010

/s/ John M. Craig
Russell R. Johnson III, V.S.B. No. 31468
John M. Craig, V.S.B. No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862

*Counsel for Rappahannock Electric Cooperative*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2010, I caused a true and correct copy of the foregoing *Objection* to be served through the Court's ECF System on the parties set forth on the Rule 2002 Service List, or by first-class mail, postage prepaid, or by email, upon the following:

Jonathan L. Hauser
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
P. O. Box 61185
Virginia Beach, VA 23466-1185
Email: jonathan.hauser@troutmansanders.com

Michael A. Cohen, Esq.
Kirkland & Ellis, LLP
601 Lexington Avenue
New York, NY 10022-4611
Email: michael.a.cohen@kirkland.com
*Counsel for Debtors*

W. Clarkson McDow, Jr.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219

                                                  /s/ John M. Craig
                                                  John M. Craig