Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:      (757) 687-7768
Facsimile:      (757) 687-1505

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Attorneys for the Debtor and
Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MOTION OF BEAR ISLAND PAPER COMPANY, L.L.C. FOR ENTRY
## OF AN ORDER IMPLEMENTING A PROCEDURAL PROTOCOL FOR
## THE ADMINISTRATION OF CROSS-BORDER INSOLVENCY PROCEEDINGS

Bear Island Paper Company, L.L.C., as a debtor and debtor in possession ("Bear Island"

or "Debtor"), files this motion (the "Motion") for entry of an order, substantially in the form

attached hereto as **Exhibit A**, approving and implementing a procedural protocol to facilitate a

coordinated administration of the Debtor's and its affiliates' dual insolvency proceedings in the

United States and Canada. In support of the Motion, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 0914. The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

## Jurisdiction

1. The United States Bankruptcy Court for the Eastern District of Virginia (the "Court" or "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

## Relief Requested

4. By this Motion, the Debtor seeks entry of an order approving and implementing a protocol, substantially in the form attached hereto as **Exhibit 1** annexed to **Exhibit A** (the "Protocol"), to, among other things, establish a clear framework of general principles that will govern the cross-border administration of this chapter 11 case and address certain key issues that may arise during the Restructuring Proceedings (as defined herein), including and without limitation:   (a) court-to-court communication;  (b) obtaining approval (by joint hearing or otherwise) for matters requiring approval by this Court and the Canadian Court (as defined herein);  (c) the retention and compensation of professionals;  (d) the cross-border interaction between principal constituents;  (e) appearances of interested parties;  (f) notice and service requirements; and (g) the reciprocal recognition of stays and injunctions issued by each Court.[2]

---

[2] Once the Restructuring Proceedings (as defined herein) are further along, it may become necessary to seek approval of an additional protocol to address important substantive issues relating to (a) filing and resolving proofs of claim, (b) distributing estate assets and (c) preparing, filing and implementing plans of arrangement and/or reorganization.  Although such issues must ultimately be coordinated between the Courts (as defined herein), the Debtor believes these and other substantive issues are more appropriately addressed after the initial postpetition period.

## Background

5.      On February 24, 2010, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On March 3, 2010, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") appointed an official committee of unsecured creditors.

6.      Simultaneously with the commencement of this chapter 11 case, the Debtor's indirect parent -- White Birch Paper Holding Company ("WB Holding") -- and ten of WB Holding's direct and indirect Canadian subsidiaries (collectively the "CCAA Applicants," and, together with Bear Island, the "WB Group") sought relief under the *Companies' Creditors Arrangement Act* (the "CCAA") in the Quebec Superior Court of Justice (the "Canadian Court," and, together with the Bankruptcy Court, the "Courts") in Montreal, Quebec, Canada (the "CCAA Cases").[3]  Contemporaneously therewith, six of the CCAA Applicants, sought relief under chapter 15 of the Bankruptcy Code.[4]  The chapter 15 cases are being jointly administered by this Court for procedural purposes under the following case caption:  In re White Birch Paper Company, et al., No. 10-31234 (DOT).

---

[3]   The CCAA Applicants include (a) WB Holding, (b) White Birch Paper Company, (c) Stadacona General Partner Inc., (d) Black Spruce Paper Inc., (e) F.F. Soucy General Partner Inc., (f) 3120772 Nova Scotia Company, (g) Arrimage De Gros Cacouna Inc., (h) Papier Masson Ltee, (i) Stadacona Limited Partnership, (j) F.F. Soucy Limited Partnership and (k) F.F. Soucy Inc. & Partners, Limited Partnership.

[4]   The six chapter 15 debtors include (a) White Birch Paper Company, (b) Stadacona General Partner Inc., (c) Stadacona Limited Partnership, (d) F.F. Soucy Limited Partnership, (e) F.F. Soucy Inc. & Partners, Limited Partnership and (f) Papier Masson Ltee.

