Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:     (757) 687-7768
Facsimile:      (757) 687-1505

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Attorneys for the Debtor and
Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) ) | Case No. 10-31202 (DOT) |
| Debtor. | ) ) ) | |

## APPLICATION OF THE DEBTOR FOR ENTRY OF AN
## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
## OF KIRKLAND & ELLIS LLP AS ATTORNEYS FOR THE DEBTOR
## AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

Bear Island Paper Company, L.L.C., as a debtor and a debtor in possession ("Bear

Island" or "Debtor"), files this application (the "Application") for the entry of an order,

substantially in the form attached as **Exhibit A**, authorizing the Debtor to retain Kirkland & Ellis

LLP ("K&E") *nunc pro tunc* to the Petition Date (as defined herein) as its lead attorneys.   In

support of the Application, the Debtor submits the Declaration of Richard M. Cieri, a partner at

K&E, (the "Cieri Declaration") attached hereto as **Exhibit B**.   In further support of the

Application, the Debtor respectfully states as follows:

---

[1]   The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the
Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

## Jurisdiction

1.     The United States Bankruptcy Court for the Eastern District of Virginia (this "Court" or the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

## Background

4.     On the February 24, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     Contemporaneously with the commencement of this chapter 11 case (the "Chapter 11 Case"), the Debtor's indirect parent—White Birch Paper Holding Company ("WB Holding")—and ten of WB Holding's direct and indirect Canadian subsidiaries (collectively the "CCAA Applicants," and together with Bear Island, the "WB Group") have sought relief under the *Companies' Creditors Arrangement Act* (the "CCAA") in the Quebec Superior Court of Justice (the "Canadian Court") in Montreal, Quebec, Canada (the "CCAA Cases").[2]  So as to

---

[2]    The CCAA Applicants include (a) WB Holding, (b) White Birch Paper Company, (c) Stadacona General Partner Inc., (d) Black Spruce Paper Inc., (e) F.F. Soucy General Partner Inc., (f) 3120772 Nova Scotia
(Continued)

2

ensure consistency and comity among the courts overseeing these related cases, the Debtor and the CCAA Applicants are also seeking Bankruptcy Court and Canadian Court approval of a customary cross-border protocol that will govern procedures for, among other things, court-to-court communications and matters requiring approval by both courts. Moreover, at the initial hearing in the CCAA Cases, the Canadian Court appointed White Birch Paper Company ("White Birch Company") as the foreign representative of the CCAA Applicants and the Canadian Court for the purpose of seeking ancillary relief in other jurisdictions, such as the United States, as appropriate, to further the CCAA Applicants' restructuring. Shortly thereafter, White Birch Company, in its capacity as foreign representative, filed petitions in this Court seeking recognition of the CCAA Cases and other requests for relief on behalf of itself and five other CCAA Applicants (collectively, the "Chapter 15 Debtors")[3] under chapter 15 of the Bankruptcy Code. Those recognition proceedings (the "Chapter 15 Cases") are being jointly administered by this Court under the following case caption: In re White Birch Paper Company, et al., No. 10-31234 (DOT) (Bankr. E.D. Va.).

6.      The WB Group is the second-largest newsprint manufacturer in North America. In fact, as of December 31, 2009, the WB Group held a 12% share of the North American newsprint market and employed approximately 1,300 individuals. Additionally, for the twelve months ended December 31, 2009, the WB Group's mills maintained a production capacity of

---

Company, (g) Arrimage De Gros Cacouna Inc., (h) Papier Masson Ltee, (i) Stadacona Limited Partnership, (j) F.F. Soucy Limited Partnership, and (k) F.F. Soucy Inc. & Partners, Limited Partnership.

[3]  The six chapter 15 debtors include (a) White Birch Company, (b) Stadacona General Partner Inc., (c) Stadacona Limited Partnership, (d) F.F. Soucy Limited Partnership, (e) F.F. Soucy Inc. & Partners, Limited Partnership, and (f) Papier Masson Ltee.

3

approximately 1.3 million metric tons of newsprint and directory paper (50% of which is made from recycled content) and achieved net sales of approximately $667 million.

7.      The WB Group operates four integrated paper mills strategically located to serve many of the largest newsprint markets in North America. The WB Group's mills include the Bear Island mill, located in Ashland, Virginia, the Soucy mill located on the St. Lawrence River in Riviere-du-Loup, Quebec, the Stadacona mill located on the St. Lawrence River in Quebec City, Quebec, and the Papier Masson mill, located in Gatineau, Quebec. In addition to newsprint, the WB Group produces small amounts of directory paper, paperboard, and lumber. Its customers include publishers like Gannett and Dow Jones, as well as commercial printers such as Transcontinental.

8.      Bear Island is a Virginia limited liability company that was organized in 1997 as a wholly-owned subsidiary of White Birch Company and employs approximately 200 of the WB Group's 1,300 employees. Strategically located in Ashland, Virginia, the Bear Island mill annually produces approximately 235 thousand metric tons of newsprint paper that services customers in New York, Philadelphia, Baltimore, and Washington, D.C. Bear Island also operates a paper machine, woodyard, pulping system, recycling facility, an on-site waste and water treatment facility, an industrial landfill for its on-site solid waste disposal, as well as storage and transportation facilities. For the twelve months ended December 31, 2009, Bear Island's net sales totaled approximately $125 million, which accounted for 19% of the WB Group's net sales for the same period.

## Relief Requested

9.      By this Application, the Debtor seeks entry of an order pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local

4

Bankruptcy Rules 2014-1 and 2016-1 authorizing the employment and retention of K&E as its attorneys, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in that certain engagement letter between White Birch Company and K&E dated as of May 11, 2009 (the "Engagement Letter"), a copy of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto and incorporated herein by reference.

10.     On the Petition Date, the Debtor filed an application to employ and retain Troutman Sanders LLP ("Troutman Sanders") as its attorneys in the Chapter 11 Case. K&E does not maintain an office in the Commonwealth of Virginia, and to comply with Local Bankruptcy Rule 2090-1, the Debtor is required to retain local counsel. In connection with the Chapter 11 Case, to the extent any causes of action are commenced by or against a K&E client, and a waiver letter is not obtained permitting K&E to participate in such action, either Troutman Sanders will represent the Debtor in that particular matter or the Debtor will retain separate conflicts counsel to do so.

### K&E's Qualifications

11.     The Debtor seeks to retain K&E because of K&E's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

12.     K&E has been actively involved in major chapter 11 cases and has represented debtors in many cases, including: In re Movie Gallery, Inc., No. 07-33849 (Bankr. E.D. Va. Oct. 16, 2007); In re Citadel Broadcasting Corp., No. 09-17442 (Bankr. S.D.N.Y. Feb. 3, 2009); In re The Majestic Star Casino, LLC, No. 09-14136 (Bankr. D. Del. Nov. 23, 2009); In re Stallion Oilfield Services Ltd., No. 09-13562 (Bankr. D. Del. Nov. 16, 2009); In re The Readers Digest Assoc., No. 09-3529 (Bankr. S.D.N.Y. Sept. 17, 2009); In re Lear Corporation, No. 09-14326

(Bankr. S.D.N.Y. July 31, 2009); In re ION Media Networks, Inc., No. 09-13125 (Bankr. S.D.N.Y. June 23, 2009); In re Visteon Corporation, No. 09-11786 (Bankr. D. Del. June 19, 2009); In re DBSD North America, Inc., No. 09-13061 (Bankr. S.D.N.Y. June 9, 2009); In re Gen. Growth Props., Inc., No. 09-11977 (Bankr. S.D.N.Y. May 26, 2009); In re Sun-Times Media Group, Inc., No. 09-11092 (Bankr. D. Del. Apr. 29, 2009); In re Chemtura Corp., No. 09-11233 (Bankr. S.D.N.Y. Apr. 29, 2009); In re Source Interlink Companies, Inc., No. 09-11424 (Bankr. D. Del. Apr. 28, 2009); In re Charter Commc'ns, Inc., No. 09-11435 (Bankr. S.D.N.Y. Apr. 15, 2009); In re Masonite Corp., No. 09-10844 (Bankr. D. Del. Apr. 15, 2009); In re Muzak Holdings LLC, No. 09-10422 (Bankr. D. Del. Feb. 10, 2009); In re Tronox, Inc., No. 09-10156 (Bankr. S.D.N.Y. Feb.6, 2009); In re Flying J, Inc., No. 08-13384 (Bankr. D. Del. Jan. 15, 2009); In re Portola Packaging, Inc., No. 08-12001 (Bankr. D. Del. Sept. 22, 2008); In re Hines Horticulture, Inc., No. 08 11922 (Bankr. D. Del. Sep. 10, 2008); In re Pierre Foods Inc., No. 08-11480 (Bankr. D. Del. Aug. 14, 2008); In re ACG Holdings, Inc., No. 08-11467 (Bankr. D. Del. Aug. 11, 2008); In re Kimball Hill, Inc., No. 08 10095 (Bankr. N.D. Ill. May 13, 2008); and In re Wellman, Inc., No. 08-10595 (Bankr. S.D.N.Y. Feb. 22, 2008).

13.    K&E has represented the WB Group with respect to restructuring matters since May 11, 2009. Thus, K&E is familiar with the Debtor's business and many of the potential legal issues that may arise in the context of this chapter 11 case and the cross-border restructuring as a whole. In addition, K&E is currently representing White Birch Company, in its capacity as foreign representative, and the Chapter 15 Debtors in their Chapter 15 Cases pending before this Court. Accordingly, the Debtor believes that K&E is both well qualified and uniquely able to represent the Debtor in this Chapter 11 Case and in connection with the WB Group's cross-border restructuring in an efficient and timely manner.

## Services to be Provided

14.    Subject to further order of the Court and consistent with the Engagement Letter between the WB Group and K&E, the Debtor requests the retention of K&E to render the following legal services:

a.    advising the Debtor with respect to its powers and duties as a debtor in possession in the continued management and operation of its business and properties;

b.    advising and consulting on the conduct of the Chapter 11 Case, including all of the legal and administrative requirements of operating in chapter 11;

c.    attending meetings and negotiating with representatives of the creditors and other parties in interest;

d.    taking all necessary actions to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor, and representing the Debtor's interests in negotiations concerning litigation in which the Debtor is involved, including objections to claims filed against the Debtor's estate;

e.    preparing pleadings in connection with the Chapter 11 Case, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtor's estate;

f.    representing the Debtor in connection with obtaining authority to continue using cash collateral and, if necessary, postpetition financing;

g.    advising the Debtor in connection with any potential sale of assets;

h.    appearing before the Court and any appellate courts to represent the interests of the Debtor's estate;

i.    advising the Debtor regarding certain tax matters;

j.    taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.    performing all other necessary legal services for the Debtor in connection with the prosecution of the Chapter 11 Case, including (i) analyzing the Debtor's leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtor; and (iii) advising the Debtor on corporate and litigation matters.

