DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, D.C. 20005-4213
Telephone: (202) 346-8000
Facsimile: (202) 346-8102
John K. Warren (VSB #75550)

- and -

1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Martin J. Bienenstock, *pro hac vice admission pending*
Timothy Q. Karcher, *pro hac vice admission pending*
Arielle Kane, *pro hac vice admission pending*

*Counsel to the Majority Second Lien Lenders*
*to White Birch Paper Company*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re: | Chapter 11 |
| BEAR ISLAND PAPER COMPANY, L.L.C. | Case No. 10-31202 (DOT) |
| Debtor. | |

**MAJORITY SECOND LIEN LENDERS' (A) STATEMENT IN CONNECTION
WITH DEBTOR'S REQUEST FOR DIP FINANCING AND (B) REQUEST
FOR ADDITIONAL ADEQUATE PROTECTION**

Dune Capital LP, Dune Capital International Ltd., and WTA Dune Limited (collectively, the "Majority Second Lien Lenders"), who hold in the aggregate 61.5% of the claims in connection with the $100,000,000 Second Lien Term Loan Agreement (as defined below), respectfully submit this (a) statement in connection with the request of Bear Island Paper Company, LLC (the "Debtor") for approval of its DIP Loan (as defined below) and (b) request for additional adequate protection and respectfully represent as follows:

## Preliminary Statement[1]

This Court's Interim Order grants the First Lien Lenders adequate protection in the form of subordinated replacement liens, a super-priority administrative expense senior claim, and current payment of fees and expenses. The First Lien Lenders get full protection.

In stark contrast with the protections afforded the First Lien Lenders, the Second Lien Lenders get anemic "adequate" protection in the form of doubly-subordinated replacement liens on collateral of undetermined value and a junior administrative expense claim. The Second Lien Lenders receive none of the protections they require to monitor their collateral and protect their interests. At present, the Second Lien Lenders are without an agent and the borrowers refuse to pay any replacement agent's fees and expenses—virtually ensuring that no agent will serve.

At a minimum, the Second Lien Lenders require payment of their agent's fees (which will allow them to secure a replacement agent), payment of counsel fees, and greater access and information from the Debtor regarding the value of their collateral. Only then can the Second Lien Lenders come close to being adequately protected.

As described below, in the five (5) months since the Debtor's prepetition default on its loan obligations, the Debtor has refused to provide the Second Lien Lenders with even the most basic information regarding their collateral and the Debtor's restructuring efforts. Worse, in connection with the payment default, the Second Lien Lenders' agent (Credit Suisse) resigned as agent to the Second Lien Lenders, while continuing to serve as agent to the First Lien Lenders. Moreover, the Debtor's proposed DIP financing order specifically prevents the payment of fees and expenses to any agent or counsel for the Second Lien Lenders while permitting the Debtors to use the Second Lien Lenders' collateral.

---

[1] Capitalized terms used but not defined in the Preliminary Statement have the meanings set forth below.

The Majority Second Lien Lenders respectfully request the Court grant the Second Lien Lenders greater protection as requested herein. This will ensure the Second Lien Lenders will no longer be deprived of an agent and the means to adequately monitor and protect their interests in the Debtor's chapter 11 case and ancillary proceedings.

**Background**

1. On February 24, 2010 (the "Petition Date"), the Debtor commenced a case in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On the same date, White Birch Paper Holding Company ("White Birch"), the Debtor's indirect parent, and ten of its Canadian subsidiaries (together with the Debtor, the "WB Group") obtained an Initial Order under the Companies Creditors' Arrangement Act ("CCAA") from the Quebec Superior Court, District of Montreal. The Majority Second Lien Lenders are seeking similar relief as that sought herein under the CCAA.[2] Six of the Canadian subsidiaries also commenced cases in this Court under chapter 15 of the Bankruptcy Code.

