Dion W. Hayes (VSB No. 34304)
Lori M. Scott (VSB No. 77304)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

*Attorneys for The Toronto-Dominion Bank*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 10-31202 (DOT) |
| | ) | |
| Bear Island Paper Company, L.L.C., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**LIMITED OBJECTION OF THE TORONTO-DOMINION BANK TO MOTION OF BEAR ISLAND PAPER COMPANY, L.L.C. FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363, 364(c), 364(d), AND 364(e) OF THE BANKRUPTCY CODE AND RULES 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITTION FINANCING ON SUPER-PRIORITY PRIMING LIEN BASIS, GRANTING ADEQUATE PROTECTION FOR PRIMING AND MODIFYING THE AUTOMATIC STAY, (B) AUTHORIZING DEBTOR TO USE CASH COLLATERAL OF PREPETITION SECURED LENDERS AND GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (C) AUTHORIZING DEBTOR TO REPAY EXISTING ABL REVOLVER INDEBTEDNESS UPON INTERIM APPROVAL AND (D) PRESCRIBING FORM AND MANNER OF <u>NOTICE AND SETTING THE TIME FOR THE FINAL HEARING</u>[1]**

**NOW COMES** The Toronto-Dominion Bank ("TD"), a secured creditor in the above-captioned bankruptcy case, by and through counsel, and files this limited objection (the "Limited

---

[1] By emails between counsel dated March 11 and 17, 2010, TD received an extension from the Debtor and the DIP Lender until March 18, 2010 to file this Limited Objection.

Objection") to the Motion of Bear Island Paper Company, L.L.C. (the "Debtor") for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, 364(c), 364(d), and 364(e) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtor to Obtain Secured Postpetition Financing on Super-Priority Priming Lien Basis, Granting Adequate Protection for Priming and Modifying the Automatic Stay, (B) Authorizing the Debtor to Use Cash Collateral of Prepetition Secured Lenders and Granting Adequate Protection for Use Thereof, (C) Authorizing Debtor to Repay Existing ABL Revolver Indebtedness upon Interim Approval and (D) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing (the "DIP Motion"). In support of the Limited Objection, TD states as follows:

## I.    BACKGROUND

A.    The Bankruptcy Case

1.    On February 24, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned case (the "Bankruptcy Case").

2.    The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On March 3, 2010, the United States Trustee appointed an Official Committee of Unsecured Creditors in the Bankruptcy Case.

4.    Contemporaneously with the commencement of the Bankruptcy Case, the Debtor's indirect parent White Birch Paper Holding Company ("WB Holding") and ten (10) of WB Holding's direct and indirect Canadian subsidiaries (together with the Debtor, the "WB Group") have sought relief under the Companies' Creditors Arrangement Act in the Quebec Superior Court of Justice in Montreal, Quebec, Canada.

B. The TD Swap Agreement

5. On or about May 16, 2005, TD and White Birch Paper Company ("WB") entered into that certain ISDA 2002 Master Agreement, as amended and supplemented by an Amended Interest Rate Swap Confirmation dated April 20, 2005, an Interest Rate Swap Transaction Confirmation dated May 2, 2007, and a Forbearance Agreement dated as of October 30, 2009 (as amended, the "Forbearance Agreement"), each between TD and WB (collectively, and as so amended and supplemented, the "TD Swap Agreement"). A copy of the TD Swap Agreement is attached hereto as **Exhibit A**.

6. Part 4(f) of the schedule to the TD Swap Agreement specifically incorporates the terms and conditions of the First Lien Term Loan Credit Agreement[2] and each Security Document (as defined therein) including the Security Agreement referenced below.

7. Pursuant to section 2.1 of that certain First Lien Guarantee, dated as of April 8, 2005, the Debtor and certain of its affiliates guaranteed WB's obligations under the TD Swap Agreement and certain other Obligations referred to therein.

8. Pursuant to section 2.1 of that certain First Lien Security Agreement (the "Security Agreement"), dated as of April 8, 2005, between the Debtor and Credit Suisse First Boston, in its capacity as US collateral agent for TD and the other Secured Parties referred to therein (in such capacity, the "US Collateral Agent"), the Debtor granted a lien on the Term Loan Collateral (which includes assets and Cash Collateral of the Debtor) to the US Collateral Agent for the benefit of, among others, TD to secure the Obligations referred to therein,

---

[2] Capitalized terms not specifically defined herein shall have the meanings attributed to them in the DIP Motion.

including the obligations under the TD Swap Agreement. Consequently, TD shares, on a *pari passu* basis with the First Lien Term Lenders, in the liens on the Term Loan Collateral.