7.    The WB Group is the second-largest newsprint manufacturer in North America. In fact, as of December 31, 2009, the WB Group held a 12% share of the North American newsprint market and employed approximately 1,300 individuals. Additionally, for the twelve months ended December 31, 2009, the WB Group's mills maintained a production capacity of approximately 1.3 million metric tons of newsprint and directory paper (50% of which is made from recycled content) and achieved net sales of approximately $667 million.

8.    The WB Group operates four integrated paper mills strategically located to serve many of the largest newsprint markets in North America. The WB Group's mills include the Bear Island mill, located in Ashland, Virginia, the Soucy mill located on the St. Lawrence River in Riviere-du-Loup, Quebec, the Stadacona mill located on the St. Lawrence River in Quebec City, Quebec and the Papier Masson mill, located in Gatineau, Quebec. In addition to newsprint, the WB Group produces small amounts of directory paper, paperboard and lumber. Its customers include publishers like Gannett and Dow Jones, as well as commercial printers such as Transcontinental.

9.    Bear Island is a Virginia limited liability company that was organized in 1997 as a wholly-owned subsidiary of White Birch Paper Company and employs approximately 200 of the WB Group's 1,300 employees. Strategically located in Ashland, Virginia, the Bear Island mill annually produces approximately 235 thousand metric tons of newsprint paper that services customers in New York, Philadelphia, Baltimore and Washington, D.C. Bear Island also operates a paper machine, woodyard, pulping system, recycling facility, an on-site waste and water treatment facility, an industrial landfill for its on-site solid waste disposal, as well as storage and transportation facilities. For the twelve months ended December 31, 2009, Bear

Island's net sales totaled approximately $125 million, which accounted for 19% of the WB Group's net sales for the same period.

## Basis for Relief

### I.    The Need for the Protocol

10.    In light of the cross-border issues that are likely to arise (and in some instances imminently) given the complex, transnational nature of this chapter 11 case, the ancillary chapter 15 recognition proceedings and the CCAA Cases (collectively, the "Restructuring Proceedings"), it is appropriate to install a protocol to preclude unnecessary confusion and ensure that: (a) the Restructuring Proceedings are coordinated to avoid inconsistent or duplicative activities; (b) all parties are adequately informed of key issues concerning the Restructuring Proceedings; (c) the substantive rights of all parties are protected; and (d) the jurisdictional integrity of the Courts is preserved.

11.    The Restructuring Proceedings involve the restructuring of 12 entities and affect the rights of hundreds of creditors and other interested parties in the United States, Canada and other jurisdictions.  Moreover, the Debtor and CCAA Applicants may be required to seek relief jointly in this Court and the Canadian Court.  Given these circumstances, if no administrative procedures are implemented to coordinate the activities of the Courts and other parties in connection with the Restructuring Proceedings, there is a substantial risk that the Debtor's reorganization efforts (along with the collective efforts of the WB Group) and the rights and interests of creditors and other parties will be adversely affected.

12.    Thus, the terms of the Protocol are designed to achieve four core goals.  First, the Protocol is designed to harmonize and coordinate activities in the Restructuring Proceedings held before this Court and the Canadian Court, thereby promoting the orderly and efficient administration of the Restructuring Proceedings.  Such coordination is essential and will, among

5

other things, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith and avoid duplication of efforts. Second, the Protocol is designed to (a) honor the independence and integrity of the Courts and (b) promote international cooperation and respect for comity among the Courts, the Debtor, the CCAA Applicants and other creditors and interested parties. Third, the Protocol is designed to facilitate the fair, open and efficient administration of the Restructuring Proceedings for the benefit of all creditors and other interested parties of the Debtor and the CCAA Applicants, wherever located. Fourth, the Protocol is designed to establish guidelines for communication between this Court and the Canadian Court. To that end, the Protocol provides for: (a) appropriate notice to all key constituencies of matters arising in the Restructuring Proceedings; (b) an opportunity for all parties in interest to be heard in both Courts; (c) maximum efficiency (e.g., reducing costs and duplicative efforts) and an orderly administration of the proceedings; and (d) the express preservation of all parties' substantive rights