K&E:16393654.5

**Professional Compensation**

15.     K&E intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with this Chapter 11 Case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the Office of the United States Trustee for the Eastern District Virginia (the "U.S. Trustee"), and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure that K&E will use in this Chapter 11 Case are equivalent to the hourly rates and corresponding rate structure that K&E predominantly uses for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that corporate restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

16.     K&E operates in a dynamic, national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.  Because the sub-markets for legal services are fragmented and are affected by a variety of individualized and interdependent factors, K&E has no one rate for an individual biller that applies to all matters for all clients.  K&E's rates for an individual biller may vary as a function of the type of matter, geographic circumstance, nature of certain long-term client relationships, and various other factors.

17.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  Hourly

8

rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. In particular, K&E's current hourly rates for matters related to the chapter 11 case range as follows:[4]

| Billing Category | Range |
|---|---|
| Partners | $580-$995 |
| Of Counsel | $435-$995 |
| Associates | $340-$670 |
| Paraprofessionals | $135-$285 |

18.     The following professionals are presently expected to have primary responsibility for providing services to the Debtor: Richard M. Cieri, Christopher J. Marcus, and Michael A. Cohen. In addition, as necessary, other K&E professionals and paraprofessionals will provide services to the Debtor.

19.     It is K&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also K&E's policy to charge its clients only the amount actually incurred by K&E in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals, and lodging.

20.     To ensure compliance with all applicable deadlines in the Chapter 11 Case, K&E, from time to time, utilizes the services of overtime secretaries. K&E charges fees for these

---

[4]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars it is possible that certain rates may exceed the billing ranges listed in the chart herein.

K&E:16393654.5

services pursuant to the Engagement Letter, which permits K&E to bill the Debtor for overtime secretarial charges that arise out of business necessity. In addition, K&E professionals also may charge their overtime meals and overtime transportation to the Debtor consistent with prepetition practices.

21.    K&E currently charges between $0.10 and $0.15 per page for standard duplication in its offices in the United States. K&E does not charge its clients for facsimile transmissions. K&E has negotiated a discounted rate for Westlaw computer assisted legal research. Computer assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

22.    Consistent with the terms of the Engagement Letter, on June 30, 2009 White Birch Company paid $74,990.00 to K&E as a classic retainer. As the engagement intensified, the retainer was subsequently increased to $249,990.00 before the 90-days prior to the Petition Date. The foregoing retainer payments constitute "classic retainer" payments as defined in In re Prod. Assocs., Ltd., 264 B.R. 180, 184–85 (Bankr. N.D. Ill. 2001), and In re McDonald Bros. Constr., Inc., 114 B.R. 989, 997–99 (Bankr. N.D. Ill. 1990). As such, K&E earned the classic retainer upon receipt, and, consequently, K&E placed the amounts into its general cash account. The amounts K&E has invoiced White Birch Company against the classic retainer for professional services and for the reimbursement of reasonable and necessary expenses incurred in connection therewith are set forth in the chart below. As of the Petition Date, the retainer balance was approximately $116,271.10.

K&E:16393654.5

23.    During the 90-day period prior to the Petition Date, White Birch Company paid

K&E the following amounts:[5]

| Type of Transaction | Invoice Number | Invoice Date | Billed Amount | Payment Date | Payment Amount | Retainer Balance |
|---|---|---|---|---|---|---|
| Retainer Replenishment | | | | 11/16/2010 | $104,691.09 | $249,960.00 |
| Invoice | 3512671 | 12/1/2009 | $124,266.09 | | | $125,693.91 |
| Retainer Replenishment | | | | 12/10/2010 | $124,256.09 | $249,950.00 |
| Invoice | 3525527 | 1/8/2010 | $119,718.47 | | | $130,231.53 |
| Retainer Replenishment | | | | 1/12/2010 | $119,708.47 | $249,940.00 |
| Invoice | 3541482 | 2/8/2010 | $105,014.50 | | | $144,925.50 |
| Retainer Replenishment | | | | 2/10/2010 | $105,004.50 | $249,930.00 |
| Invoice | 3547066 | 2/18/2010 | $188,898.44 | | | $61,021.56 |
| Retainer Replenishment | | | | 2/19/2010 | $188,898.44 | $249,930.00 |
| Advance Estimated Payment | | | | 2/19/2010 | $51,101.56 | $301,031.56 |
| Invoice | 3548065 | 2/23/2010 | $184,760.46 | | | $116,271.10 |
| Invoice | 3548066 | 2/23/2010 | $100,000.00 | | | $16,271.10 |
| Retainer Replenishment | | | | 2/24/2010 | $100,000.00 | $116,271.10 |

24.    Moreover, pursuant to Bankruptcy Rule 2016(b), K&E has not shared nor agreed

to share (a) any compensation it has received or may receive with another party or person, other

than with the partners, associates, and contract attorneys associated with K&E or (b) any

compensation another person or party has received or may receive.  Any amounts owed by the

WB Group for fees and expenses incurred prior to the Petition Date will be less than the balance

of K&E's retainer as of the Petition Date.

25.    As more fully described above, the WB Group is engaged in a complex cross-

border restructuring involving the CCAA Cases, the Chapter 15 Cases, and this Chapter 11 Case.

To ensure that the Debtor is not improperly billed for work performed on behalf of other WB

---

[5]    The retainer increases and retainer replenishments reflected in the chart above, were paid by non-Debtor White Birch Company.

11

Group members, and that the non-Debtor entities in the WB Group are not paying K&E for work performed on behalf of the Debtor in its Chapter 11 Case, K&E intends to provide separate bills for the work it performs and expenses it incurs on behalf of the Debtor in its Chapter 11 Case. Accordingly, any work performed on behalf of (a) White Birch Company (in its capacity as foreign representative) and the Chapter 15 Debtors and/or (b) the WB Group as a whole in connection with the cross border restructuring will be billed separately and reimbursed by White Birch Company in a manner consistent with applicable Canadian law and will not be subject to this Court's approval. All work performed by K&E in connection with the Chapter 11 Case will be paid for by the Debtor's estate subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, the guidelines established by the U.S. Trustee, and any other applicable procedures and orders of the Court.

### K&E's Disinterestedness

26.    To the best of the Debtor's knowledge and as disclosed herein and in the Cieri Declaration: (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate; and (b) K&E has no connection to the Debtor, its creditors, or its related parties except as may be disclosed herein and in the Cieri Declaration.

27.    K&E will review its files periodically during the pendency of the Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, K&E will use reasonable efforts to identify

12

such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Waiver of Memorandum of Points and Authorities

28.     The Debtor respectfully requests that this Court treat this Application as a written memorandum of points and authorities or waive any requirement that this Application be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

### Notice

29.     The Debtor has provided notice of this Application to:  (a) the Office of the United States Trustee for the Eastern District of Virginia; (b) proposed counsel to the statutory committee of unsecured creditors appointed in this Chapter 11 Case; (c) counsel to the agent under the Debtor's proposed postpetition financing agreement; (d) counsel to the agent under the First Lien Term Loan Agreement; (e) counsel to the agent under the Second Lien Term Loan Agreement; (f) counsel to the agent under the Revolving ABL Agreement; (g) counsel to counterparties under the Swap Agreements; (h) the monitor appointed in the CCAA Cases; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Virginia Secretary of State; and (l) the Virginia Secretary of Treasury.  In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

### No Prior Request

30.     No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Cieri Declaration, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

<table>
<tr><td>Dated: March 10, 2010<br>Richmond, Virginia</td><td><strong>BEAR ISLAND PAPER COMPANY, L.L.C.</strong><br><br>By: <em>/s/ Jonathan L. Hauser</em><br>Of Counsel</td></tr>
</table>

Jonathan L. Hauser, Esquire
VSB No. 18688
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:    (757) 687-7768
Facsimile:    (757) 687-1505

     - and -

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Proposed Attorneys for the Debtor and
Debtor in Possession*

14

**<u>Exhibit A</u>**

**Proposed Order**

Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:     (757) 687-7768
Facsimile:     (757) 687-1505

*Proposed Attorneys for the Debtor and
Debtor in Possession*

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
KIRKLAND & ELLIS LLP AS ATTORNEYS FOR THE DEBTOR
AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application, dated March 10, 2010 (the "Application"), of Bear Island Paper

Company, L.L.C., as a debtor and a debtor in possession ("Bear Island" or the "Debtor"), for

entry of an order (this "Order") authorizing the Debtor to retain Kirkland & Ellis LLP ("K&E")

*nunc pro tunc* to the Petition Date,[2] pursuant to sections 327(a) and 330 of the Bankruptcy Code,

Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 as more

fully set forth in the Application; and the Court having found that the relief requested is in the

best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court

having found that it has jurisdiction to consider the Application and the relief requested therein

---

[1]   The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the
     Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

K&E:16393654.5

pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that consideration of the

Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b);

and the Court having found that venue in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having found that the Debtor has provided appropriate notice of the

Application and the opportunity for a hearing on the Application under the circumstances and

that no other or further notice need be provided; and the Court having reviewed the Application

and the Cieri Declaration; and the Court having heard the statements in support of the relief

requested therein at a hearing before the Court (the "Hearing"); and the Court having found

based on the representations made in the Application and the Cieri Declaration that (a) K&E

does not hold or represent an interest adverse to the Debtor's estate and (b) K&E is a

"disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by

section 327(a) of the Bankruptcy Code and Local Bankruptcy Rules 2014-1 and 2016-1; and the

Court having determined that the legal and factual bases set forth in the Application and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings heard

before the Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Application is approved as provided herein, *nunc pro tunc* to the Petition

Date.

2.      The Debtor is authorized to retain K&E as its attorneys in accordance with the

terms and conditions set forth in the Application and in the Engagement Letter attached hereto as

**Exhibit 1**.

3.      K&E is authorized to render professional services to the Debtor as described in

the Application and the Engagement Letter.

2

K&E:16393654.5

4.      K&E shall apply for compensation for professional services rendered on behalf of the Debtor and reimbursement of expenses incurred in connection with the Debtor's Chapter 11 Case in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the United States Trustee, and any other applicable procedures and orders of the Court.

5.      K&E will provide separate bills for the work it performs and expenses it incurs on behalf of the Debtor in its Chapter 11 Case.  Any work performed on behalf of (a) White Birch Company (in its capacity as foreign representative) and the Chapter 15 Debtors and/or (b) the WB Group as a whole in connection with the cross border restructuring will be billed separately and reimbursed by White Birch Company in a manner consistent with applicable Canadian law and will not be subject to this Court's approval.

6.      Allowance of K&E's compensation for services and reimbursement of expenses shall not be denied as a result of any facts disclosed in the Cieri Declaration on the basis that K&E is (a) not disinterested or (b) holds or represents any interest in the Chapter 11 Case that is adverse to the Debtor's estate on the matters for which K&E is proposed to be employed.