2. As described in the Debtor's *Motion for Entry of Interim and Final Orders (A) Authorizing Debtor to Obtain Secured Postpetition Financing on Super-Priority Priming Lien Basis, Granting Adequate Protection for Priming and Modifying the Automatic Stay, (B) Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection for Use Thereof, (C) Authorizing Debtor to Repay Existing ABL Revolver Indebtedness Upon Interim Approval, and (D) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing* [Docket No. 26] (the "Motion"), the WB Group's main prepetition debt obligations consist of the First Lien Term Loan Agreement, the Second Lien Term Loan Agreement, the

---

[2] A copy of the Majority Second Lien Lenders' papers filed with the Quebec Superior Court on March 12, 2010 (the "Canadian Application") are appended hereto as Exhibit A. Tellingly, as explained in the Canadian Application, White Birch's Canadian counsel did not even know that Credit Suisse had resigned as agent to the Second Lien Lenders and asserted that service on Credit Suisse was sufficient to affect the Second Lien Lender's rights with respect to the CCAA proceedings.

3

Revolving ABL Agreement, which has been extinguished with the proceeds of the interim borrowings approved by the Court by order dated February 26, 2010 (the "Interim Order") [Docket No. 66], and the Swap Agreements (each as defined in the Motion).

**Prepetition Obligations**

3. The following is a brief description of the WB Group's prepetition agreements and the amounts owed thereunder:

   (i) First Lien Term Loan Agreement: The Debtor is a guarantor of the WB Group's obligations to the lenders (the "First Lien Lenders") under the First Lien Term Loan Agreement. The obligations to the First Lien Lenders are secured by first priority liens and security interests in substantially all of the WB Group's assets (including assets of the Debtor), other than the Revolving ABL Collateral (as defined below) (the "Term Loan Collateral"). As of the Petition Date, approximately $428 million in principal and $9.8 million in interest remains outstanding under this agreement.

   (ii) Second Lien Term Loan Agreement: The Debtor is a guarantor of the WB Group's obligations to the lenders (the "Second Lien Lenders") under the Second Lien Term Loan Agreement. The obligations to the Second Lien Lenders are secured by second priority liens and security interests in the Term Loan Collateral. As of the Petition Date, approximately $100 million in principal and $4 million in interest remains outstanding under this agreement.

   (iii) Revolving ABL Agreement: The Debtor and other members of the WB Group are borrowers under the Revolving ABL Agreement. To secure the borrowers' obligations under this agreement, the WB Group granted first priority liens and security interests on, among other things, their inventory, accounts receivable, and cash (the "Revolving ABL Collateral"). As of the Petition Date, approximately $50 million remained outstanding under this agreement.

   (iv) Swap Agreements: White Birch Company, an affiliate of the Debtor, is a party to three interest rate swap agreements, which, as of the Petition Date, were out of the money by approximately $51.5 million in aggregate. White Birch Company's obligations under the Swap Agreements are collateralized by the Term Loan Collateral and the Swap Agreement lenders' liens rank *pari passu* with those of the First Lien Lenders.

**Resignation of Second Lien Agent**

4. Prior to the Petition Date, on September 30, 2009, the borrowers under the Second Lien Term Loan Agreement failed to make an interest payment due thereunder (the "Payment Default"). That same date, Credit Suisse, Cayman Islands Branch, as U.S. collateral agent, and

Credit Suisse, Toronto Branch, as administrative agent and Canadian collateral agent (together, "Credit Suisse"), gave notice of their resignation from their roles under the Second Lien Term Loan Agreement effective October 30, 2009.[3]

5.  Since Credit Suisse's resignation nearly five (5) months ago, the Second Lien Lenders have been without an agent and have been deliberately prevented from obtaining any meaningful information regarding the WB Group's restructuring plans or the present value of the collateral securing the WB Group's obligations to the Second Lien Lenders. This is the same collateral the Debtor intends to use in its chapter 11 case.

6.  The Second Lien Term Loan Agreement provides, among other things, that White Birch will pay the fees and expenses of the Second Lien Lenders' agent and the fees and expenses of the Second Lien Lenders' counsel in Canada and the United States.