9. Pursuant to Section 11 of the TD Swap Agreement, the Debtor is obligated to indemnify and hold TD harmless for all reasonable out-of-pocket expenses, including, among others, legal fees "incurred by [TD] by reason of the enforcement and protection of its rights . . . including, but not limited to, costs of collection." (TD Swap Agreement, ¶ 11.)

10. Prior to the Petition Date, the transactions under the TD Swap Agreement had been terminated with an agreed termination amount in favor of TD in excess of $8.267 million.

11. Under the Forbearance Agreement, TD agreed not to exercise or enforce its rights under the TD Swap Agreement until November 30, 2009, subject to WB's compliance with the Forbearance Agreement. The Forbearance Agreement was subsequently extended until February 26, 2010.

12. Pursuant to Paragraph 3(a) of the Forbearance Agreement, amounts due and owing under the TD Swap Agreement accrue interest at the "Agreed Interest Rate" until the outstanding amounts are paid to TD in full. The "Agreed Interest Rate" under the Forbearance Agreement is "the rate of interest then applicable to loans outstanding under the First Lien Credit Agreement." (Forbearance Agreement, ¶ 1.). By the Petition Date, with accrued interest and legal fees, TD's prepetition secured claim was no less than $8.603 million.

C. The DIP Motion

13. On the Petition Date, the Debtor filed the DIP Motion, in which the Debtor seeks Court approval of certain debtor in possession financing (the "DIP Loan") up to the maximum amount of $140,000,000.00, from a subset of the WB Group's existing First Lien Term Lenders (the "DIP Lenders"). TD is not a DIP Lender.

14. According to the DIP Motion, the Debtor seeks approval of administrative, super-priority status for the DIP Loan. Furthermore, the DIP Loan will be secured by the Postpetition Collateral, including priming liens on the Term Loan Collateral. In the DIP Motion, the Debtor also seeks authority to use Cash Collateral.

15. On February 26, 2010, an order approving the DIP Motion on an interim basis was entered (the "Interim DIP Order"), and a final hearing on the DIP Motion is scheduled for March 22, 2010.

## II. ARGUMENT

16. TD, as a secured creditor,[3] objects to the DIP Motion because the Debtor has failed to provide adequate protection to TD in order to mitigate against any potential harm to TD's interests in the collateral.

17. Section 364(d) authorizes the Court, after notice and a hearing to:

> authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the [debtor in possession] is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). Furthermore, the Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 364(d)(2). Despite this, the Debtor has made no showing that TD's interests in the Term Loan Collateral and Cash Collateral are adequately protected.

---

[3] Pursuant to section 1109(b) of the Bankruptcy Code, a party in interest, including a creditor, may raise and may appear and be heard on any issue in a case under chapter 11. TD, as a creditor holding a secured claim, is entitled to be heard on its objections to the DIP Motion.

18. Generally, the Bankruptcy Code adheres to a policy protecting "the primacy of pre-petition contractual liens and seeks to preserve the financial interests created thereby" as recognized in section 364(d), which "permits the priming of an existing lien only as 'a last resort.'" *In re Stony Creek Technologies, LLC*, 364 B.R. 882, 889-90 (Bankr. E.D. Pa. 2007) (internal citations omitted).

19. Furthermore, section 363(e) of the Bankruptcy Code provides that:

> at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

20. Adequate protection may be provided by, among other things: "(1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable equivalent' of the secured creditor's interest." *Stony Creek*, 364 B.R. at 890 citing 11 U.S.C. § 361. What constitutes adequate protection must be determined on a case-by-case basis and is a "question of fact rooted in measurements of value and the credibility of witnesses." *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

> The purpose of 'adequate protection' for a creditor is to [e]nsure that the creditor receives the value for which he bargained prebankruptcy. The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In other words, the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing.

*In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (internal quotations and citations omitted).

21. While the Bankruptcy Code permits, under certain circumstances, a debtor to incur secured debt and to use cash collateral, the Bankruptcy Code dictates that postpetition financing not be approved unless the interests of existing secured creditors are adequately protected. Because the DIP Lenders propose to prime the liens of TD, TD will be prejudiced by the DIP Loan and the Debtor's use of Cash Collateral and will be exposed to increased risk. TD is entitled to adequate protection in order to mitigate against any potential harm. Based on the prejudice and increased risk to TD, the Court should deny approval of the DIP Loan to the extent it is secured by TD's collateral and should prohibit the Debtor's use of TD's Cash Collateral or, in the alternative, provide adequate protection to TD.