## II.    Overview of the Material Terms of the Protocol[5]

13.    The salient provisions of the Protocol are summarized as follows:

    a.    Comity; Judicial Independence. This Court shall have sole and exclusive jurisdiction and power over the conduct of this chapter 11 case, the ancillary chapter 15 proceedings and any and all U.S. hearings and determination of matters arising therein. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the CCAA Cases and the hearing and determination of matters arising therein. By approving and implementing the Protocol, neither this Court, the Canadian Court, the Debtor, the CCAA Applicants nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

---

[5]    This section is only intended to provide a summary of the material terms of the Protocol. As such, the discussion contained herein is qualified by reference to the entire Protocol and should not be relied upon for a comprehensive discussion of the Protocol, a copy of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto. To the extent that there are any inconsistencies between the summary of the Protocol in this Motion and the Protocol, the provisions set forth in the Protocol shall govern.

b.   <u>Cooperation</u>.   To harmonize and coordinate the administration of the Restructuring Proceedings, the Courts may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.

(i)   This Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any matter relating to the Restructuring Proceedings.

(ii)   Where the issue of the proper jurisdiction or Court to determine an issue is raised by any party in interest in any of the Restructuring Proceedings with respect to a motion or an application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court and determine an appropriate process by which the issue of jurisdiction will be determined and which process shall be subject to submissions by the Debtor, the CCAA Applicants, the U.S. Trustee, the monitor appointed in the CCAA Cases (the "<u>Monitor</u>") and any party in interest prior to any determination on the issue of jurisdiction being made by either Court.

(iii)   This Court and the Canadian Court may coordinate activities in the Restructuring Proceedings so that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in one tribunal.

(iv)   This Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of either of the Restructuring Proceedings solely as both Courts determine and agree that such joint hearings are necessary or advisable to facilitate the proper and efficient conduct of the Restructuring Proceedings or the resolution of any particular issue arising in the Restructuring Proceedings.

c.   <u>Retention and Compensation of Professionals</u>.   The Protocol generally preserves the independent jurisdiction of each Court over (i) any estate representatives appointed by such Court (collectively, the "<u>Estate Representatives</u>") and (ii) the retention and compensation of professionals in the respective Restructuring Proceedings.   For example, under the terms of the Protocol, this Court generally will have sole and exclusive jurisdiction over (x) any Estate Representatives appointed in the chapter 11 case and ancillary chapter 15 proceedings, including any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "<u>U.S. Representatives</u>") and (y) the retention and compensation of any professionals retained by the Debtor, other than the CCAA Professionals (defined below).   Likewise, the Protocol provides

7

that the Canadian Court generally will have sole and exclusive jurisdiction over the retention and compensation of any professional retained in the CCAA Cases (collectively, the "CCAA Professionals"), other than those retained solely for purposes of the chapter 11 case.

## Supporting Authority

14.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).   To this end, courts have found that comity in cross-border insolvency proceedings is a principle of "due regard both to international duty and convenience . . . ." Hilton v. Guyot, 159 U.S. 113, 163-64 (1985).  In In re Ionica, PLC, 241 B.R. 829 (Bankr. S.D.N.Y. 1999), the Second Circuit noted that "the importance of extending comity in foreign bankruptcy proceedings, emphasizing that 'deference to foreign insolvency proceedings will, in many case, facilitate 'equitable, orderly and systematic distribution of the debtor's assets." Id. (quoting Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.), 93 F.3d 1036, 1048 (2d Cir. 1996)).