7.      The Debtor and K&E are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

3

K&E:16393654.5

9.      The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.


Dated: _____, 2010
              Richmond, Virginia                              _____
                                                              Chief Judge Douglas O. Tice, Jr.
                                                              United States Bankruptcy Judge

4

I ASK FOR THIS:

*/s/ Jonathan L. Hauser*
Jonathan L. Hauser
VSB No. 18688
**TROUTMAN SANDERS LLP**
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:    (757) 687-7768
Facsimile:    (757) 687-1505

- and -

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Proposed Attorneys for the Debtor and
Debtor in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing
proposed order has been endorsed by or served upon all necessary parties.

*/s/ Jonathan L. Hauser*

5

**<u>Exhibit 1</u>**

**Engagement Letter**

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

Dated as of May 11, 2009

**PRIVILEGED & CONFIDENTIAL**
**FOR ADDRESSEE'S EYES ONLY**

White Birch Paper Company
80 Field Point Road
Greenwich, CT 06830
Attn:    Edward D. Sherrick
        Senior Vice President
        Chief Financial Officer

Re:    Retention to Provide Legal Services

Dear Edward:

We are very pleased that you have asked us to represent White Birch Paper Company and its subsidiaries and affiliates (collectively, "you," "your" or the "Company") in connection with a potential restructuring. Please note, the Firm's representation is only of the Company; the Firm does not and will not represent any shareholder, director, officer, partner, or joint venturer of the Company.

**General Terms.** This retention letter (the "Agreement") sets forth the terms of your retention of Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively "K&E LLP" or the "Firm") to provide legal services and constitutes an agreement between us. The Agreement sets forth our entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters, except where we otherwise agree in writing (*e.g.*, by signing a different retention letter).

**Personnel.** I, along with my partners, Paul Basta and Chris Marcus, will be primarily responsible for this engagement. My hourly rate is $965.00. The hourly rates for Paul and Chris are $895.00 and $725.00, respectively. The range of hourly rates for associates and partners in our U.S. offices is $320.00 - $965.00. Other attorneys and legal assistants also will perform services during the course of this engagement. We will involve such other lawyers and legal assistants in K&E LLP to the extent that your needs make such involvement desirable and acceptable to you.

**Fees.** The Firm will bill the Company for fees incurred at its regular hourly rates and in increments of one tenth of an hour. We reserve the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of the Company.

K&E 14991943

Although we will attempt to estimate fees to assist you in your planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

**Expenses.** Expenses related to providing services shall be included in our statements as disbursements advanced by us on your behalf. Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges. Our clients pay directly (and are solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers or contractors' charges. By executing this Agreement below, you agree to pay for all charges in accordance with the K&E LLP's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.** Our statements for fees and expenses are typically rendered monthly and, unless other arrangements are made, payment in full is due upon receipt. We may adjust our billing cycle upon agreement with you. You may have the billing statement in any reasonable format you choose, but we will select an initial format for the statement unless you otherwise request in writing. Depending on the circumstances, however, estimated or summary bills may be provided during certain billing cycles, with supporting time descriptions and expense summaries to follow thereafter.

**Retainer.** The Company will provide to the Firm a "classic retainer" in the amount of US $75,000 as defined in *In re Production Associates, Ltd.*, 264 B.R. 180, 184 85 (Bankr. N.D. Ill. 2001) and *In re McDonald Bros. Construction, Inc.*, 114 B.R. 989, 997 99 (Bankr. N.D. Ill. 1990). As such, the classic retainer was earned by the Firm upon receipt. The initial amount of the classic retainer was set to approximate our estimate of fees and expenses expected to be accrued and unpaid by the Company between payment cycles. The Firm's estimate of expected fees and expenses may change based upon actual or expected fees and expenses incurred or expected to be incurred, as applicable. Further, the Company agrees to replenish the classic retainer upon receiving invoices from the Firm so that the classic retainer amount remains at or above the Firm's reasonably estimated fees and expenses expected to be accrued and unpaid by the Company between payment cycles.

The classic retainer will be placed into K&E LLP's general cash account, will not be held in a separate account on your behalf, and you will not receive any interest on these monies. You have no interest in the classic retainer. This amount does not constitute a security deposit.

**Termination.** Our retention may be terminated by either of us at any time by written notice by or to you. Our representation will end at the earliest of (a) your termination of our representation, (b) our withdrawal for cause, and (c) the substantial completion of our substantive work. We normally do not withdraw from a representation unless the client misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it

- 2 -

Case 10-31202-DOT    Doc 104    Filed 03/10/10    Entered 03/10/10 19:20:00    Desc Main
Document    Page 24 of 76

unethical or unreasonably difficult for us to continue to represent the client, or unless other just cause exists. If permission for withdrawal is required by a court, we shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or our services are terminated for any reason, such termination shall be effective only to terminate our services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of our active involvement in a particular matter (even if we continue active involvement in other matters on your behalf), we will have no further duty to inform you of future developments or changes in law as may be relevant to such matter. Further, unless you and we mutually agree in writing to the contrary, we will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which we had been retained.

**Cell Phone and E-Mail Communication.** K&E LLP hereby informs you and you hereby acknowledge that K&E LLP's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that you must inform K&E LLP if you do not wish K&E LLP to discuss privileged matters on cell telephones with you or your professionals or agents.

K&E LLP hereby informs you and you hereby acknowledge that K&E LLP's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that you must inform K&E LLP if you wish to institute a system to encode all e-mail between K&E LLP and you or your professionals or agents.

**File Retention.** All records and files will be retained and disposed of in compliance with our policy in effect from time to time. Subject to future changes, it is our current policy generally not to retain records relating to a matter for more than five years. Upon your prior written request, we will return client records to you prior to their destruction. It is not administratively feasible for us to advise you of the closing of a matter or the disposal of records. We recommend, therefore, that you maintain your own files for reference or submit a written request for your client files promptly upon conclusion of a matter.

**Conflicts of Interest.** As is customary for a law firm of our size, you currently have relationships with numerous business entities that K&E LLP has represented or currently represents in matters unrelated to you. Further, in undertaking our representation of the Company, we want to be fair not only to its interests but also to those of our other clients. Because the Company is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of our other clients, the possibility exists that one of our current or future clients may take positions adverse to the Company (including litigation or other dispute resolution mechanisms) in a matter in which K&E LLP may be

- 3 -

K&E 15918943

retained.  In the event a present conflict of interest exists between the Company and our other clients or in the event one arises in the future, the Company agrees to waive any such conflict of interest or other objection that would preclude our representation of another client in other current or future matters, substantially unrelated to this representation of the Company other than with respect to litigation against the Company.  The Company also agrees that our representation is solely of the Company and that no member or other entity or person related to it (such as directors, officers or employees) has the status of a client for conflict of interest purposes.

Restructuring Cases.  In the unlikely event it becomes necessary for you to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code, our ongoing employment by you will be subject to the approval of the court with jurisdiction over the petition.  If necessary, K&E LLP will take steps necessary to prepare the disclosure materials required in connection with K&E LLP's retention as lead restructuring counsel.  In the near term, K&E LLP will begin conflicts checks on potentially interested parties as provided by you.

If necessary, we will prepare a preliminary draft of a schedule describing K&E LLP's relationships with certain interested parties (the "Disclosure Schedule").  We will give you a draft of the Disclosure Schedule once it is available.  Although K&E LLP believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in your application to the court to retain K&E LLP.

If actual conflicts of interest arise in the Company's restructuring cases, the Company will be required to use separate conflicts counsel in those matters, and the Firm will not participate in those matters.

No Guarantee of Success.  It is impossible to provide any promise or guarantee about the outcome of your matters.  Nothing in this Agreement or any statement by our staff or attorneys constitutes a promise or guarantee.  Any comments about the outcome of your matter are simply expressions of judgment and are not binding on us.

Consent to Use of Information.  In connection with future materials that, for marketing purposes, describe facets of our law practice and recite examples of matters we handle on behalf of clients, we will obtain your advance consent prior to including in such materials your identity as a client, factual synopses of your matters, or generally the results achieved, and in no event shall such materials disclose your confidences and secrets as defined by applicable ethical rules.

Reimbursement of Expenses.  You agree promptly to reimburse us for all fees and expenses, including the amount of K&E LLP's attorney and paralegal time at normal billing rates, as incurred by us in connection with participating in, preparing for, or responding to any action, claim, suit or proceeding brought by or against any third-party that relates to the legal services provided by us under the Agreement.  Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by us in responding to document subpoenas, and preparing for and testifying at depositions and trials.

- 4 -

K&E 14591091.3

**LLP.** Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware. Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Miscellaneous.** This Agreement sets forth our entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. Each party signing below is jointly and severally responsible for all obligations due us and represents that each has full authority to execute this Agreement so that it is binding. This Agreement may be signed in one or more counterparts and binds each party countersigning below, whether or not any other proposed signatory ever executes it. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.

We are not advising you with respect to this Agreement because we would have a conflict of interest in doing so. If you wish advice, you should consult independent counsel of your choice.

K&E 14591894.3

- 5 -

Please confirm your agreement with the arrangements described in this letter by signing below and returning it to me via fax: 212-446-4900.

Very truly yours,

KIRKLAND & ELLIS LLP

By _____

Printed Name: Richard M. Cieri
Title: Partner

Agreed to and accepted as of this __14__ day of May, 2009.

By: _____

Printed Name: Edward D. Sherrick
Title:  Senior Vice President and
        Chief Financial Officer

- 6 -

K&E 14591894.3

**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 1/1/10*

The following outlines Kirkland & Ellis's ("K&E's") policies and standard charges for various services performed by the Firm and/or by other third parties on behalf of the client which are often ancillary to our legal services.   Services provided by in-house Firm personnel are for the convenience of our clients.  Given that these services are often ancillary to our legal services, in certain instances, it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor.  If services are provided beyond those outlined below, pricing will be based on the Firm's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing:**  The following list details the Firm's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.15 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.12 per impression in London
    - HK$0.75 per impression in Hong Kong
    - RMB0.75 per impression in Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.50 per impression
  - Scanned Images:
    - $0.15 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $8/$17
    - Labels and Tabs - $0.03 - $0.10 per item based on service
    - Black and White or Color Transparency - $0.15 or $0.65 per page

- **Secretarial and Word Processing:**  Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges:**  Secretarial and word processing overtime costs are not passed on to clients <u>unless</u> either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates the overtime and such work could not have been done during normal working hours. Costs for related overtime meals and transportation are charged to the client under the same conditions and subject to any applicable regulations or guidelines.

1

- **Travel Expenses:** We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees. We charge coach fares (business class for international flights) unless the client has approved first-class or an upgrade. K&E personnel are instructed to incur only reasonable airfare, hotel and meal expenses. K&E negotiates, uses, and passes along volume discount hotel and air rates whenever practicable. However, certain retrospective rebates may not be passed along.

- **Communication Expenses:**

  We do not charge clients for telephone calls or faxes made from K&E's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred. Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage:** We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf. K&E negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers:** We charge clients for the actual cost of a third party vendor messenger. Where a K&E in-house messenger is used, we charge clients a standard transaction charge plus applicable cab fare.