7.  Despite considerable effort expended by the Majority Second Lien Lenders to install Wells Fargo NA ("Wells Fargo") as successor agent, the Debtor and its affiliates have frustrated efforts to secure a replacement agent. Indeed, prior to the Petition Date, the First Lien Lenders refused to permit White Birch to pay Wells Fargo's fees and expenses, as required by the Second Lien Term Loan Agreement. That the Debtor has continued to acquiesce to the First Lien Lenders' demand is evident in the Debtor's Motion.

**The DIP Financing**

8.  As described in the Motion, a subset of the First Lien Lenders (the "Postpetition Lenders") agreed to backstop a $140 million postpetition term loan facility (the "DIP Loan") pursuant to that certain Senior Secured Super-Priority Debtor-in-Possession Term Loan Credit Agreement (the "Postpetition Credit Agreement"). Amounts borrowed under the DIP Loan have

---

[3] Credit Suisse continues to serve as the First Lien Lenders' agent and proposes to serve as the Postpetition Lenders' agent.

super-priority status and are secured by priming liens and new liens on property (collectively, the "Postpetition Collateral").

9.  On February 25, 2010, this Court held a hearing in respect of the Motion, and on February 26, 2010, this Court entered the Interim Order. The Interim Order furnishes adequate protection to the First Lien Lenders in the form of replacement liens, subordinate to those of the Postpetition Lenders, in all Postpetition Collateral, an allowed super-priority administrative expense claim subordinate to that of the Postpetition Lenders (the "Adequate Protection Senior Claim"), and current, monthly payment of fees and expenses (including the fees and expenses of its agent, Credit Suisse), including prepetition fees and expenses (the "First Lien Fees and Expenses").

10. In contrast, the Interim Order purports to furnish adequate protection to the Second Lien Lenders in the form of doubly-subordinated replacement liens in the Postpetition Collateral and an allowed super-priority administrative expense claim subordinate to that of the First Lien Lenders (the "Adequate Protection Junior Claim"). Notably, although the First Lien Lenders receive adequate protection in the form of current payment of the First Lien Fees and Expenses, no such protection is afforded to the Second Lien Lenders.

### The Second Lien Lenders are Entitled to Additional Adequate Protection

11. The Majority Second Lien Lenders do not oppose the Debtor's request to use cash collateral or obtain the DIP Loan. Moreover, the Majority Second Lien Lenders do not object to this Court's grant of adequate protection to the First Lien Lenders.[4] The Majority Second Lien Lenders simply demand additional adequate protection for their own interests.

---

[4] The relief sought in this statement and request is without prejudice to the relief requested or that may be obtained in connection with the Canadian Application.

NYA 619247.10

12. This demand is expressly permitted by Section 6.3(b)(2) of the Intercreditor Agreement between the First Lien Lenders and the Second Lien Lenders (the "<u>Intercreditor Agreement</u>"). In its Motion, the Debtor states the Second Lien Lenders have "agreed not to oppose—or request adequate protection" provided certain conditions are met (Motion ¶ 15). The Debtor cites Section 6.1 of the Intercreditor Agreement in support of its assertion.[5] Section 6.1 is made expressly subject to Section 6.3 of the Intercreditor Agreement,[6] which provides, in relevant part, "nothing herein shall limit the rights of the [Second Lien Lenders] from seeking adequate protection with respect to their rights in the Collateral in any Insolvency or Liquidation Proceeding…." Indeed, if Section 6.1 prohibited the Second Lien Lenders from requesting adequate protection, as the Debtor suggests, the above-referenced portion of Section 6.3 would be rendered meaningless. *See*, *e.g.*, *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 614 (4th Cir. 2004) ("in construing language in a contract, 'an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless'"); *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127

---

[5] The applicable portion of Section 6.1 of the Intercreditor Agreement provides as follows:

> If the First Lien Collateral Agent shall desire to permit the use of "<u>Cash Collateral</u>" … or to permit [the Debtor] to obtain financing … under Section 364 of the Bankruptcy Code … then the Second Lien Collateral Agent … agrees (i) that it will raise no objection to such Cash Collateral use or DIP Financing … and (ii) … the Second Lien Collateral Agent will subordinate its Liens in the Collateral to the Liens securing such DIP Financing … and will not request adequate protection or any other relief in connection therewith … (except … to the extent permitted by Section 6.3).