22. In the DIP Motion, the Debtor proposes to grant adequate protection for any diminution in value of the First Lien Term Lenders' interests in the Term Loan Collateral and Cash Collateral in the form of: (a) subordinate super-priority administrative expense claims for the First Lien Term Lenders; (b) liens on and security interests in all Postpetition Collateral with a priority as set forth in paragraph 17(a) of the Interim DIP Order (collectively, the "Adequate Protection Senior Liens"); and (c) payment of all fees, costs and charges (including for lawyers, financial advisors and other advisors) incurred by the agents under the First Lien Term Loan Agreement.

23. Despite the fact that TD shares in the liens on the Term Loan Collateral on a *pari passu* basis with the First Lien Term Lenders, the Debtor has not proposed any adequate protection for TD's interests. In fact, the Adequate Protection Senior Liens may afford the First Lien Term Lenders a higher priority than TD, thus thwarting TD's position as *pari passu* with the First Lien Term Lenders.

24. Based on the prejudice and increased risk to TD, the Court should only approve the DIP Motion if the Debtor grants TD adequate protection in at least the same form granted to the First Lien Term Lenders. Particularly, TD is entitled to, *inter alia*: (a) subordinate super-priority administrative expense claim status; (b) liens on and security interests in the Postpetition Collateral to rank *pari passu* with the Adequate Protection Senior Liens; and (c) payment of TD's fees, costs and charges (including for lawyers, financial advisors and other advisors).

25. Additionally, to provide adequate protection to TD, the Debtor should provide for the current payment of postpetition default interest on the obligations under the TD Swap Agreement.

26. Additionally, in the Interim DIP Order, the Debtor has provided the First Lien Term Lenders with certain protections as further adequate protection for their interests in the Term Loan Collateral and Cash Collateral. Particularly, the Debtor, subject to certain conditions as provided in the Interim DIP Order, *inter alia*,: (a) admits that it is truly and justly indebted, without defense, counterclaim or offset of any kind, to, among others, the First Lien Term Lenders; (b) admits that liens and security interests of, among others, the First Lien Term Lenders, constitute valid, binding, enforceable and perfected liens and security interests in and on the respective assets and property of the Debtor and other applicable loan parties; (c) admits that the liens and security interests of, *inter alia*, the First Lien Term Lenders are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) admits that the Debtor and its affiliates and subsidiaries have no valid claims or causes of action against, among others, the First Lien Term Lenders, with respect to the Prepetition Debt Credit Agreements or other Prepetition Debt Loan Documents; and (e) irrevocably waives its right to challenge or contest, among others, the First Lien Term

Lenders' liens and the validity of the Prepetition Debt Obligations (collectively and with all other protections provided in the Interim DIP Order, the "Protections").

27. Despite the fact that TD's liens and security interests in the Term Loan Collateral and Cash Collateral rank *pari passu* with those of the First Lien Term Lenders, the Debtor has failed to provide comparable Protections to TD. The Court should only approve the DIP Motion if its approval is conditioned on TD's receipt of the same Protections granted to the First Lien Term Lenders.

### III.     CONCLUSION

For the foregoing reasons, TD respectfully requests that the Court (1) enter a final order either denying the DIP Motion or approving the DIP Motion only in accordance with the objections stated above, and (2) granting such other and further relief as is just and proper.

Dated: Richmond, Virginia
March 18, 2010                                    MCGUIREWOODS LLP


By:    /s/ Dion W. Hayes
       Dion W. Hayes (VSB No. 34304)
       Lori M. Scott (VSB No. 77340)
       McGUIREWOODS LLP
       One James Center
       901 East Cary Street
       Richmond, Virginia 23219
       Telephone: (804) 775-1000
       Facsimile: (804) 775-1061

       *Attorneys for The Toronto-Dominion Bank*

**CERTIFICATE OF SERVICE**

      I, Dion W. Hayes, an attorney at McGuireWoods LLP, hereby certify that on March 18, 2010, a true and correct copy of this Limited Objection was served by delivery via ECF e-mail to all registered parties and by first class mail to the following:

Jonathan L. Hauser
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462

Richard M. Cieri
Christopher J. Marcus
Michael A. Cohen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611

Benjamin C. Ackerly
Tyler P. Brown
Jason W. Harbour
Tara L. Elgie
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074

Robert Van Arsdale
Office of the U.S. Trustee
701 East Broad Street
Suite 4304
Richmond, Virginia 23219

David Heller
Keith A. Simon
Adam J. Goldberg
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022

Robert H. Chappell, III
Neil E. McCullagh
Jennifer J. West
Erin E. Kessel
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219

/s/ Dion W. Hayes
Dion W. Hayes (VSB No. 34304)
Lori M. Scott (VSB No. 77304)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
(804) 775-1000

*Attorneys for The Toronto-Dominion Bank*

\10853546