15.     In the Debtor's case, having two parallel proceedings with jurisdictional issues such as intercompany creditors and intercompany, cross-border debt further substantiates the need for a cross-border protocol.  Such a protocol will help protect the rights of the Debtor, as well as the rights of creditors and other interested parties in the United States, Canada and other countries.

16.     A number of courts have authorized similar protocols for managing cross-border insolvency proceedings. See, e.g., In re AbitibiBowater Inc., No. 09-11296 (Bankr. D. Del. July 27, 2009); In re Masonite Corp., No. 09-10844 (Bankr. D. Del. Apr. 14, 2009); In re Calpine Corp., No. 05-60200 (Bankr. S.D.N.Y. Jan. 26, 2006); In re PSINet Inc., No. 01-13213 (Bankr. S.D.N.Y. 2001); In re Manhattan Inv. Fund Ltd., Nos. 00-10922 and 00-10921 (Bankr. S.D.N.Y.

2000); In re Livent (U.S.) Inc., No. 98-B-48312 (Bankr. S.D.N.Y. 1998); In re AIOC Corp., No.

96-B-41895 (Bankr. S.D.N.Y. 1992); In re Maxwell Commc'n Corp., No. 91-B-15741 (Bankr.

S.D.N.Y. 1991); see also In re Systech Retail Sys. (U.S.A.), Inc., No. 03-00142-5-ATS (Bankr.

E.D.N.C. 2003); In re Federal Mogul Global, Inc., No. 01-10578 (Bankr. D. Del. 2002); In re

Fin. Asset Mgmt. Found., No. 01-03640-304 (Bankr. S.D. Cal. 2001); In re Laidlaw USA, Inc.,

No. 01-14099 (Bankr. W.D.N.Y. 2001); In re Matlack Sys., Inc., No. 01-01114 (Bankr. D. Del.

2001); In re Inverworld Inc., No. SA99-C0822FB (Bankr. W.D. Tex. 1999); In re Loewen Group

Int'l Inc., No. 99-1244 (Bankr. D. Del. 1999); In re Philip Servs. Corp., No. 99-B-02385 (Bankr.

D. Del. 1999); In re Solvex Canada Ltd., No. 11-97-14362-MA (Bankr. N.M. 1997).[6]

17.    The Protocol establishes necessary and appropriate means for communication

between the Courts and will facilitate the requisite level of coordination with respect to cross-

border matters arising in these proceedings.    In addition, the purely procedural and

administrative nature of the Protocol proposed herein, which does not adversely affect any

party's substantive rights, should be implemented immediately.  In fact, it would be imprudent to

delay the implementation of the basic administrative procedures and protections provided under

the Protocol especially given the need of the Debtor and CCAA Applicants to obtain final access

to a post-petition financing facility that is secured by the WB Group's assets in both the United

States and Canada.  It is critical, therefore, that the Protocol be implemented immediately to

ensure administrative coordination to the fullest extent possible.

18.    In light of the foregoing, approval of the Protocol will prove beneficial to the

administration of the chapter 11 case, the ancillary chapter 15 proceedings and the CCAA Cases,

which, in turn, will inure to the benefit of all stakeholders, whether located in the United States,

---

[6]    Because of the voluminous nature of the orders cited herein, they are not attached to the Motion.  Copies of
these orders are available on request to the Debtor's counsel.

Canada or elsewhere. Accordingly, the Debtor respectfully submits that this Motion should be approved.

### Waiver of Memorandum of Points and Authorities

19.    The Debtor respectfully requests that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

### Notice

20.    The Debtor has provided notice of this Motion to:  (a) the U.S. Trustee; (b) proposed counsel to the statutory committee of unsecured creditors appointed in this chapter 11 case; (c) counsel to the agent under the Debtor's proposed postpetition financing agreement; (d) counsel to the agent under the First Lien Term Loan Agreement; (e) counsel to the agent under the Second Lien Term Loan Agreement; (f) counsel to the agent under the Revolving ABL Agreement; (g) counsel to counterparties under the Swap Agreements; (h) the Monitor; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Virginia Secretary of State; and (l) the Virginia Secretary of Treasury.  In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

### No Prior Request

21.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Sherrick Declaration, the

Debtor respectfully requests that the Court enter an order, substantially in the form attached

hereto as **Exhibit A**, granting the relief requested herein and granting such other and further

relief as the Court deems appropriate.