- **Computerized Research Services:** Client charges are limited to K&E's actual third-party costs and do not include any surcharges for related overhead. K&E negotiates, uses, and passes along volume discount rates whenever practicable. As discounts are customarily based on overall volume, the amount of the discount may vary from month to month.

- **Off-Site Legal Files Storage:** Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage:** The Firm will not charge clients for costs to store electronic data and files related to cases on the Firm's systems if the data stored does not exceed 250 gigabytes (GB). If the data stored for a specific client exceeds 250GB, the Firm will charge clients $1.25 per month/per GB until the data is either returned to the client or properly disposed of.

- **Document Procurement:** Our standard client charge for document retrieval when a K&E library employee obtains a document from an outside source is $25 per document. There is no client charge for retrieving documents from K&E libraries in other cities or from other collections when the document is part of the K&E collection but unavailable.

2

- **Calendar Court Services:** Our standard charge is $25 for a court filing and other court services or transactions.

- **Library and Business/Industry Research Services:** Research specialists perform computerized research services at the request of attorneys, and clients are charged per hour for these services.

- **Supplies:** There is no client charge for standard office supplies. Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers:** If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between the Firm and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants:** If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between the Firm and client.

- **Third Party Expenditures:** Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost. If the invoice exceeds $50,000, it is K&E's policy that wherever possible such charges will be directly billed to the client. In those circumstances where this is not possible, K&E will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

3

**<u>Exhibit B</u>**

**Declaration of Richard M. Cieri
Partner, Kirkland & Ellis LLP**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DECLARATION OF RICHARD M. CIERI IN SUPPORT OF THE APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KIRKLAND & ELLIS LLP AS ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

I, Richard M. Cieri, being duly sworn, state the following under penalty of perjury:

1.      I am a partner in the law firm of Kirkland & Ellis LLP ("K&E"), located at 601 Lexington Avenue, New York, New York 10022.  I am admitted, practicing, and in good standing as a member of the Bar of the State of New York and I am admitted to practice before the United States District Court for the Southern District of New York.  There are no disciplinary proceedings pending against me.

2.      I submit this declaration (this "Declaration") in support of the application (the "Application") of the above-captioned debtor and debtor in possession ("Bear Island" or the "Debtor") for an order pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Eastern District of Virginia

---

[1]    The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

(the "Local Bankruptcy Rules") authorizing the Debtor to employ and retain K&E as attorneys to

the Debtor in connection with its chapter 11 case (the "Chapter 11 Case").  Except as otherwise

noted, I have personal knowledge of the matters set forth herein.

### K&E's Qualifications

3.    The Debtor seeks to retain K&E because of K&E's recognized expertise and

extensive experience and knowledge in the field of corporate restructuring, creditors' rights, and

business reorganizations under chapter 11 of the Bankruptcy Code.

4.    K&E has been actively involved in major chapter 11 cases and has represented

debtors in many cases, including, among others:  In re Movie Gallery, Inc., No. 07-33849 (Bankr.

E.D. Va. Oct. 16, 2007); In re Citadel Broadcasting Corp., No. 09-17442 (Bankr. S.D.N.Y. Feb.

3, 2009); In re The Majestic Star Casino, LLC, No. 09-14136 (Bankr. D. Del. Nov. 23, 2009); In

re Stallion Oilfield Services Ltd., No. 09-13562 (Bankr. D. Del. Nov. 16, 2009); In re The

Readers Digest Assoc., No. 09-3529 (Bankr. S.D.N.Y. Sept. 17, 2009); In re Lear Corporation,

No. 09-14326 (Bankr. S.D.N.Y. July 31, 2009); In re ION Media Networks, Inc., No. 09-13125

(Bankr. S.D.N.Y. June 23, 2009); In re Visteon Corporation, No. 09-11786 (Bankr. D. Del. June

19, 2009); In re DBSD North America, Inc., No. 09-13061 (Bankr. S.D.N.Y. June 9, 2009); In re

Gen. Growth Props., Inc., No. 09-11977 (Bankr. S.D.N.Y. May 26, 2009); In re Sun-Times

Media Group, Inc., No. 09-11092 (Bankr. D. Del. Apr. 29, 2009); In re Chemtura Corp., No. 09-

11233 (Bankr. S.D.N.Y. Apr. 29, 2009); In re Source Interlink Companies, Inc., No. 09-11424

(Bankr. D. Del. Apr. 28, 2009); In re Charter Commc'ns, Inc., No. 09-11435 (Bankr. S.D.N.Y.

Apr. 15, 2009); In re Masonite Corp., No. 09-10844 (Bankr. D. Del. Apr. 15, 2009); In re Muzak

Holdings LLC, No. 09-10422 (Bankr. D. Del. Feb. 10, 2009); In re Tronox, Inc., No. 09-10156

(Bankr. S.D.N.Y. Feb.6, 2009); In re Flying J, Inc., No. 08-13384 (Bankr. D. Del. Jan. 15, 2009);

In re Portola Packaging, Inc., No. 08-12001 (Bankr. D. Del. Sept. 22, 2008); In re Hines

2

Horticulture, Inc., No. 08 11922 (Bankr. D. Del. Sep. 10, 2008); In re Pierre Foods Inc., No. 08-

11480 (Bankr. D. Del. Aug. 14, 2008); In re ACG Holdings, Inc., No. 08-11467 (Bankr. D. Del.

Aug. 11, 2008); In re Kimball Hill, Inc., No. 08 10095 (Bankr. N.D. Ill. May 13, 2008); and In re

Wellman, Inc., No. 08-10595 (Bankr. S.D.N.Y. Feb. 22, 2008).

5.      K&E is familiar with the Debtor's business and many of the legal issues that may

arise in the context of the Chapter 11 Case. K&E is both well-qualified and uniquely able to

represent the Debtor in this Chapter 11 Case in an efficient and timely manner.

## Services to Be Provided

6.      Subject to Court approval, pursuant to the terms of an engagement letter dated

May 11, 2009 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to **Exhibit A**

to the Application, White Birch Paper Company ("White Birch Company") and its subsidiaries

and affiliates (collectively, the "WB Group") retained K&E to provide, without limitation, the

following legal services:

   a.   advising the Debtor with respect to its powers and duties as a debtor in
        possession in the continued management and operation of its business and
        properties;

   b.   advising and consulting on the conduct of the Chapter 11 Case, including
        all of the legal and administrative requirements of operating in chapter 11;

   c.   attending meetings and negotiating with representatives of the creditors
        and other parties in interest;

   d.   taking all necessary actions to protect and preserve the Debtor's estate,
        including prosecuting actions on the Debtor's behalf, defending any action
        commenced against the Debtor, and representing the Debtor's interests in
        negotiations concerning litigation in which the Debtor is involved,
        including objections to claims filed against the Debtor's estate;

   e.   preparing pleadings in connection with the Chapter 11 Case, including
        motions, applications, answers, orders, reports, and papers necessary or
        otherwise beneficial to the administration of the Debtor's estate;

3

K&E:16393654.5

f.  representing the Debtor in connection with obtaining authority to continue using cash collateral and, if necessary, postpetition financing;

g.  advising the Debtor in connection with any potential sale of assets;

h.  appearing before the Court and any appellate courts to represent the interests of the Debtor's estate;

i.  advising the Debtor regarding certain tax matters;

j.  taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.  performing all other necessary legal services for the Debtor in connection with the prosecution of the Chapter 11 Case, including (i) analyzing the Debtor's leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtor; and (iii) advising the Debtor on corporate and litigation matters.

### Compensation Received by K&E from White Birch Company

7.      Consistent with the terms of the Engagement Letter, on June 30, 2009 White Birch Company paid $74,990.00 to K&E as a classic retainer.  As the engagement intensified, the retainer was subsequently increased to $249,990.00 before the 90-days prior to the Petition Date. The foregoing retainer payments constitute "classic retainer" payments as defined in In re Prod. Assocs., Ltd., 264 B.R. 180, 184–85 (Bankr. N.D. Ill. 2001), and In re McDonald Bros. Constr., Inc., 114 B.R. 989, 997–99 (Bankr. N.D. Ill. 1990).  As such, K&E earned the classic retainer upon receipt, and, consequently, K&E placed the amounts into its general cash account.  The amounts K&E has invoiced White Birch Company against the classic retainer for professional services and for the reimbursement of reasonable and necessary expenses incurred in connection therewith are set forth in the chart below.  During the 90-day period prior to the Petition Date, White Birch Company paid K&E the following amounts:[2]

---

[2]  The retainer increases and retainer replenishments reflected in the chart above were paid by non-Debtor White Birch Company.

(Continued)

4

| Type of Transaction | Invoice Number | Invoice Date | Billed Amount | Payment Date | Payment Amount | Retainer Balance |
|---|---|---|---|---|---|---|
| Retainer Replenishment | | | | 11/16/2010 | $104,691.09 | $249,960.00 |
| Invoice | 3512671 | 12/1/2009 | $124,266.09 | | | $125,693.91 |
| Retainer Replenishment | | | | 12/10/2010 | $124,256.09 | $249,950.00 |
| Invoice | 3525527 | 1/8/2010 | $119,718.47 | | | $130,231.53 |
| Retainer Replenishment | | | | 1/12/2010 | $119,708.47 | $249,940.00 |
| Invoice | 3541482 | 2/8/2010 | $105,014.50 | | | $144,925.50 |
| Retainer Replenishment | | | | 2/10/2010 | $105,004.50 | $249,930.00 |
| Invoice | 3547066 | 2/18/2010 | $188,898.44 | | | $61,021.56 |
| Retainer Replenishment | | | | 2/19/2010 | $188,898.44 | $249,930.00 |
| Advance Estimated Payment | | | | 2/19/2010 | $51,101.56 | $301,031.56 |
| Invoice | 3548065 | 2/23/2010 | $184,760.46 | | | $116,271.10 |
| Invoice | 3548066 | 2/23/2010 | $100,000.00 | | | $16,271.10 |
| Retainer Replenishment | | | | 2/24/2010 | $100,000.00 | $116,271.10 |

8.     Any amounts owed by the WB Group for fees and expenses incurred prior to the Petition Date will be less than the balance of K&E's retainer as of the Petition Date.

## Professional Compensation During the Chapter 11 Case

9.     K&E intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee"), and any other applicable procedures or orders of the Court, on an hourly basis.   The hourly rates and corresponding rate structure that K&E will use in this Chapter 11 Case are equivalent to the hourly rates and corresponding rate structure that K&E predominantly uses for other restructuring

5

matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure take into consideration that corporate restructurings and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

10.    K&E operates in a dynamic, national marketplace for legal services in which rates are driven by multiple factors, including the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. Because the sub-markets for legal services are fragmented and are affected by a variety of individualized and interdependent factors, K&E has no one rate for an individual biller that applies to all matters for all clients. K&E's rates for an individual biller may vary as a function of the type of matter, geographic factors, the nature of certain long-term client relationships, and various other factors, including those stated above.