[6] The applicable portion of Section 6.3 of the Intercreditor Agreement provides as follows:

> Except as otherwise expressly set forth in Section 6.1 or in connection with the exercise of remedies with respect to the Collateral, nothing herein shall limit the rights of the Second Lien Collateral Agent or the Second Lien Claimholders from seeking adequate protection with respect to their rights in the Collateral in any Insolvency or Liquidation Proceeding (including adequate protection in the form of a cash payment, periodic cash payments or otherwise).

(4th Cir. 1993) (courts must "give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage").

**Payment of the Second Lien Lenders' Fees
and Expenses is Necessary and Appropriate**

13. At a minimum, any Final Order entered by this Court in respect of the Debtor's postpetition borrowing (the "Final Order") should provide for current payment of the Second Lien Lenders' fees and expenses, including the fees and expenses of any agent appointed for such lenders (collectively, the "Second Lien Fees and Expenses").

14. The contractual obligations to pay fees and expenses in accordance with the Second Lien Term Loan Agreement remain unchanged notwithstanding the fact that the obligors are now in bankruptcy. Moreover, the Debtor acknowledges that the Second Lien Lenders are secured by collateral the Debtor seeks to use in its reorganization efforts. Even if the Second Lien Lenders are only partially secured by such collateral, the waterfall in Section 2.15(g) of the Second Lien Term Loan Agreement provides that any recovery on the collateral would *first* go to pay the agents' fees and expenses (including the costs of counsel).[7] Accordingly, payment of such fees as adequate protection is appropriate here, even if the Second Lien Lenders are only partially secured.

15. In addition, current payment of the Second Lien Fees and Expenses is necessary in order for the Second Lien Lenders to preserve their rights under Bankruptcy Code section 507(b), which provides:

---

[7] Section 2.15(g) of the Second Lien Term Loan Agreement provides as follows:
> Subject to the terms of the … Intercreditor Agreement, after acceleration or maturity of the Obligations, all payments and proceeds of Collateral shall be applied to amounts then due and payable in the following order: (i) to the Agents' fees and expenses reimbursable hereunder on a ratable basis; (ii) to interest on the Loans, ratably in proportion to the interest accrued as to each Loan; [and] (iii) to principal owing on the Loans.

8
NYA 619247.10

> If the trustee ... provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of such action against such property ... then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b). "Section 507(b) of the Bankruptcy Code 'provides that when adequate protection has been given to a secured creditor and later proves to be inadequate, the creditor becomes entitled to a superpriority administrative expense claim to the extent that the proffered adequate protection was insufficient.'" *In re J.F.K. Acquisitions Group*, 166 B.R. 207, 212 (Bankr. E.D.N.Y. 1994) (citations omitted); *see also In re Mutschler*, 45 B.R. 494, 496 (Bankr. D. N.D. 1984) ("Where adequate protection becomes inadequate or otherwise fails and the use nonetheless continues, Section 507(b) comes into play by covering the creditor's unprotected interest by according it priority administrative expense status.").

16. As described above, the Debtor and the WB Group have refused to provide the Majority Second Lien Lenders with information regarding the value of the collateral securing their claims. Without this information, the Majority Second Lien Lenders cannot, among other things, determine whether their collateral has diminished in value since the Petition Date.