                                      **BEAR ISLAND PAPER COMPANY, L.L.C.**

Dated:  March 10, 2010
        Richmond, Virginia             By:  */s/ Jonathan L. Hauser*
                                     Of Counsel

Jonathan L. Hauser, Esquire
VSB No. 18688
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:      (757) 687-7768
Facsimile:      (757) 687-1505

      - and -

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Attorneys for the Debtor and*
*Debtor in Possession*

**Exhibit A**

**Proposed Order**

Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:       (757) 687-7768
Facsimile:        (757) 687-1505

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900

*Proposed Attorneys for the Debtor and
Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER APPROVING THE CROSS-BORDER PROTOCOL

Upon consideration of the motion, dated March 10, 2010 (the "Motion")[2], of Bear Island

Paper Company, L.L.C., as a debtor and debtor in possession ("Bear Island" or "Debtor"), for

entry of an order (the "Order") approving and implementing a procedural protocol to facilitate a

coordinated administration of Restructuring Proceedings in the United States and Canada (the

"Protocol"), all as more fully set forth in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334; and consideration of the Motion and the relief requested being a core proceeding pursuant

to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having found that the relief requested in the Motion is in the best

---

[1]   The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the
Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]   All capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

interests of the Debtor's estate, its creditors and other parties in interest; and the Debtor having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted in its entirety.

2.      The Protocol annexed as **Exhibit 1** hereto is approved in all respects.

3.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

5.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

6.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.    The Court retains jurisdiction with respect to all matters arising from or related to

the interpretation or implementation of this Order.


Dated:  _____, 2010
            Richmond, Virginia

_____
Chief Judge Douglas O. Tice
United State Bankruptcy Judge

3

I ASK FOR THIS:


*/s/ Jonathan L. Hauser*
Jonathan L. Hauser
VSB No. 18688
**TROUTMAN SANDERS LLP**
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:    (757) 687-7768
Facsimile:    (757) 687-1505

- and -

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Proposed Attorneys for the Debtor and*
*Debtor in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Jonathan L. Hauser*

**<u>Exhibit 1</u> to <u>Exhibit A</u>**

**Proposed Cross-Border Protocol and Guidelines**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CROSS-BORDER INSOLVENCY PROTOCOL FOR
BEAR ISLAND PAPER COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES**

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Restructuring Proceedings (as such term is defined herein).

**Background**

1.     On February 24, 2010, Bear Island Paper Company, L.L.C. ("Bear Island" or the "U.S. Debtor") commenced a reorganization case (the "U.S. Case") under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "U.S. Court").  The U.S. Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.     Simultaneously therewith, certain of Bear Island's Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Quebec Superior Court in Montreal, Quebec, Canada (the "Canadian Court") under the *Companies' Creditors Arrangement*

---

[1]     The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]     The Canadian Debtors include (a) White Birch Holding Company, (b) White Birch Paper Company, (c) Stadacona General Partner Inc., (d) Black Spruce Paper Inc., (e) F.F. Soucy General Partner Inc., (f) 3120772 Nova Scotia Company, (g) Arrimage De Gros Cacouna Inc., (h) Papier Masson Ltee, (i) Stadacona Limited Partnership, (j) F.F. Soucy Limited Partnership and (k) F.F. Soucy Inc. & Partners, Limited Partnership.

*Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") seeking relief from their creditors (collectively, the "Canadian Proceedings"). Since the commencement of the Canadian Proceedings, the Canadian Debtors have since obtained an initial order of the Canadian Court (the "CCAA Order"), pursuant to which (a) the Canadian Debtors have been granted certain relief under the CCAA, (b) Ernst & Young, Inc. has been appointed as monitor (the "Monitor") of the Canadian Debtors, with the rights, powers, duties and limitations of liabilities as forth in the CCAA and the CCAA Order and (c) a stay of proceedings has been initiated with respect to the Canadian Debtors.[3]

3.      For convenience, (a) the U.S. Debtor and the Canadian Debtors shall be referred to herein collectively as the "Debtors," (b) the U.S. Case and the Canadian Proceedings shall be referred to herein collectively as the "Restructuring Proceedings," and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "Courts," and each individually as a "Court."

## Purpose and Goals

4.      Although the U.S. Case and the Canadian Proceedings are separate proceedings pending in the United States and Canada, the implementation of administrative procedures and cross-border guidelines is both necessary and desirable to coordinate certain activities in the Restructuring Proceedings, protect the rights of parties thereto, ensure maintenance of the Courts' respective independent jurisdictions and give due effect to applicable doctrines such as comity, *res judicata*, issue estoppel, and collateral estoppel. Accordingly, this Protocol has been

---

[3]   Also on February 24, 2010, certain of the Canadian Debtors, through White Birch Paper Company -- their Canadian Court appointed "foreign representative" -- filed a petition with this Court to recognize the Canadian Proceedings as "foreign main proceedings."

developed to promote the following mutually desirable goals and objectives in the Restructuring

Proceedings:

a.    harmonize and coordinate activities in the Restructuring Proceedings before the Courts;

b.    promote the orderly and efficient administration of the Restructuring Proceedings to, among other things, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith and avoid duplication of effort;

c.    honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada;

d.    promote international cooperation and respect for comity among the Courts, the Debtors, the U.S. Representatives (as defined herein), the Canadian Representatives (as defined herein, and, together with the U.S. Representatives, the "Estate Representatives"), the office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee"), the Monitor and other creditors and interested parties in the Restructuring Proceedings;

e.    facilitate the fair, open and efficient administration of the Restructuring Proceedings for the benefit of all of the Debtors' creditors and other interested parties, wherever located; and

f.    implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Restructuring Proceedings.

## Comity and Independence of the Courts

5.    The approval and implementation of this Protocol shall not divest or diminish the

U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject

matter of the U.S. Case and the Canadian Proceedings, respectively.   By approving and

implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any

creditors or interested parties shall be deemed to have approved or engaged in any infringement

on the sovereignty of the United States or Canada.

6.    The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Case and the hearing and determination of matters arising in the U.S. Case. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising therein.

7.    In accordance with the principles of comity and independence, nothing contained herein shall be construed to:

    a.    increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" basis;

    b.    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

    c.    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

    d.    require the Debtors, the Estate Representatives, the U.S. Trustee or the Monitor to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

    e.    authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

    f.    preclude the Debtors, the U.S. Trustee, the Monitor or any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction, including the rights of parties in interest to appeal from the decisions taken by one or both Courts.

## Cooperation

8.    To assist in the efficient administration of the Restructuring Proceedings and recognizing that the U.S. Debtor and the Canadian Debtors may each be creditors of the others' estates, the Debtors and their respective Estate Representatives shall, where appropriate:

(a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court; and (b) take any other appropriate steps to coordinate the administration of the Restructuring Proceedings for the benefit of the Debtors' respective estates.