11.    K&E's hourly rates are set at a level designed to fairly compensate K&E for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. In particular, K&E's hourly rates for matters related to the chapter 11 case range as follows:[3]

---

[3]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars it is possible that certain rates may exceed the billing ranges listed in the chart herein.

K&E:16393654.5

| Billing Category | Range |
|---|---|
| Partners | $580-$995 |
| Of Counsel | $435-$995 |
| Associates | $340-$670 |
| Paraprofessionals | $135-$285 |

12.    Christopher J. Marcus ($765), Michael A. Cohen ($745), and I ($995) are presently expected to have primary responsibility for providing services to the Debtor. In addition, from time to time, other K&E professionals and paraprofessionals will provide services to the Debtor.

13.    It is K&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also K&E's policy to charge its clients only the amount actually incurred by K&E in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

14.    To ensure compliance with all applicable deadlines in the Chapter 11 Case, K&E occasionally utilizes the services of overtime secretaries. K&E charges fees for these services pursuant to the Engagement Letter, which permits K&E to bill the Debtor for overtime secretarial charges that arise out of business necessity. In addition, K&E professionals also may charge their overtime meals and overtime transportation to the Debtor consistent with prepetition practices.

15.    K&E currently charges between $0.10 and $0.15 per page for standard duplication in its offices in the United States. K&E does not charge its clients for facsimile transmissions. K&E has negotiated a discounted rate for Westlaw computer assisted legal research. Computer assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

7

16.    K&E further states that, pursuant to Bankruptcy Rule 2016(b), it has not shared
nor agreed to share (a) any compensation it has received or may receive with another party or
person, other than with the partners, associates, and contract attorneys associated with K&E or
(b) any compensation another person or party has received or may receive.

17.    The WB Group is engaged in a complex cross-border restructuring involving
insolvency proceedings in Canada, chapter 15 proceedings before this Court involving certain
Canadian WB Group entities, and this Chapter 11 Case.  To ensure that the Debtor is not
improperly billed for work performed on behalf of other WB Group members, and that the non-
Debtor entities in the WB Group are not paying K&E for work performed on behalf of the Debtor
in its Chapter 11 Case, K&E intends to provide separate bills for the work it performs and
expenses it incurs on behalf of the Debtor in its Chapter 11 Case.  Accordingly, any work
performed on behalf of (a) White Birch Company (in its capacity as the appointed foreign
representative of the Canadian insolvency proceedings) and the other chapter 15 petitioners
and/or (b) the WB Group as a whole in connection with the cross border restructuring will be
billed separately and reimbursed by White Birch Company in a manner consistent with applicable
Canadian law and will not be subject to this Court's approval.  All work performed by K&E in
connection with the Chapter 11 Case will be paid for by the Debtor's estate subject to the Court's
approval and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy
Rules, Local Bankruptcy Rules, the guidelines established by the U.S. Trustee, and any other
applicable procedures and orders of the Court.

### K&E's Disinterestedness

18.    K&E and certain of its partners and associates may have in the past represented,
may currently represent, and likely in the future will represent, parties in interest in the Chapter
11 Case in connection with matters unrelated (except as otherwise disclosed herein) to the Debtor

8

K&E:16393654.5

and the Chapter 11 Case. K&E has searched on its electronic database for its connection to the entities listed on **Schedule 1** attached hereto. The information listed on **Schedule 1** may have changed without our knowledge and may change during the pendency of the Chapter 11 Case. Accordingly, K&E will update this Declaration as necessary and when K&E becomes aware of additional material information. The following is a list of the categories that K&E has searched:

| Schedule | Category |
| --- | --- |
| 1(a) | Current and Recent Former Entities Affiliated with the Debtor |
| 1(b) | Current and Recent Former Directors and Officers |
| 1(c) | Affiliations of Officers and Directors |
| 1(d) | Banks |
| 1(e) | Competitors |
| 1(f) | Current/Former Equity Holders |
| 1(g) | Customers |
| 1(h) | Insurers |
| 1(i) | Lenders |
| 1(j) | Letters of Credit |
| 1(k) | Litigation Parties |
| 1(l) | Parties to Executory Contracts |
| 1(m) | Professionals |
| 1(n) | Top 30 Trade Creditors |
| 1(o) | Top Unsecured Creditors |
| 1(p) | Unions |
| 1(q) | Utilities |
| 1(r) | United States Trustee, Judges, and Court Contacts for the Eastern District of Virginia (and Key Staff Members) |

19.    To the best of my knowledge, (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and (b) K&E has no connection to the Debtor, its creditors, or their related parties except as may be disclosed in this Declaration.

9

K&E:16393654.5

20.    Listed on **Schedule 2** attached hereto are the results of K&E's conflicts searches

of the above-listed entities.[4]  For the avoidance of doubt, K&E will not commence a cause of

action in the Chapter 11 Case against the parties listed on **Schedule 2** that are current or ongoing

clients of K&E (including parties below-listed under the "Specific Disclosures" section of this

Declaration) unless K&E has an applicable waiver on file or first receives a waiver from such

party allowing K&E to commence such an action.  To the extent that a waiver does not exist or is

not obtained from such client, and it is necessary for the Debtor to commence an action against

that client, either Troutman Sanders LLP will represent the Debtor in that particular matter or the

Debtor will retain separate conflicts counsel to do so.

21.    K&E's conflicts search of the parties in interest listed on **Schedules 1(a) – 1(r)**

attached hereto[5] (that K&E was able to locate using its reasonable efforts) reveals, to the best of

K&E's knowledge, that certain K&E attorneys and paraprofessionals who previously worked at

other law firms that represented certain potential parties in interest in the chapter 11 case have not

worked on matters relating to the Debtor's restructuring efforts while at K&E.

22.    Based on the conflicts search conducted to date and described herein, to the best of

my knowledge, neither I, K&E, nor any partner or associate thereof, insofar as I have been able to

ascertain, have any connection with the Debtor, its creditors, or any other parties in interest, their

respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of

---

[4]  As referenced in **Exhibit 2**, the term "current client" means a client to whom time was posted in the twelve
months preceding the Petition Date.  As referenced in **Exhibit 2**, the term "former client" means a client to
whom time was posted between twelve and 36 months preceding the Petition Date.  As referenced in **Exhibit 2**,
the term "closed client" means a client to whom time was posted in the 36 months preceding the Petition Date,
but for which the client representation has been closed.  As a general matter, K&E discloses connections with
former clients or closed clients for whom time was posted in the last 36 months, but does not disclose
connections if time was billed more than 36 months before the Petition Date.

[5]  In preparing for the Chapter 11 Case, K&E conducted a broad conflicts search which encompassed entities
associated with the WB Group, and not just those solely associated with the Debtor.

10

the U.S. Trustee, or any Judge currently serving on the Bankruptcy Court for the Eastern District of Virginia, except as disclosed or otherwise described herein.

23.     K&E will periodically review its files during the pendency of the Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, K&E will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

24.     From time to time, K&E has referred work to other professionals to be retained in the Chapter 11 Case. Likewise, certain such professionals have referred work to K&E.

25.     Certain insurance companies pay the legal bills of K&E clients. Some of these insurance companies may be involved in the Chapter 11 Case. None of these insurance companies, however, are K&E clients as a result of this situation.

### Specific Disclosures

26.     As specifically set forth below and in the attached schedules, K&E represents certain of the Debtor's and/or the WB Group's creditors, equity security holders, or other parties in interest in ongoing matters unrelated to the Debtor and the Chapter 11 Case. None of the representations described herein are materially adverse to the interests of the Debtor's estate. Moreover, pursuant to section 327(c) of the Bankruptcy Code, K&E is not disqualified from acting as the Debtor's counsel merely because it represents certain of the Debtor's creditors, equity security holders, or other parties in interest in matters unrelated to the Chapter 11 Case.

### A.    Relationship with Entities Affiliated with the Debtor

27.     K&E represents SP Newsprint Co., LLC, along with its subsidiaries and affiliates, (collectively, "SP Newsprint") in matters that are not adverse to the Debtor or its estate. White Birch Company maintains a significant equity ownership interest in SP Newsprint. K&E does

11

not believe that its representation of SP Newsprint creates a conflict of interest in the Chapter 11

Case, but K&E has disclosed it out of an abundance of caution.

28.     Additionally, K&E represents the other entities in the WB Group in its

comprehensive cross-border restructuring, including White Birch Company—both in its capacity

as a restructuring client and as the appointed foreign representative in the Canadian insolvency

proceedings—and five of its subsidiaries and affiliates in their chapter 15 recognition proceedings

currently pending before this Court. K&E does not believe that its representation of the other

WB Group entities is adverse to the Debtor's estate, nor does K&E believe that such

representation creates a conflict of interest with respect to this Chapter 11 Case.

**B.     Relationships with Certain Creditor Financial Institutions**

29.     As disclosed herein and in **Schedule 2** attached hereto, K&E currently represents,

and has formerly represented, certain affiliates, subsidiaries, and entities associated with the WB

Group's creditor financial institutions. All prior and current K&E representations of these

financial institutions have been in matters unrelated to the Debtor and the Chapter 11 Case.

**C.     Relationships with Customers**

30.     As disclosed in **Schedule 2** attached hereto, K&E currently represents, and has

formerly represented, certain affiliates, subsidiaries, joint ventures, and/or entities associated with

customers of the WB Group. All prior and current representations have been in matters unrelated

to the Debtor and the Chapter 11 Case.

**D.     Relationships with Vendors**

31.     As disclosed in **Schedule 2** attached hereto, K&E currently represents, and has

formerly represented, certain affiliates, subsidiaries, joint ventures, and/or entities associated with

vendors of the WB Group. Except as set forth below, all prior and current representations have

been in matters unrelated to the Debtor and the Chapter 11 Case.

12

32.     K&E represented ACG Holdings, Inc. and certain of its affiliates, (collectively "ACG") in restructuring and related matters that were unrelated to the Chapter 11 Case, including with respect to ACG's chapter 11 cases, which are now closed.  K&E does not believe that its prior representation of ACG constitutes a conflict of interest in connection with the Chapter 11 Case, but K&E has disclosed it out of an abundance of caution.

### E.    K&E Attorney and Employee Investments

33.     From time to time, K&E partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be the Debtor, often without K&E's knowledge.  The investing K&E person(s) generally own substantially less than 1% of such Investment Fund, do not manage or otherwise control such Investment Fund, and have no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  The Investment Fund is generally operated as a blind pool, meaning that when the K&E person(s) make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

34.     From time to time one or more K&E partners and of counsel voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were K&E partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some are now former K&E partners and of counsel).  Participation in such a Passive-Intermediary Entity is wholly voluntary, and only a portion of K&E's partners and of counsel have chosen to participate.  The Passive-Intermediary Entity generally owns substantially less than 1% of any such Investment

13

Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from the Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary Entity does not learn (even after the fact) the identity of the securities purchased, sold, or held by the Investment Fund.