17. The Second Lien Lenders and/or their agent must be permitted to conduct their own investigation of the collateral's value. Neither this Court nor the Second Lien Lenders should be bound by the Debtor's mere estimate of collateral value, which is insufficient to satisfy the Debtor's burden of proving adequate protection under Bankruptcy Code section 363(p)(1).[8] *See*, *e.g.*, *In re First S. Sav. Assoc.*, 820 F.2d 700, 713 (5th Cir. 1987) (unsupported assumptions insufficient to provide adequate protection); *In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985)

---

[8] Bankruptcy Code section 363(p)(1) provides that "the trustee has the burden of proof on the issue of adequate protection." 11 U.S.C. § 363(p)(1). *See*, *e.g.*, *In re The Holladay House, Inc.*, 387 B.R. 689, 691 (Bankr. E.D. Va. 2008) ("the debtor in possession has the burden of proof on the issue of adequate protection").

9

(bankruptcy court failed to determine properly the value of the secured creditor's lien where debtors presented no actual documentary evidence to support its stated value); *In re McCutchen*, 115 B.R. 126, 133 (Bankr. W.D. Tenn. 1990) ("the Court cannot find from the proof offered, that the debtor has offered adequate protection … The only proof is the debtor's estimate"); *In re Wabash Valley Power Ass'n*, 114 B.R. 613, 620 (S.D. Ind. 1990) ("'suggesting' a lien is adequate is not sufficient to meet the burden of proving" adequate protection).

### The Second Lien Lenders May be Entitled to Adequate Protection in the Form of Periodic Payments

18. Absent information regarding the value of the collateral, this Court cannot possibly determine whether the Second Lien Lenders' interests are adequately protected. Accordingly, the Majority Second Lien Lenders request treatment as if they are oversecured to preserve their super-priority administrative expense claim to the extent that the proffered adequate protection is insufficient.

10

NYA 619247.10

**<u>Conclusion</u>**

At a minimum, payment of the Second Lien Fees and Expenses is necessary to provide the Second Lien Lenders with adequate protection. Further, because the Second Lien Lenders have not been provided sufficient information to make a determination with respect to the value of the collateral, the Debtor must provide such information. Moreover, to the extent the Postpetition Credit Agreement prevents payments in accordance with this statement and request, the Postpetition Credit Agreement must be modified.

Dated: March 15, 2010　　　　　　　　　Respectfully Submitted,
　　　　Washington, D.C.

　　　　　　　　　　　　　　　　　　　/s/  John K. Warren
　　　　　　　　　　　　　　　　　　　John K. Warren (VSB #75550)
　　　　　　　　　　　　　　　　　　　DEWEY & LEBOEUF LLP
　　　　　　　　　　　　　　　　　　　1101 New York Avenue, NW
　　　　　　　　　　　　　　　　　　　Washington, D.C. 20005-4213
　　　　　　　　　　　　　　　　　　　Telephone: (202) 346-8000
　　　　　　　　　　　　　　　　　　　Facsimile: (202) 346-8102

　　　　　　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　　　　　　1301 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　New York, New York 10019
　　　　　　　　　　　　　　　　　　　Telephone: (212) 259-8000
　　　　　　　　　　　　　　　　　　　Facsimile: (212) 259-6333
　　　　　　　　　　　　　　　　　　　Martin J. Bienenstock, *pro hac vice admission pending*
　　　　　　　　　　　　　　　　　　　Timothy Q. Karcher, *pro hac vice admission pending*
　　　　　　　　　　　　　　　　　　　Arielle Kane, *pro hac vice admission pending*

　　　　　　　　　　　　　　　　　　　*Counsel to the Majority Second Lien Lenders*
　　　　　　　　　　　　　　　　　　　*to White Birch Paper Company*

NYA 619247.10

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2010, a copy of the foregoing Majority Second Lien Lenders' (a) Statement in Connection with Debtor's Request for DIP Financing and (b) Request for Additional Adequate Protection, together with Exhibit A, was served by U.S. Mail, First Class, postage prepaid, or by electronic means through the Court's ECF system or email on the following, constituting all necessary parties:

Jonathan L. Hauser, Esq.
Troutman Sanders LLP
22 Central Park Avenue, Suite 2000
P.O. Box 61185
Virginia Beach, VA 23466-1185
jonathan.hauser@troutmansanders.com
*Co-Counsel to Debtor Bear Island Paper Company, LLC*

Heather Hays Lockerman, Esq.
Troutman Sanders LLP
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
heather.lockerman@troutmansanders.com
*Co-Counsel to Debtor Bear Island Paper Company, LLC*

Christopher J. Marcus, Esq.
Richard M. Cieri, Esq.
Michael A. Cohen, Esq.
Adam Goldstein, Esq.
Richard M. Goldman, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
christopher.marcus@kirkland.com
richard.cieri@kirkland.com
michael.a.cohen@kirkland.com
adam.goldstein@kirkland.com
richard.goldman@kirkland.com
*Co-Counsel to Debtor Bear Island Paper Company, LLC*

Robert B. Van Arsdale, Esq.
W. Clarkson McDow, Jr., Esq.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov
USTPRegion04.RH.ECF@usdoj.gov
*United States Trustee*

NYA 619247.10

Edward D. Sherrick
Brant Industries
80 Field Point Road, 3rd Floor
Greenwich, CT 06830
*Debtor Designee*

Jason William Harbour, Esq.
Tyler P. Brown, Esq.
Benjamin C. Ackerly, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 E. Byrd St.
Richmond, VA 23219
jharbour@hunton.com
tpbrown@hunton.com
backerly@hunton.com
*Counsel to the Official Committee of Unsecured Creditors of Bear Island Paper Co.*

David Heller, Esq.
Keith A. Simon, Esq.
Adam J. Goldberg, Esq.
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
david.heller@lw.com
keith.simon@lw.com
adam.goldberg@lw.com
*Co-Counsel to Credit Suisse AG*

Robert H. Chappell, III, Esq.
Neil E. McCullagh, Esq.
Jennifer J. West, Esq.
Erin E. Kessel, Esq.
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
rchappell@spottsfain.com
nmccullagh@spottsfain.com
jwest@spottsfain.com
ekessel@spottsfain.com
*Co-Counsel to Credit Suisse AG*

Peter G. Zemanian, Esq.
Zemanian Law Group
150 Boush Street, Suite 600
Norfolk, Virginia 23510
pete@zemanianlaw.com
*Counsel to Suffolk Sales and Service Corporation*

Dion W. Hayes, Esq.
Lori M. Scott, Esq.
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
lscott@mcguirewoods.com
*Counsel to The Toronto-Dominion Bank*

Rebecca B. Randolph, Esq.
Assistant County Attorney
Hanover County
Post Office Box 470
7516 County Complex Road
Hanover, Virginia 23069-0470
rbrandolph@co.hanover.va.us
*Counsel to Hanover County Attorney's Office*

Russell R. Johnson III, Esq.
John M. Craig, Esq.
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, VA 23103
russj4478@aol.com
johncraigg@aol.com
*Counsel to Rappahannock Electric Cooperative*

Shari D. Williams, Esq.
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW
Washington, D.C. 20005-4026
williams.shari@pbgc.gov
efile@pbgc.gov
*Counsel to Pension Benefit Guaranty Corporation*

Peter J. Barrett, Esq.
Matthew J. Kurz, Esq.
Kutak Rock LLP
1111 East Main Street, Suite 800
Richmond, VA 23219-3500
peter.barrett@kutakrock.com
matthew.kurz@kutakrock.com
*Counsel to WM Recycle America, LLC*

Jay Epstein
White Birch Paper Company
80 Field Point Road
Greenwich, Connecticut 06830
jepstein@whitebirchpaper.com

Angela L. Batterson, Esq.
King & Spalding
1185 Avenue of Americas
New York, NY 10036-4003
abatterson@kslaw.com

Benjamin B. Iselin, Esq.
McGuire Woods LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105-0106
biselin@mcguirewoods.com

Scott D. Talmadge, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
stalmadge@kayescholer.com

/s/ John K. Warren_____

NYA 619247.10