9.      To harmonize and coordinate the administration of the Restructuring Proceedings, the U.S. Court and the Canadian Court may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court. In furtherance of the foregoing:

    a.    the U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural or substantive matter relating to the Restructuring Proceedings;

    b.    where the issue of the proper jurisdiction or Court to determine an issue is raised by an interested party in either of the Restructuring Proceedings with respect to a motion or an application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court and determine (i) an appropriate process by which the issue of jurisdiction will be determined and (ii) which process shall be subject to submissions by the Debtors, the U.S. Trustee, the Monitor and any interested party before any determination on the issue of jurisdiction is made by either Court;

    c.    the Courts may, but are not obligated to, coordinate activities in the Restructuring Proceedings so that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in one Court; and

    d.    the U.S. Court and the Canadian Court may conduct joint hearings ("Joint Hearings") with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of the U.S. Case or the Canadian Proceedings if both Courts determine and agree that such Joint Hearings are necessary or advisable. With respect to any such Joint Hearings, unless otherwise ordered by both Courts, the following procedures shall be followed:

        (i)    a telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court;

        (ii)    notices, submissions or applications by any party that are or become the subject of a Joint Hearing (collectively, the "Pleadings") shall only be made or initially filed with the Court in which such party is appearing and seeking relief. Promptly after

5

the scheduling of any Joint Hearing, the party submitting such Pleadings to one Court shall file copies with the other Court. In any event, Pleadings seeking relief from both Courts must be filed with both Courts;

(iii)    any party intending to rely upon written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any Joint Hearing (collectively, the "Evidentiary Materials") shall file or otherwise submit such Evidentiary Materials to both Courts in advance of the Joint Hearing. To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court;

(iv)    if a party has not previously appeared in or otherwise acknowledged the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with a Joint Hearing without, by the mere act of such filings, being deemed to have acknowledged the jurisdiction of the Court in which such material is filed, so long as it does not request any affirmative relief from such Court;

(v)    the Judge of the U.S. Court and the Justice of the Canadian Court who preside over any Joint Hearing shall be entitled to communicate with each other in advance of any Joint Hearing, with or without counsel being present, to (A) establish guidelines for the orderly submission of Pleadings and Evidentiary Materials, (B) establish guidelines by which the Courts shall render decisions and (C) address any related procedural, administrative or preliminary matters; and

(vi)    the Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other during or after any Joint Hearing, with or without counsel being present, for the purposes of (A) determining whether consistent rulings can be made by both Courts, (B) coordinating the terms of the Courts' respective rulings and (C) addressing any other procedural or administrative matters.

10.    Notwithstanding anything herein to the contrary, this Protocol recognizes that the

U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts

will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be

entitled at all times to exercise its independent jurisdiction and authority with respect to

6

(a) matters presented to and properly before such Court and (b) the conduct of the parties appearing in such matters.

11.     Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to Paragraph 30 herein.

### Access to Information

12.     Information publicly available in either forum shall be publicly available in both forums.

### Development of Plan of Arrangement or Plan of Reorganization

13.     Nothing herein shall otherwise restrict or limit the U.S. Debtor or Canadian Debtors from (a) participating as creditors in the others' estates or (b) having access to information and the ability to comment on or vote on any plan of reorganization or plan of arrangement proposed in respect of the others' estates.

### Retention and Compensation of Estate Representatives and Professionals

14.     The Monitor and its respective officers, directors, employees, counsel and agents, wherever located (collectively, the "Monitor Parties"), and any other estate representatives appointed or retained by the Canadian Debtors in the Canadian Proceedings (collectively, with the Monitor Parties, the "Canadian Representatives") shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:  (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Restructuring

Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian

Representatives arising in the Canadian Proceedings or under the CCAA or other applicable

Canadian law. The Canadian Representatives shall not be required to seek approval of their

retention or compensation in the U.S. Court for services rendered in such capacity and shall be

compensated for their services solely in accordance with the CCAA, the CCAA Order and other

applicable laws of Canada or orders of the Canadian Court.

15.    The Monitor Parties shall be entitled to the same protections and immunities in

the United States as those granted to them under the CCAA and the CCAA Order. In particular,

except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the

Monitor Parties shall incur no liability or obligations as a result of the CCAA Order, the

appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the

CCAA Order by the Monitor Parties, except any such liability arising from actions of the

Monitor Parties constituting gross negligence or willful misconduct.