35.     From time to time, K&E partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be the Debtor. K&E has a long-standing policy that prohibits attorneys and employees from using confidential information that may come to their attention in the course of their work. In this regard, all K&E attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

F.      **Other Disclosures**

36.     Prior to joining the firm in March 2007, K&E partner Albert Cho represented numerous clients adverse to K&E's current and former restructuring clients, including certain debtors. Out of an abundance of caution, Mr. Cho will not perform any legal services for the Debtor related to this Chapter 11 Case. K&E has instituted formal screening measures to screen Mr. Cho from all aspects of K&E's representation of the Debtor.

14

K&E:16393654.5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  March 9, 2010

Respectfully submitted,

Richard M. Cieri
Partner, Kirkland & Ellis LLP

K&E:16393654.2

## SCHEDULE 1

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Richard M. Cieri in Support of the Application for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* (the "Cieri Declaration").[1]  Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Kirkland & Ellis LLP reviewed each entity in its records, as more fully described in the Cieri Declaration, matching the incomplete or ambiguous name.

## List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Current and Recent Former Entities Affiliated with the Debtor |
| 1(b) | Current and Recent Former Directors and Officers |
| 1(c) | Affiliations of Officers and Directors |
| 1(d) | Banks |
| 1(e) | Competitors |
| 1(f) | Current/Former Equity Holders |
| 1(g) | Customers |
| 1(h) | Insurers |
| 1(i) | Lenders |
| 1(j) | Letters of Credit |
| 1(k) | Litigation Parties |
| 1(l) | Parties to Executory Contracts |
| 1(m) | Professionals |
| 1(n) | Top 30 Trade Creditors |
| 1(o) | Top Unsecured Creditors |
| 1(p) | Unions |
| 1(q) | Utilities |
| 1(r) | United States Trustee, Judges, and Court Contacts for the Eastern District of Virginia (and Key Staff Members) |

---

[1]    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Cieri Declaration.

## SCHEDULE 1(a)

### Current and Recent Former Entities Affiliated with the Debtor

3098580 Nova Scotia Co.
3098583 Nova Scotia Co.
3120772 Nova Scotia Co.
Aggressive Growth Fund
Arrimage De Gros Cacouna Inc.
Black Spruce Paper Inc.
Brant Industries Inc.
Brant Paper Inc.
Dow Jones Newsprint Co. Inc.
FF Soucy General Partner Inc.
FF Soucy Inc.
FF Soucy Inc. & Partners LP
FF Soucy LP
Nova Scotia Ltd.
Papier Masson Ltee
PB-RF Inc.
RF SP LLC
RF White Birch LP
Sep Technologies LLC
Soucy Partners Newsprint Inc.
SP Newsprint Co. LLC
SP Newsprint Holdings Inc.
SP Newsprint Holdings LLC
SP Recycling Corporation
Stadacona General Partner Inc.
Stadacona LP
WB Canada LLC
White Birch Paper Co.
White Birch Paper Holdings Co.
White Birch Paper Inc.
White Birch Partners LP

## SCHEDULE 1(b)

### Current and Recent Former Directors and Officers

Allen, Joseph
Armstrong, Thomas E.
Bisson, Alain
Blais, Jean
Boucher, Daniel
Brant, Christopher M.
Brant, Peter M.
Epstein, Jay A.
Flug, Robert
Geiger, Thomas M.
Goebel, Eric
Laflamme, Bernard
Roberge, Jacques
Sherrick, Edward D.
Yohallum, Ira

## SCHEDULE 1(c)

### Affiliations of Officers & Directors

575 Broadway Corp.
Brant Foundation Inc., The
Brant Publications Inc.
Bridgehampton Polo Inc.
Greenwich Polo Club
RFR Holding, LLC
Skeeter Industries Inc.
Solomon R. Guggenheim Foundation
White Birch Farm Inc.

4

## SCHEDULE 1(d)

### Banks

Banque TD
Caisse Populaire Riv-du-Loup
HSBC Bank Canada
HSBC Bank USA NA
Suntrust Bank
TD Canada Trust

## SCHEDULE 1(e)

## Competitors

Abitibibowater Inc.
Atlantic Group
Boise Inc.
Catalyst Paper Corp.
Kruger Inc.
Norampac
Tembec Inc.
Weyerhauser Co.

## <u>SCHEDULE 1(f)</u>

### <u>Current/Former Equity Holders</u>

Aby Rosen
Michael Fuchs
Peter Brant
RFR Holding, LLC
White Birch Investor I LLC
White Birch Investor II LLC.

7

## SCHEDULE 1(g)

### Customers

AFL Printing
Asbury Park Press Inc.
Berkshire Eagle
Brunswick Times Record
Buffalo News, The
Canadian Paper Connection
Central National Gottesman Inc.
CFPP
Charleston Newspapers
Charleston Newspapers
Cincinnati Enquirer, The
Courier Journal, The
Cox Newspapers Inc.
Denver Post
Detroit Newspaper Partnership
Dow Jones & Co. Inc.
E. Aaron Enterprises Inc.
El Dia Inc.
Europcell GmbH
Express Newspapers
Express Times
Fairworld International Ltd.
Gannett Supply Corp.
Gazette, The
Graphic Communications
Gratenau & Hesselbacher
Hamilton Spectator, The
Hearst Enterprises Division
Heinzel Import-Export Inc.
Idearc Media Services-West Inc.
Imprimeries Transcontinental
Indianapolis Newspapers Inc.
Indianapolis Star, The
Johnson Newspaper Corp.
Journal News, The
Journal Register Co.
Journal Register Supply Co.
Laminated Industries Inc.
Lee Procurement Solutions

M&R International Inc.
Mayar India Ltd.
Media News Printing
Media Procurement Services Inc.
Metroland Media Group Ltd.
Mill Marketing Inc.
New York Post
Newark Morning Ledger Co.
News Printing & Publishing Inc.
Newsday Inc.
Newsday LLC
Newsworks
NYP Holdings Inc.
Orange County Publication Inc.
Ottawa Citizen, The
Page Co-Op
Page Corp.
Paper Co. Gmbh
Philadelphia Newspapers Inc.
Philadelphia Newspapers LLC
Phoenix Corp.
Post and Courier, The
Post Standard, The
Providence Journal Co.
Richmond Newspapers Inc.
Rochester Gannett Newspaper
RR Donnelley & Sons Co.
Saltus Press
Springfield Offset
Stevens Graphics Inc.
Summit Solutions Inc.
Tribune Co.
Tribune Publishing
Tribune Review Publishing Co.
Universal Paper Export Co. Ltd.
Vertis Inc.
Washington Post
White Plains Journal News, The
Windsor Star, The

## SCHEDULE 1(h)

### Insurers

AFCO
Affiliated Fm Insurance Co.
Axis Reinsurance Co.
Charter Oak Fire Insurance Co., The
CNA Insurance Cos.
Federal Insurance Co. (Chubb)
First Insurance Funding Corp
Hartford Fire Insurance Co.
Houston Casualty Co.
Liberty Mutual Insurance Co.

Royal Bank Canada
Rubin Group Inc., The
St. Paul Fire & Marine Insurance Co.
Travelers Casualty & Surety of America
Travelers Corp.
Travelers Indemnity Co. of America, The
Travelers Indemnity Co. of Connecticut,
   The
Travelers Property Casualty Co. of America
US Specialty Insurance Co.

9

## SCHEDULE 1(i)

### Lenders

38 Fidelity Summer St Tr Fidelity Cap &
Inc Fd
American Money Management
Ammc CLO III Ltd.
Ammc CLO IV Ltd.
Ammc CLO V Ltd.
Ammc CLO VI Ltd.
Ammc VII Ltd.
Atrium IV
Atrium VI
Avenue Advisors
Avenue Investments LP
BDCM Opportunity Fund II LP
Black Diamond Capital Management LLC
Black Diamond CLO 2005-1 Ltd.
Black Diamond CLO 2005-2 Ltd.
Black Diamond CLO 2006-1 Ltd. (Cayman)
Ltd.
Black Diamond International Funding Ltd.
Blue Mountain Capital
Blue Mountain CLO II Ltd.
Blue Mountain CLO III Ltd.
Blue Mountain CLO Ltd.
Bridgeport CLO II Ltd.
Bridgeport CLO Ltd.
Burr Ridge CLO Plus Ltd.
Canadian Imperial Bank of Commerce
Candlewood Capital Partners
Canpartners Investments IV LLC
Canyon Capital Advisors LLC A/C Canyon
Capital CLO 2004-1 Ltd.
Canyon Capital CDO 2002-1 Ltd.
Canyon Capital CLO 2006-1 Ltd.
Canyon Capital CLO 2007-1 Ltd.
Canyon Partners
Caspian Select Credit Master Fund Ltd.
Castle Garden Funding
Cent CDO 12 Ltd.
Cent CDO 14 Ltd.
Cent CDO 15 Ltd.
Centurion CDO VII Ltd.
Clear Lake CLO Ltd.
Columbusnova

Columbusnova CLO IV Ltd. 2007 II
Columbusnova CLO Ltd. 2007-1
Conesco Insurance Co.
Confluent 3 Ltd.
Continental Casualty Co.
Credit Suisse
Credit Suisse Asset Management
Credit Suisse Candlewood Private Finance
Master Fund
Credit Suisse Dollar Senior Loan Fund Ltd.
Credit Suisse Loan Funding LLC
Credit Suisse Syndicated Loan Fund
CS Alternative Capital Management
CSAM Funding IV
Cumberland II CLO Ltd.
Deerfield Capital
Deerfield Capital Management Ltd. Liability
Co. Ac Forest Creek CLO Ltd.
Diamond Lake CLO Ltd.
Dune Capital LLC
Dunes Funding LLC
Fidelity Advisor Series I Fidelity Advisor
High Income Advantage Fund
Fidelity Advisor Series I: Fidelity Advisor
Floating Rate High Income Fund
Fidelity Management & Research Co Ac
Fidelity Advisor Series II Fidelity Advisor
Strategic Income Fund
Fidelity Management & Research Co.
Fidelity School Street Trust: Fidelity
Strategic Income Fund
FM Leveraged Capital Fund Ii
Gale Force 3 CLO Ltd.
Gale Force 4 CLO Ltd.
GE Canada Finance Holding Co.
GE Canada Finance Inc.
General Electric Capital Corp.
Grand Central Asset Trust Bdc Series
Grand Central Asset Trust Zen Series
GSO Capital
Gulf Stream Asset Management
Gulf Stream Compass CLO 2002-1 Ltd.
Gulf Stream Compass CLO 2003-1 Ltd.