16.    Any estate representatives appointed in the U.S. Case, including any examiners or

trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the

"U.S. Representatives"), shall be subject to the sole and exclusive jurisdiction of the U.S. Court

with respect to all matters, including: (a) the U.S. Representatives' tenure in office; (b) the

retention and compensation of the U.S. Representatives; (c) the U.S. Representatives' liability, if

any, to any person or entity, including the U.S. Debtor and any third parties, in connection with

the Restructuring Proceedings; and (d) the hearing and determination of any other matters

relating to the U.S. Representatives arising in the U.S. Case under the Bankruptcy Code or other

applicable laws of the United States. The U.S. Representatives and their U.S. counsel and other

U.S. professionals shall not be required to seek approval of their retention or compensation in the

8

Canadian Court and shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court.

17.     Any professionals retained by the Canadian Debtors, (collectively, the "Canadian Professionals") shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Accordingly, the Canadian Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the CCAA Order and any other applicable Canadian law or orders of the Canadian Court with respect to services performed on behalf of the Canadian Debtors and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court in connection with the Canadian Proceedings.

18.     Any professionals retained by the U.S. Debtor (collectively, the "Chapter 11 Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the Chapter 11 Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code with respect to services performed on behalf of the U.S. Debtor and any other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court with respect to services performed in connection with the U.S. Case.

19.     Upon any appearance or filing, as may be permitted or provided for by the rules of the applicable Court, the U.S. Debtor, its creditors and other interested parties in the Restructuring Proceedings, including the Estate Representatives, the U.S. Trustee and the Monitor, shall be subject to the personal jurisdiction of the U.S. Court or the Canadian Court, as applicable, with respect to the particular matters as to which they appear before the Court.

## Notice

20.     Notice of any motion, application or other pleading or paper filed in any of the Restructuring Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile or other electronic forms of communication) to the following: (a) all creditors and other interested parties, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under subpart (a) of this sentence, counsel to the Debtors, the U.S. Trustee, the Monitor and such other parties as may be designated from time to time. Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur. In addition to the foregoing, upon request, the Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of any orders, decisions, opinions or similar papers issued by the other Court in the Restructuring Proceedings.

21.     When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notice shall be provided in the manner and to the parties referred to in paragraph 20 above.

## Effectiveness; Modification

22.     This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

23.     This Protocol may not be supplemented, modified, terminated or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing. Notice of any legal proceedings to supplement, modify, terminate or replace this Protocol shall be given in accordance with Paragraph 20 above.

10

## Procedure for Resolving Disputes Under the Protocol

24.     Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with Paragraph 20 above.  In rendering a determination in any such dispute, the Court to which the issue is addressed:  (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either (i) render a binding decision after such consultation, (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to the other Court or (iii) seek a Joint Hearing in accordance with Paragraph 9 above. Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

## Advice and Directions

25.     In implementing the terms of the Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

a.      the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

b.      the Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

c.      copies of such written advice or guidance shall be served by the applicable Court in accordance with Paragraph 20 hereof; and

d.      the Courts may jointly decide to invite the Debtors, the Estate Representatives, the U.S. Trustee, the Monitor and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

11

For clarity, the provisions of this Paragraph 29 shall not be construed to restrict the ability of the U.S. Court or the Canadian Court to confer, as provided above, whenever they deem it appropriate to do so.

## **Preservation of Rights**

26.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall (a) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Estate Representatives, the U.S. Trustee, the Monitor or any of the Debtors' creditors under applicable law, including the Bankruptcy Code, the CCAA and the Orders of the Courts or (b) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of the United States or Canada.

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was sent either electronically or by first class mail, postage prepaid, this 10th day of March, 2010, to all necessary parties.


_/s/ Jonathan L. Hauser_____