10

Gulf Stream Compass CLO 2005-1 Ltd.
Gulf Stream-Sextant CLO 2007-1 Ltd.
Gulfstream-Compass CLO 2005-2 Ltd.
Halbis Capital Management
Halbis Distressed Opportunities Master
Fund Ltd.
Hamlet II Ltd.
Hartford Insurance (Himco)
HSBC Bank USA NA
Illinois Municipal Retirement Fund
Jefferies Funding LLC
Jeffries Capital
Jupiter Loan Funding LLC
Kingsland Capital
Kingsland I Ltd.
Kingsland II Ltd.
Kingsland III Ltd.
Kingsland IV Ltd.
Kingsland V Ltd.
Latitude CLO I
Latitude CLO III Ltd.
Loews Corp.
Long Grove CLO Ltd.
Lufkin Advisors
Mariner Atlantic
Mariner Investment Group Inc A/C Mariner
Ldc (KPM)
Mariner Investment Group Incorporated Ac
Caspian Capital Partners LP
Mariner Opportunities Fund LP
Market Square CLO Ltd.
Massachusetts Pension Reserves Investment
Management Board
Merrill Lynch Capital Corp.
MJX Asset Management
Morgan Stanley Investment Management
Morgan Stanley Investment Management
Croton
Morgan Stanley Prime Income Trust
Mountain Capital
Mountain Capital CLO III Ltd.
Mountain Capital CLO IV Ltd.
Mountain Capital CLO V Ltd.
Mountain Capital CLO VI Ltd.
MSIM Peconic Bay Ltd.
Ocean Trails CLO II

Ocean Trails CLO III
Octagon
Octagon Credit Investors LLC
Octagon Investment Partners IX Ltd.
Octagon Investment Partners V Ltd.
Octagon Investment Partners VI Ltd.
Octagon Investment Partners VII Ltd.
Octagon Investment Partners VIII
Octagon Investment Partners X Ltd.
Octagon Investment Partners XI Ltd. (NY)
Orix Business Credit
Orix Finance Corp.
Pension Investment Committee of General
Motors for GM Employees-Domes
Primus CLO II Ltd.
Primus CLO Ltd. I
Primus Financial
Riversource Investments
Schiller Park CLO Ltd.
Shenkman Capital Management
Stanfield Arnage CLO Ltd.
Stanfield Azure CLO Ltd.
Stanfield Bristol CLO Ltd.
Stanfield Capital Partners
Stanfield Capital Partners LLC
Stanfield Carrera CLO Ltd.
Stanfield Daytona CLO Ltd.
Stanfield Mclaren CLO Ltd.
Stanfield Modena CLO Ltd.
Stanfield Vantage CLO Ltd.
Stanfield Veyron CLO Ltd.
Stanwich Loan Funding LLC
Summit Lake CLO Ltd.
Suntrust Bank
TD Canada Trust
Toronto Dominion
Trilogy Capital
Van Kampen
Van Kampen Dynamic Credit Opportunities
Fund
Van Kampen Senior Income Trust
Van Kampen Senior Loan Fund
Variable Insurance Products Fund V:
Strategic Income Portfolio
Venture II CDO 2002 Ltd.
Venture III CDO Ltd.

11

Venture IV CDO Ltd.
Venture VIII CDO Ltd.
Victoria Falls CLO Ltd.
Westbrook CLO Ltd.
Westgate Horizons
White Horse Capital
Whitehorse I Ltd.

Whitehorse III Ltd.
WTA Dune Ltd.
Z Capital
Zodiac Fund Morgan Stanley US Senior
Loan Fund

12

## SCHEDULE 1(j)

### Letters of Credit

Department Of Environmental Quality
Regime Complementaire de Retraite des Employes Syndiques De Bureau de FF Soucy
Regime Complementaire de Retraite des Employes Syndiques D'usine de FF Soucy
Regime de Retaite des Employes
Ultramar Ltd.

13

## **SCHEDULE 1(k)**

### **Litigation Parties**

Boucher, Barry
Developpement Durable  Environnement et Parcs
Environnement Canada
Ministere des Ressources Naturelles et de la Faune
Ontario Superior Court of Justice
Quebecor World Litigation Trust
Quebecor World (USA) Inc.

14

## SCHEDULE 1(l)

### Parties to Executory Contracts

| | |
|---|---|
| Chatham Financial | Merrill Lynch Capital Services Inc. |
| Credit Suisse International | Quebec City, City of (Quebec) |
| CSFB International | TD Bank Financial Group |

15

## SCHEDULE 1(m)

## Professionals

Alixpartners LLP
Alvarez & Marsal Inc.
Berkowitz, Trager and Trager, LLC
Bryan Cave LLP
Cahill Gordon & Reindel LLP
Christian & Barton LLP
CRG Partners Group LLC
Fleischman & Walsh LLP
Latham & Watkins LLP
Lawrence and Associates

Lazard Freres & Co. LLC
Powell Goldstein LLP
Pricewaterhousecoopers LLP
Rothschild Inc.
Skadden Arps Slate Meagher & Flom
Stewart McKelvey
Stikeman & Elliott LLP
Thornton & Associates plc
Troutman Sanders LLP

16

## SCHEDULE 1(n)

### Top 30 Trade Creditors

ABB Inc.
Andritz Ltd.
Atlantic Coated Papers Ltd.
Atlas Copco Compressors Canada
Brenntag Canada Inc
Ciba Specialites Chimiques
Converdis Inc.
Distribution DMC Inc.
Entreprises Larry Inc
Estbec Inc.
Filcon America Inc.
GSI
Hercules Canada Inc.
Honeywell
Hydro Technologies Inc.

Ichikawa North America
Kemira Chemicals Canada Inc.
Laboratoires Buckman du Canada Ltée
Les Services Matrec Inc.
Lumen Inc.
LV Lomas Ltd.
Metso Papier Ltée
Motion Canada Inc.
Quadra Chimie Ltée
Sonoco Canada Corp.
SSQ Groupe Financier
Tri-Tex Co. Inc.
Voith Canada Inc.
Voith Fabrics
Voith Paper

17

## SCHEDULE 1(o)

### Top Unsecured Creditors

Basic Chemical Solutions
Canusa Hershman Recycling LLC
Cascades Sonoco Inc.
CH Robinson Worldwide Inc.
Chemtrade Performance Chemicals LLC
Clariant Corp.
Colonialwebb Contractors
Delta Chemical Corp.
Durametal Corp.
Fleming Southern
Hanover County Real Estate Taxes (VA)
Maslo Co. Inc.
McMillan Energy Inc

Rappahannock Electric Coop
Recycle America/Alliance LLC
Smurfit Stone Recycling
Sonoco Products Co.
SP Recycling Corp., Prince William Division
SP Recycling Corp., Richmond Division
Suffolk Sales & Service Corp.
Univar USA Inc.
Univar USA Inc.
Virginia Treasurer, Receipts Control Department
Weavexx Corp.

## SCHEDULE 1(p)

### Unions

Fraternité Nationale des Forestiers et Travailleurs D'usine, Section Locale 299 (Mesureurs) (FTQ-CTC)

Syndicat Canadien des Communications de L'énergie et du Papier, Section Locale 11

Syndicat Canadien des Communications de L'énergie et du Papier, Section Locale 1104

Syndicat Canadien des Communications de L'énergie et du Papier, Sections Locales 137 et 250

Syndicat Canadien des Communications de L'energie et du Papier, Sections Locales 625 et 905

Syndicat Canadien des Communications de L'energie et du Papier, Sections Locales 627

Syndicat Canadien des Communications de L'energie et eu Papier, Section Locale 200

Syndicat Democratique des Salaries de la sciere Leduc, Le

Syndicat des Employés Arrimage de Gros Cacouna Inc.

19

## SCHEDULE 1(q)

### Utilities

ACC Business Inc.
Compass Energy Services LLC
Distribution Carl Beaulac Inc., Les
Energie La Lievre
Gatineau, City of (Quebec)
Gaz Métropolitain Inc.
Gazbec Inc.
Gazifere
Hanover County Public Utilities-Water
(VA)
Hanover County Public Utility (VA)

Hydro-Quebec
Integrys Energy Services of Canada Corp.
Kildair Service Ltée
Quebec City, City of (Quebec)
Rappahannock Electric Coop
Riviere-Du-Loup, Municipality of (Quebec)
Shell Energy North America LP
Transcanada Pipelines
Ultramar Canada Inc.
Ville de Québec, City of (Quebec)
Virginia Natural Gas Inc.

20

## SCHEDULE 1(r)

### U.S. Trustee, Judges, and Court Contacts for the Eastern District of Virginia (and Key Staff Members)

W. Clarkson McDow, Jr.
Douglas O. Tice, Jr.
Gloria P. Sutton
June E. Turner
Kevin R. Huennekens
Peggy T. Flinchum
Robert Van Arsdale
Shannon D. Franklin

21

## SCHEDULE 2

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| 38 Fidelity Summer St Tr Fidelity Cap & Inc Fd | Fidelity Brokerage Services, LLC | Current |
| Fidelity Management & Research Co. | FMR LLC | Current |
| ABB Inc. | ABB Canada | Closed |
| | ABB Instrumentation S.p.A | Former |
| | ABB Ltd. | Current |
| | ABB Ltd.-Steering Committee | Current |
| | ABB Lummus Global, Inc. | Closed |
| | ABB SAE S.p.A. | Former |
| | ABB Trasmissione & Distribuzione S.p.A. | Former |
| | Combustion Engineering, Inc. | Current |
| AlixPartners LLP | AlixPartners GmbH | Current |
| | AlixPartners, LLC | Current |
| Alvarez & Marsal Inc. | Alvarez & Marsal Europe Limited | Former |
| | Alvarez & Marsal Inc. | Current |
| American Money Management | American Premier Underwriters | Closed |
| Ammc CLO V Ltd. | AMMC CLO V, Limited | Current |
| Ammc CLO VI Ltd. | AMMC CLO VI, Limited | Current |
| Atlantic Group | The Atlantic Group Inc. | Closed |
| Avenue Investments LP | Avenue Investments, L.P. | Current |
| Banque TD | Toronto-Dominion Capital | Current |
| TD Canada Trust | | |
| Blue Mountain Capital | BlueMountain Capital Management L.P. | Current |
| Brenntag Canada Inc. | Brenntag AG | Current |
| Canpartners Investments IV LLC | Canpartners Investments IV LLC | Current |
| Canyon Capital Advisors LLC | Canyon Capital Advisors L.L.C. | Closed |
| Charleston Newspapers | ABRY Partners, Inc. | Current |
| Ciba Specialites Chimiques | BASF Catalysts LLC | Current |
| | BASF Corporation | Current |
| CNA Insurance Cos. | CNA Financial Corporation | Current |
| Continental Casualty Co. | Continental Casualty Company | Current |
| Columbusnova | Columbus Nova Partners LLC | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| Confluent 3 Ltd. | Confluent 3 | Current |
| Conseco Insurance Co. | 40|86 Advisors Inc. | Current |
| | Bankers Life & Casualty Co. | Closed |
| | Bankers National Life Insurance | Former |
| | Conseco Agency Inc. | Closed |
| | Conseco Agency Kentucky, Inc. | Closed |
| | Conseco Agency of Alabama Inc. | Closed |
| | Conseco Agency of Nevada Inc. | Closed |
| | Conseco Agency of New York, Inc. | Closed |
| | Conseco Annuity Assurance Company | Former |
| | Conseco Finance Canada Company | Closed |
| | Conseco Finance Canada Holdings | Closed |
| | Conseco Finance Consumer Discount Company | Closed |
| | Conseco Finance Corporation | Closed |
| | Conseco Finance Corporation Alabama | Closed |
| | Conseco Finance Credit Corporation | Closed |
| | Conseco Finance Loan Company | Closed |
| | Conseco Finance Net Interest Margin | Closed |
| | Conseco Finance Servicing Corporation | Closed |
| | Conseco Health Insurance Company | Former |
| | Conseco Life Insurance Company | Current |
| | Conseco Life Insurance Company of New York | Former |
| | Conseco Life Insurance Company of Texas | Former |
| | Conseco Senior Health Insurance Company | Former |
| | Conseco Services LLC | Closed |
| | Conseco, Inc. | Current |
| | Gary C. Wendt | Former |
| | William J. Shea | Former |
| Cox Newspapers Inc. | Manheim Automobile Financial Services, Inc. | Current |
| Credit Suisse | Credit Suisse | Current |

2

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| Credit Suisse Asset Management | Credit Suisse First Boston Corporation | Former |
| Credit Suisse International | Credit Suisse Group | Closed |
| CSFB International | Credit Suisse Group AG | Current |
| | Credit Suisse LLC | Current |
| | Credit Suisse Private Equity Partners Asia, L.P. | Former |
| | Credit Suisse Securities (USA) LLC | Current |
| | CSAM Funding I | Current |
| | CSAM Funding II | Current |
| Fidelity Advisor Series I: Fidelity Advisor Floating Rate High Income Fund | Fidelity Advisor Floating Rate High Income Fund | Current |
| Fidelity Management & Research Co Ac Fidelity Advisor Series II Fidelity Advisor Strategic Income Fund | Fidelity Advsior Series II: Fidelity Advisor Strategic Income | Current |
| Fidelity School Street Trust: Fidelity Strategic Income Fund | Fidelity School Street Trust: Fidelity Strategic Income | Current |
| GE Canada Finance Holding Co. | Birchwood Power Partners, LP | Current |
| GE Canada Finance Inc. | GE Capital Financial Inc. | Current |
| General Electric Capital Corp. | GE Healthcare | Current |
| | General Electric Capital Corporation | Closed |
| | General Electric Company | Current |
| GSO Capital | Blackstone Mezzanine Partners, L.P. | Current |
| | Blackstone Real Estate Special Situations Advisors LLC | Current |
| | GSO Capital Partners | Current |
| | Park Hill Group, LLC | Current |
| | Sanjeev Khemlani | Current |
| | Spectrum Healthcare Resources | Former |
| | The Blackstone Group | Current |
| Halbis Capital Management | HSBC Bank plc | Closed |
| HSBC Bank Canada | HSBC Investment Bank plc | Closed |
| HSBC Bank USA NA | HSBC Securities, Inc. | Closed |
| | Montagu Private Equity LLP | Current |
| Honeywell International Inc. | Honeywell Aerospace | Closed |
| | Honeywell Belgium N.V. | Current |

3

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| | Honeywell DMC Services, LLC | Closed |
| | Honeywell Europe N.V. | Current |
| | Honeywell Fluorine Products Europe B.V. | Current |
| | Honeywell International Inc. | Current |
| | Honeywell Retirement Earnings Plan | Current |
| | Honeywell Savings and Ownership Plan | Current |
| | Honeywell Secured Benefit Plan | Current |
| | Plan Administrator of Honeywell Retirement Earnings Plan | Current |
| | Plan Administrator of Honeywell Savings and Ownership Plan | Current |
| | Plan Administrator of Honeywell Secured Benefit Plan | Current |
| Idearc Media Services-West Inc. | Idearc Media Corp. | Current |
| | Idearc Media Corp., Employee Benefits Committee | Current |
| Illinois Municipal Retirement Fund | Illinois Municipal Retirement Fund | Current |
| Jupiter Loan Funding LLC | Jupiter Loan Funding LLC | Current |
| Lazard Freres & Co. LLC | Antonio Weiss | Current |
| | The Edgewater Funds | Current |
| | Lazard Freres Real Estate Investors LLC | Current |
| | Lazard, Freres & Co. | Current |
| Mariner Investment Group Incorporated Ac Caspian Capital Partners LP | Mark Weissman | Current |
| Media Procurement Services Inc. | Scripps Networks, Inc. | Former |
| | The E.W. ScrippsCompany | Former |
| Merrill Lynch Capital Corp. | BA Equity Investors | Closed |
| Merrill Lynch Capital Services Inc. | Banc of America Securities LLC | Closed |
| | BancAmerica Capital Investors II, L.P. | Current |
| | Bank of America | Current |
| | Bank of America Capital Investors | Current |
| | Bank of America Corporation | Current |

4

K&E:16393654.5

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| | Bank of America NA | Current |
| | Bank of America NT & SA | Current |
| | Bank of America Securities LLC | Closed |
| | CIVC Partners | Current |
| | Dennis P. McCrary | Current |
| | Dimitrios Psyllidis | Former |
| | Fleet Boston Financial Corporation | Closed |
| | Fleet Equity Capital | Former |
| | Fleet National Bank | Closed |
| | Jacques Gliksberg | Current |
| | Justin Dash | Former |
| | Marco Viola | Former |
| | Merrill Lynch | Current |
| | Merrill Lynch - Global Principal Investments | Closed |
| | Merrill Lynch Bank USA | Former |
| | Merrill Lynch Japan Securities Co., Ltd. | Closed |
| | Paul Horvath | Former |
| MJX Asset Management | MJX Asset Management | Current |
| Morgan Stanley Investment Management | Crescent Resources, LLC | Closed |
| Morgan Stanley Prime Income Trust Van Kampen | Marianas Holding, LLC | Current |
| | Mary Meeker | Current |
| | Morgan Stanley | Current |
| | Morgan Stanley & Company, Inc. | Current |
| | Morgan Stanley Alternative Investments Inc. | Current |
| | Morgan Stanley Asset Funding, Inc. | Current |
| | Morgan Stanley Capital Group Inc. | Closed |
| | Morgan Stanley Capital Partners | Current |
| | Morgan Stanley Dean Witter | Former |
| | Morgan Stanley Dean Witter Discover | Closed |
| | Morgan Stanley DW, Inc. | Closed |
| | Morgan Stanley Emerging Markets Inc. | Current |
| | Morgan Stanley Emerging Private Markets Fund LP | Current |

5

| Name of Entity Searched | Name of Entity and/or an Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| | Morgan Stanley Funding Inc. | Current |
| | Morgan Stanley Global Distressed Opportunities Fund LP | Current |
| | Morgan Stanley Global Secondary Opportunities Fund | Current |
| | Morgan Stanley Global Secondary Opportunities Fund I, LP | Current |
| | Morgan Stanley Investment Management Inc. | Closed |
| | Morgan Stanley Investment Management Limited | Current |
| | Morgan Stanley Japan Limited | Current |
| | Morgan Stanley Prime Income Trust | Current |
| | Morgan Stanley Private Markets Fund IV LP | Current |
| | MSCI Inc. | Current |
| | Sapphire Holdings B.V. | Current |
| | Steve Trevor | Current |
| | Steven Hefter | Closed |
| | Van Kampen Senior Income Trust | Current |
| | Van Kampen Senior Loan Fund | Current |
| | Various senior level executives of Morgan Stanley | various |
| | Various employees of Morgan Stanley | various |
| Mountain Capital | Mountain Capital Limited | Current |
| New York Post<br>NYP Holdings Inc.<br>Orange County Publication Inc. | News America Incorporated<br>REA Group | Current<br>Closed |
| Newsday Inc.<br>Newsday LLC | Cablevision Systems Corporation<br>CSC Holdings Company<br>James Dolan | Current<br>Current<br>Current |
| Pricewaterhousecoopers LLP | James Schacht<br>PricewaterhouseCoopers LLP<br>PricewaterhouseCoopers LLP Ontario<br>PricewaterhouseCoopers-Bermuda | Current<br>Current<br>Current<br>Closed |
| Primus Financial | Ford Motor Company | Former |

6

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| Richmond Newspapers Inc. | Media General Inc. | Closed |
| Riversource Investments | Ameriprise Certificate Company | Current |
| | Ameriprise Financial Inc. | Former |
| | IDS Futures Corporation | Closed |
| | RiverSource Life Insurance Company | Current |
| Rothschild Inc. | Rothschild Inc. | Current |
| Royal Bank Canada | Home123 Corporation | Closed |
| | New Century Financial Corporation | Closed |
| | RBC Capital Markets Corporation | Current |
| | RBC Centura Bank | Current |
| | RBC Mortgage Company | Closed |
| | RBC Mortgage Company of California | Closed |
| | Royal Bank of Canada | Current |
| Shell Energy North America LP | Shell Energy North America L.P. | Current |
| | Shell Trading (US) Company | Current |
| Stanwich Loan Funding LLC | Stanwich Loan Funding LLC | Current |
| Stevens Graphics Inc. | SBC Communications Inc. | Current |
| | Ameritech | Current |
| | Cingular Wireless LLC | Former |
| Suntrust Bank | SunTrust Robinson Humphrey | Closed |
| Tribune Co. | The Tribune Company | Closed |
| Tribune Publishing | Tribune Interactive, Inc. | Former |
| | Tribune Media Services, Inc. | Current |
| Univar USA Inc. | Citicorp Venture Capital Limited | Current |
| | CVC Asia Pacific Funds I | Current |
| | CVC Asia Pacific Funds II | Current |
| | CVC Asia Pacific Limited | Current |
| | CVC Capital Funding LLC | Current |
| | CVC Capital Partners Asia II Limited | Current |
| | CVC Capital Partners Asia Limited | Current |
| | CVC Capital Partners Asia Pacific LP | Current |
| | CVC Capital Partners Limited | Current |
| | CVC European Equity III Limited | Current |
| | CVC European Equity IV AB Limited | Current |

7

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a K&E Client | Status |
|---|---|---|
| | CVC European Equity Tandem GP Limited | Current |
| | CVC European Equity V Limited | Current |
| | CVC Infrastructure GP Limited | Current |
| | NTELOS Inc. | Closed |
| | Univar, Inc. | Current |
| Virginia Treasurer, Receipts Control Department | Virginia Retirement System | Closed |
| Weyerhauser Co. | Domtar, Inc. | Current |
| | Weyerhaeuser Company | Current |
| Z Capital | Christopher Kipley | Closed |
| | James J. Zenni | Current |
| | Z Capital Management LLC | Current |
| | Z Capital Partners LLC | Closed |
| | Z Capital Situations Fund-A, L.P. | Closed |
| | Z Capital Special Situations Fund, L.P. | Closed |
| | Zenni Holdings, L.L.C. | Closed |

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was sent either electronically or by first class mail, postage prepaid, this 10th day of March, 2010, to all necessary parties.


_/s/ Jonathan L. Hauser_____