# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BEAR ISLAND PAPER COMPANY, L.L.C.[1] | Case No. 10-31202 (DOT) |
| Debtor. | |

### FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTOR'S LIMITED USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION DEBT LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon the motion of the debtor and debtor-in-possession (the "**Debtor**" or the "**Borrower**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), dated February 24, 2010 (the "**Motion**"), (a) seeking the entry of an interim order (the "**Interim Order**") and a final order (this "**Order**"): (i) authorizing, among other things, the Debtor and certain of its affiliates to obtain senior secured post-petition financing in an aggregate principal amount not to exceed $140,000,000 (the "**Postpetition Facility**"), pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and authorizing the Debtor and certain of its affiliates to unconditionally guaranty the Obligations under the Postpetition Facility, from Credit Suisse AG (or certain affiliates) ("**CS**"), as administrative agent and collateral agent (in such capacity, the "**Postpetition Agent**") for itself, the other Agents under the Postpetition Facility and a syndicate of financial institutions (in their capacities as such, collectively, the "**Postpetition Lenders**"), pursuant to the terms of this Order and that certain Senior Secured Super-Priority Debtor-In-Possession Term Loan Credit Agreement, dated as of March 1, 2010, by and among the

---

[1] The last four digits of the Debtor's federal tax identification number are 0914. The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

Borrower, the other Loan Parties, the Postpetition Agent and the Postpetition Lenders, in substantially the form attached to the Motion as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Postpetition Credit Agreement**");[2] (ii) authorizing the Debtor to execute, deliver and enter into the Postpetition Credit Agreement and other Postpetition Loan Documents (as defined in paragraph 2 below) and to perform such other and further acts as may be required in connection with the Postpetition Loan Documents; (iii) granting security interests, liens, and superpriority claims to the Postpetition Agent, for the benefit of itself and the Postpetition Lenders, to secure all obligations of the Debtor under and with respect to the Postpetition Facility; (iv) authorizing the Debtor's limited use of Cash Collateral (as defined in paragraph E below), solely on the terms and conditions set forth in this Order and in the Postpetition Loan Documents; (v) granting adequate protection to the Prepetition Debt Lenders (as defined in paragraph D(a)(1) below), as more fully set forth in this Order; and (vi) modifying the automatic stay imposed under section 362 of the Bankruptcy Code; (b) requesting, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the applicable Local Bankruptcy Rules of this Court, that an emergency interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of this Order, which authorizes the Debtor and other Loan Parties to borrow under the Postpetition Loan Documents, on an interim basis, up to an aggregate principal amount not to exceed $104,000,000; and (c) requesting, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Bankruptcy Rules of this Court, that this Court (i) schedule a final hearing (the "**Final Hearing**") on the Motion to consider entry of the Final Order authorizing the balance of the borrowings under the Postpetition Loan Documents on a final basis, and (ii) approve notice procedures with respect thereto; and the Interim Hearing having been held before this Court on February 25, 2010; and this Court having entered the Interim Order on February 26, 2010; and the Final Hearing having been held before this Court on March 22, 2010; and this Court having considered the Motion and all

---

2    Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Postpetition Credit Agreement.

pleadings related thereto, including the record made by the Debtor at the Interim Hearing and the Final Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[3]

A.      <u>Commencement of Case</u>.  On February 24, 2010 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  The official committee of unsecured creditors (the "**Creditors' Committee**") was appointed in the Chapter 11 Case on or about March 3, 2010.

B.      <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.  Venue of the Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      <u>Adequate Notice</u>.  On February 24, 2010, the Debtor filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtor provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtor's twenty 20 largest unsecured creditors; (iii) counsel to the Postpetition Agent; (iv) counsel to each of the Prepetition Debt Agents (as defined in <u>paragraph D(a)(1)</u> below); (v) all other known parties with liens of record on assets of the Debtor as of the Petition Date; (vi) all financial institutions at which the Debtor maintains deposit accounts; (vii) the landlords for all

---

3       Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

non-residential real properties occupied by the Debtor as of the Petition Date; (viii) the local office for the Internal Revenue Service and (xi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date thereof (collectively, the "**Notice Parties**"). The Debtor provided notice of the Final Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the Notice Parties on or about March 19, 2010. Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding is necessary or required.

D.     Prepetition Debt Loan Documents, Liens and Claims.

(a)     Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 31 of this Order, the Debtor admits, stipulates and agrees that, on and as of the Petition Date, the Debtor was indebted and bound as described below:

1.     Defined Terms. The Prepetition Senior Agent, the Prepetition Junior Agent and the Prepetition Revolving Agent are collectively referred to herein as the "**Prepetition Debt Agents**" and the Prepetition Senior Agent and the Prepetition Junior Agent are together referred to herein as the "**Prepetition Term Loan Agents**". The Toronto-Dominion Bank ("**TD**"), Credit Suisse First Boston International ("**CSI**") and Merrill Lynch Capital Services, Inc. ("**ML**") are each a party to one of the Specified Hedge Agreements (as defined below) and are collectively referred to herein as the "**Qualified Counterparties**." The Prepetition Senior Lenders, the Qualified Counterparties, the Prepetition Junior Lenders and the Prepetition Revolving Lenders are collectively referred to herein as the "**Prepetition Debt Lenders**" and the Prepetition Senior Lenders, the Qualified Counterparties and the Prepetition Junior Lenders are together referred to herein as the "**Prepetition Term Loan Lenders**".

2.     Prepetition Debt Loan Documents. The Prepetition Senior Credit Agreement, the Prepetition Junior Credit Agreement and the Prepetition Revolving Credit Agreement (collectively referred to herein as the "**Prepetition Debt Credit Agreements**") and the other Prepetition Senior Loan Documents, Prepetition Junior Loan Documents, and Prepetition Revolving Loan Documents (collectively referred to herein as the "**Prepetition Debt Loan Documents**", with the Prepetition Senior Loan Documents and the Prepetition Junior Loan Documents together referred to herein as the "**Prepetition Term Loan Documents**") are valid and enforceable and are in full force and effect. For the avoidance of doubt, the term "Prepetition Senior Loan Documents" shall be deemed to include the Specified Hedge Agreements as defined below. As used herein, the term "**Specified Hedge Agreements**" means the following: (i) the

-4-

ISDA 2002 Master Agreement, dated as of May 16, 2005, as supplemented by (x) an Amended Interest Rate Swap Confirmation dated April 20, 2005, (y) an Interest Rate Swap Transaction Confirmation dated May 2, 2007, and (z) a Forbearance Agreement dated as of October 30, 2009, each between TD and White Birch Paper Company ("**White Birch**") (as so supplemented and extended on November 25, 2009 and January 11, 2010, the "**TD Swap Agreement**"); (ii) the ISDA Master Agreement, dated as of April 13, 2005, between CSI and White Birch (the "**CS Swap Agreement**"); and (iii) the ISDA Master Agreement, dated as of May 8, 2007, between ML and White Birch (the "**ML Swap Agreement**").

3.    <u>Prepetition Debt Obligations</u>.  As of the Petition Date, the Debtor and other applicable loan parties were truly and justly indebted, without defense, counterclaim or offset of any kind, as follows:

(i) to the Prepetition Senior Agent and Prepetition Senior Lenders pursuant to the Prepetition Senior Loan Documents (other than pursuant to the Specified Hedge Agreements as provided in clause (iv) below) in the aggregate principal amount of not less than $428,293,961;

(ii) to the Prepetition Junior Agent and Prepetition Junior Lenders pursuant to the Prepetition Junior Loan Documents in the aggregate principal amount of not less than $100,000,000;

(iii) to the Prepetition Revolving Agent and Prepetition Revolving Lenders pursuant to the Prepetition Revolving Loan Documents in the aggregate principal amount of not less than $50,600,000; and

(iv) to TD pursuant to the TD Swap Agreement in the aggregate principal amount of not less than $8,267,849.67; to CSI in respect of the CS Swap Agreement in the aggregate principal amount of not less than $20,119,357; and to ML in respect of the ML Swap Agreement in the aggregate principal amount of not less than $29,155,369;

plus, with respect to each of (i) through (iv), all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees, costs and expenses (including any reasonable attorneys' and other professional fees, costs and expenses) and other obligations now or hereafter due under the applicable Prepetition Debt Loan Documents (such obligations are referred to herein, respectively, as the "**Prepetition Senior Obligations**", the "**Prepetition Junior Obligations**", the "**Prepetition Revolving Obligations**" and the "**Specified Hedge Agreement Obligations**" and are collectively referred to herein as the "**Prepetition Debt Obligations**").

4.    <u>Validity of Prepetition Debt Obligations</u>.  The Prepetition Debt Obligations constitute legal, valid and binding obligations of the Debtor and each applicable loan party and no offsets, defenses or counterclaims to the Prepetition Debt Obligations exist.  No portion of the

Prepetition Debt Obligations or, subject to the Prepetition Intercreditor Agreement, any amounts previously paid to any Prepetition Debt Agent or any Prepetition Debt Lender on account of or with respect its applicable Prepetition Debt Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Specified Hedge Agreement Obligations, and any other obligations of White Birch, under the Specified Hedge Agreements are Prepetition Senior Obligations and are guaranteed by the Debtor pursuant to the Prepetition Senior Loan Documents.

5. <u>Prepetition Debt Liens and Prepetition Debt Collateral</u>. The respective security interests and liens securing the Prepetition Senior Obligations, the Prepetition Junior Obligations and the Prepetition Revolving Obligations (respectively, the "**Prepetition Senior Liens**", the "**Prepetition Junior Liens**" and the "**Prepetition Revolving Liens**", and collectively, the "**Prepetition Debt Liens**", with the Prepetition Senior Liens and the Prepetition Junior Liens together referred to herein as the "**Prepetition Term Loan Liens**") constitute valid, binding, enforceable and perfected liens and security interests in and on the respective assets and property of the Debtor and other applicable loan parties (respectively, the "**Prepetition Senior Collateral**", the "**Prepetition Junior Collateral**" and the "**Prepetition Revolving Collateral**" and collectively, the "**Prepetition Debt Collateral**"), all as specified more fully in, and subject to the terms and conditions of, the Prepetition Debt Loan Documents.

6. <u>Validity of Prepetition Debt Liens</u>. The Prepetition Debt Liens are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order).

7. <u>No Claims or Causes of Action</u>. The Debtor and its affiliates and subsidiaries have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against any of the Prepetition Debt Agents or any of the Prepetition Debt Lenders with respect to the Prepetition Debt Credit Agreements or any other Prepetition Debt Loan Document, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

(b) The Debtor irrevocably waives any right to challenge or contest the Prepetition Debt Liens and the validity of the Prepetition Debt Obligations; <u>provided</u> that, subject to <u>paragraph 30</u> of this Order and the time limitations specified in <u>paragraph 31</u> of this Order, none of the foregoing acknowledgments or agreements by the Debtor contained in this <u>paragraph D</u> shall be binding on any other party and shall not affect the rights of any committee, Person or entity

(other than the Debtor) with respect to their rights to assert, pursue or otherwise allege any of the claims and actions described in <u>paragraph 31</u> of this Order.

(c)     As used herein, the term "**<u>Prior Liens</u>**" means only valid, enforceable, and non-avoidable liens and security interests in the Prepetition Debt Collateral that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which liens and security interests (or claims for which they relate) are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the applicable Prepetition Debt Liens under applicable law and after giving effect to any subordination or inter-creditor agreements.  For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Term Loan Liens and/or the Adequate Protection Term Loan Liens (as defined in <u>paragraph 18(a)</u> below), all of which liens are being primed by the Postpetition Liens as set forth herein, but the Prior Liens did include, prior to the Revolving Repayment Date (as defined in paragraph 4(c) of the Interim Order), the Prepetition Revolving Liens (to the extent such liens and security interests (or claims for which they relate) are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy).

E.     <u>Cash Collateral</u>.  For purposes of this Order, the term "**<u>Cash Collateral</u>**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below in <u>paragraph 9</u> of this Order) and Prepetition Debt Collateral in which any of the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents or Prepetition Debt Lenders has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Order, any other order of this Court, applicable law or otherwise.

F.     Exigent Circumstances.  The Debtor has an immediate and critical need to continue to obtain post-petition financing under the Postpetition Facility and to continue to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs (and, prior to the Revolving Repayment Date (as defined in paragraph 4(c) of the Interim Order), the Debtor had an immediate and critical need to repay the Prepetition Revolving Obligations in full).  The Debtor's continued access to sufficient working capital and liquidity through the incurrence of post-petition financing under the Postpetition Facility and the continued use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtor's estate.  Consequently, without continued access to the Postpetition Facility and the continued use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtor and its estate would suffer immediate and irreparable harm.

G.     No Alternative Sources of Funding.  The continued use of Cash Collateral alone would be insufficient to meet the Debtor's post-petition liquidity needs.  Given the Debtor's current financial condition and capital structure, the Debtor has attempted but is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code, from sources other than the Postpetition Agent and the Postpetition Lenders on terms more favorable than the terms of the Postpetition Facility.  The only source of secured credit available to the Debtor, other than the continued use of Cash Collateral, is the Postpetition Facility.  The Debtor requires both additional financing under the Postpetition Facility and the continued use of Cash Collateral under the terms of this Order in order to satisfy its post-petition liquidity needs.  After

considering all other alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the continued financing to be provided by the Postpetition Agent and the Postpetition Lenders pursuant to the terms of this Order and the Postpetition Loan Documents represents the best financing presently available to the Debtor.

H.     Willingness of Postpetition Lenders.   The Postpetition Agent and the Postpetition Lenders have indicated a willingness to continue to provide the Debtor with certain financing commitments, but solely on the terms and conditions set forth in this Order and in the Postpetition Loan Documents.

I.     Limited Consent.   The consent of the Prepetition Senior Agent (acting at the direction of the Majority Lenders under the Prepetition Senior Credit Agreement) to the priming of its liens by the Postpetition Liens is limited to the Postpetition Facility presently before this Court, with CS as Postpetition Agent and a subset of the Prepetition Senior Lenders as Postpetition Lenders, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of this Postpetition Facility with any party other than CS as Postpetition Agent.  Furthermore, the consent of the Prepetition Senior Agent to the Debtor's continued use of Cash Collateral (and, with respect to the Prepetition Senior Agent, the priming of its liens by the Postpetition Liens) as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation that its interests in its respective collateral are otherwise adequately protected.  Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Senior Agent or any Prepetition Senior Lender are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of their respective liens or security interests.

J.     Section 364(d) Finding.   The security interests and liens granted pursuant to this Order to the Postpetition Agent, for the benefit of itself and the Postpetition Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such

security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in any property of the Debtor's estate, and/or (ii) the holders of such security interests and liens have consented (or are deemed to have consented) to the security interests and priming liens granted pursuant to this Order to the Postpetition Agent for the benefit of itself and the Postpetition Lenders.

K.  <u>Prepetition Intercreditor Agreement</u>.  Pursuant and subject to Sections 2.1, 6.1 and 6.3 of that certain Second Amended and Restated Intercreditor Agreement, dated as of May 8, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Intercreditor Agreement**"), the Prepetition Junior Agent, on behalf of itself and the Prepetition Junior Lenders, has agreed: (i) to subordinate its liens in the Prepetition Senior Collateral and the Prepetition Junior Collateral to the Postpetition Liens and the Adequate Protection Senior Liens, and (ii) that it will not request adequate protection or any other relief in connection with the Debtor's entry into the Postpetition Facility or continued use of Cash Collateral, except as expressly agreed to by the Prepetition Senior Agent or to the extent permitted under, and subject to the terms and conditions of, Sections 6.1 and 6.3 of the Prepetition Intercreditor Agreement.

L.  <u>Good Cause Shown</u>.  Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and such relief is in the best interest of the Debtor, its estate and creditors.  In particular, the authorizations granted herein for the Debtor to execute the Postpetition Loan Documents, to continue to use the Cash Collateral, and to continue the financing, including on a priming lien basis, are necessary to avoid immediate and irreparable harm to the Debtor and its estate, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.  <u>Section 364(e); Good Faith</u>.  The Postpetition Facility, Postpetition Loan Documents, continued use of Cash Collateral and provision of adequate protection contained

herein have been negotiated in good faith and at arm's-length among the Debtor, the Prepetition Senior Agent and the Postpetition Agent. Accordingly, any credit extended and loans made to, Cash Collateral used by, and adequate protection provided by the Debtor pursuant to this Order or the Interim Order shall be, and hereby are, deemed to have been extended, issued, made, used or provided, as the case may be, in "good faith" as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Motion Granted</u>. The Motion is approved on a final basis on the terms and conditions set forth in this Order. This Order shall become effective immediately upon its entry. To the extent any provisions in this Order conflict with any provisions of the Interim Order or Postpetition Loan Documents, the provisions of this Order shall control and govern to the extent of such conflict. All objections to the entry of this Order have been withdrawn or overruled. All actions taken in connection with or in reliance on the Interim Order are hereby reaffirmed in full as if taken in connection with or in reliance on this Order.

2. <u>Postpetition Loan Documents</u>. Except as set forth in this Order, the terms and conditions of the Postpetition Credit Agreement are hereby approved on a final basis. The Debtor is hereby authorized, on a final basis, to enter into and deliver the Postpetition Credit Agreement and such additional documents, instruments, notes and agreements as may be reasonably required by the Postpetition Agent to implement the terms or effectuate the purposes of this Order or the Interim Order (as such additional documents, instruments, notes and agreements may be amended, restated, supplemented or otherwise modified from time to time, together with the Postpetition Credit Agreement, the "**Postpetition Loan Documents**"). Any Postpetition Loan Documents entered into by the Debtor prior to the date of this Order in accordance with the terms

and conditions of the Interim Order are hereby approved and reaffirmed in full. The Borrower is hereby authorized to continue to borrow money under the Postpetition Credit Agreement, and guarantee the Obligations of the other Loan Parties thereunder, in accordance with the terms of this Order and the Postpetition Loan Documents. Upon execution and delivery thereof by the Borrower and the other Loan Parties, the Postpetition Loan Documents shall be incorporated by reference as part of this Order and shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor (and its estate, successor and assigns) in accordance with the terms thereof.

3. <u>Amendments</u>. The Debtor is hereby authorized after notice to counsel to the Creditors' Committee, without further notice, motion or application to, order of, or hearing before, this Court, to enter into and consummate any non-material modifications to the Approved Budget or the Postpetition Credit Agreement, or of any other modifications to the Postpetition Credit Agreement necessary to conform the Postpetition Credit Agreement to this Order; <u>provided, however,</u> that notice of any material modification or amendment to the Approved Budget or the Postpetition Credit Agreement shall be provided to counsel to the Creditors' Committee and counsel to the U.S. Trustee, each of whom shall have seven (7) days from the date of such notice within which to object in writing to such modification or amendment. If the Creditors' Committee or the U.S. Trustee timely objects to any material modification or amendment to the Approved Budget or the Postpetition Credit Agreement, then such modification or amendment shall only be permitted pursuant to an order of this Court.

4. <u>Permitted Use</u>.

a. <u>Generally</u>. Notwithstanding anything in this Order to the contrary, the Debtor may continue to use the Cash Collateral and proceeds of the Postpetition Facility and continue to incur Postpetition Obligations solely in accordance with and pursuant to the financial covenants, availability formulae, and other terms and conditions set forth in the Postpetition Loan Documents and this Order, but in all events only until the occurrence of the Maturity Date

(regardless of whether the aggregate funds shown on the Approved Budget have been expended). Notwithstanding the foregoing, but subject to the Maximum Amount (as defined in paragraph 7 below), if the Postpetition Agent or the Postpetition Lenders in their respective sole discretion advance funds or provide other extensions of credit to the Debtor in excess of any financial covenants, availability formulae, or other terms and conditions (or any other limitations in the Postpetition Loan Documents, including, without limitation, the Approved Budget), such advances (and any other indebtedness in excess of such amount) shall constitute Postpetition Obligations entitled to the rights, priorities, benefits and protections of the Postpetition Loan Documents and this Order.

b.      No Duty to Monitor Compliance.    The Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders, and the Prepetition Debt Lenders may assume the Debtor will comply with this Order, the Approved Budget and the Postpetition Loan Documents and shall not (i) have any obligation with respect to the Debtor's continued use of Cash Collateral or the continued use of proceeds of the Postpetition Facility; (ii) be obligated to ensure or monitor the Debtor's compliance with any financial covenants, formulae, or other terms and conditions of any Postpetition Loan Document or (iii) be obligated to pay any expenses incurred or authorized to be incurred pursuant to the Postpetition Loan Documents.

c.      Repayment of Prepetition Revolving Obligations.    On the Closing Date, the Prepetition Revolving Obligations were paid in full in cash in accordance with the terms and conditions of the Prepetition Revolving Loan Documents and the Interim Order, and, accordingly, the Revolving Repayment Date (as defined in paragraph 4(c) of the Interim Order) occurred on such date.  The payment by the Debtor of such amounts shall not alter or limit any rights and remedies of the Creditors' Committee or any other Person arising under paragraph 31 of this Order.  As of the Revolving Repayment Date (as defined in paragraph 4(c) of the Interim Order), the Prepetition Revolving Credit Agreement, Prepetition Revolving Loan Documents, and Prepetition Revolving Liens, were, without further notice to, or action by, any Person, deemed

immediately terminated, extinguished and released, and, to the extent applicable, the Prepetition Revolving Agent shall promptly execute and deliver to the Debtor and Postpetition Agent such instruments of termination, release and satisfaction (in recordable form) as may be reasonably requested by the Debtor and/or the Postpetition Agent. Notwithstanding the above, any indemnity provisions contained in the Prepetition Revolving Loan Documents shall survive such termination, release and satisfaction in the manner and to the extent set forth therein.

5.    **Postpetition Obligations**.    For purposes of this Order, the term "**Postpetition Obligations**" shall mean all amounts owing under the Postpetition Credit Agreement and other Postpetition Loan Documents (including, without limitation, all "Obligations" as defined in the Postpetition Credit Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys' and other professional fees, costs and expenses that are chargeable or reimbursable under the Postpetition Loan Documents), and any obligations in respect of indemnity claims, in each case whether contingent or otherwise.

6.    Interest, Fees, Costs and Expenses.    The Postpetition Obligations shall bear interest at the rates (including default rates when applicable), and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Order and the Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtor shall pay on demand all fees, costs, expenses and other charges payable under and pursuant to the terms of the Postpetition Loan Documents, including, without limitation, all of the fees, costs and expenses described in Section 2.4 (Fees), Section 2.15 (Indemnity) and Section 9.4 (Payment of Expenses) of the Postpetition Credit Agreement.  None of such fees, costs and expenses (or the fees, costs and expenses described in paragraph 17(c) below) shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, that, prior to such payment, the Prepetition Senior Agent, the Postpetition Agent and

-14-

Postpetition Lenders shall submit summaries of their respective professional fee invoices to the Debtor, the U.S. Trustee and counsel for the Creditors' Committee. Such invoices may be redacted to the extent necessary to prevent disclosure of any information subject to the attorney-client privilege, any attorney work product, or any other confidential, privileged, or protected information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other applicable privilege or protection. The Debtors, the U.S. Trustee and the Creditors' Committee may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on the applicable professional no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any such fees, costs and expenses shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. The Debtor shall indemnify the Postpetition Agent and the Postpetition Lenders (and other applicable parties) to the extent set forth in the Postpetition Loan Documents, including, without limitation, as provided in Section 2.15 (Indemnity) of the Postpetition Credit Agreement. With respect to the Postpetition Loan Documents, all such unpaid fees, costs, expenses, charges and indemnities shall constitute Postpetition Obligations and shall be secured by the Postpetition Collateral as specified in this Order. Any and all fees, costs and expenses paid prior to the Petition Date by the Debtor to the Postpetition Agent or Postpetition Lenders in connection with or with respect to the Postpetition Facility, Postpetition Credit Agreement or other Postpetition Loan Documents are hereby approved in full.

7. **Maximum Amount**. Subject to the terms and conditions set forth in this Order and in the Postpetition Loan Documents, the Debtor may continue to use the proceeds of the

Postpetition Facility and the Cash Collateral solely to: (i) pay outstanding Postpetition Obligations as provided in the Postpetition Loan Documents and this Order, (ii) make the adequate protection payments required under this Order, and (iii) fund general corporate and working capital requirements of the Debtor in accordance with the terms of the Postpetition Loan Documents. The aggregate principal amount of Loans available under the Postpetition Credit Agreement shall not at any time exceed $140,000,000 without further order of this Court (the "**Maximum Amount**"), in each case with respect to the Debtor and all other Loan Parties in the aggregate.

        8.     Approved Budget.

        a.     Generally. On March 1, 2010 (Docket No. 88), the Debtor filed its 13-week budget (the "**Initial Approved Budget**") which reflects on a line-item basis the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur during each week of the Initial Approved Budget. The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and approved by the Postpetition Agent and Syndication Agent in writing in accordance with the terms of the Postpetition Credit Agreement (each such additional budget, a "**Supplemental Approved Budget**"), in each case without further notice, motion or application to, order of, or hearing before, this Court (except as required by paragraph 3 above). The aggregate, without duplication, of all items that are set forth in the Initial Approved Budget, as such budget may be amended, modified, replaced, or supplemented from time to time by any Supplemental Approved Budget, shall constitute the "**Approved Budget**."

        b.     Budget Covenants. The Debtor shall provide to the Postpetition Agent, so as actually to be received within four (4) Business Days following the Friday of each week (the "**Report Date**"), weekly line-by-line certified variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to such Report Date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget, in form and scope

acceptable to the Postpetition Agent and Syndication Agent.  The Debtor shall, on the fourth (4th) Business Day of each week beginning with the first full week after the Petition Date until the Maturity Date, deliver to the Postpetition Agent an updated, "rolling" 13-week budget which sets forth by line item updated projected receipts and disbursements for the Debtor and the other Loan Parties during the period commencing from the end of the previous week through and including thirteen weeks thereafter; provided that the Debtor shall still be subject to and be governed by the terms of the Approved Budget then in effect and the Postpetition Agent, Prepetition Debt Agents, Postpetition Lenders and Prepetition Debt Lenders shall, as applicable and subject to the terms of the Postpetition Loan Documents and the Prepetition Intercreditor Agreement, have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto. The Debtor shall, by no later than five (5) Business Days prior to the end of the period covered by the then applicable Approved Budget, deliver to the Postpetition Agent a Supplemental Approved Budget.

9.      Postpetition Liens.  As security for the full and timely payment of the Postpetition Obligations, the Postpetition Agent, for the benefit of the Postpetition Agent, the other Agents under the Postpetition Loan Documents, and the Postpetition Lenders, is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests, liens and mortgages (collectively, the "**Postpetition Liens**") in and upon all pre-petition and post-petition real and personal, tangible and intangible property and assets of the Debtor of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the Capital Stock of the Debtor's direct

and indirect domestic and foreign subsidiaries (other than the Capital Stock of any Excluded Non US Subsidiary of White Birch, in respect of which only 65% of the voting Capital Stock and 100% of the non-voting Capital Stock shall be subject to such security interests and liens), all inter-company notes held by the Debtor, the Soucy Intercompany Note, the Soucy 1 Intercompany Note, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action (exclusive of actions for preferences, fraudulent conveyances, and other avoidance power claims under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**") and the proceeds and recoveries from the Avoidance Actions (the "**Avoidance Action Proceeds**", but including avoidance actions under section 549 of the Bankruptcy Code with respect to Postpetition Collateral and related proceeds and recoveries thereof under section 550 of the Bankruptcy Code), the Prepetition Debt Collateral, and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, the "**Postpetition Collateral**").

10. <u>Other Priority Matters</u>. Subject to the Carve-Out, the Postpetition Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all Postpetition Collateral that is not otherwise subject to any Prior Lien; (b) shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to and prime (i) the Prepetition Term Loan Liens and (ii) the Adequate Protection Term Loan Liens (the liens described in clauses (i) and (ii) above, collectively, the "**Primed Liens**"); and (c) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Prior Liens (other than the Primed Liens) on or in the Postpetition Collateral. Other than the Carve-Out and Prior Liens, the Postpetition Liens shall at all times be senior to the following (collectively, the "**Subordinate Liens and Related Rights**"): (i) the rights of the Debtor and any successor trustee or estate representative in the Chapter 11 Case or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if the Chapter 11 Case is converted to a case under Chapter 7 of the Bankruptcy Code (the "**Successor Case**"); (ii) any inter-company claim of the Debtor or any domestic or foreign subsidiary or affiliate of the Debtor,

and (iii) any security interest or lien which is either (x) avoided or otherwise preserved for the benefit of the Debtor's estate under section 551 or any other provision of the Bankruptcy Code, or (y) junior or otherwise subordinate to the Prepetition Senior Liens. The Postpetition Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Case and any Successor Case. Other than the Carve-Out and Prior Liens, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or pari passu with the Postpetition Liens in the Chapter 11 Case or any Successor Case without the express written consent of the Postpetition Agent and Syndication Agent given in accordance with the terms of the Postpetition Credit Agreement. Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Prior Liens.

11.     Super-Priority Claim. In addition to the Postpetition Liens, the Postpetition Agent, the other Agents under the Postpetition Loan Documents, and Postpetition Lenders are hereby granted, for all Postpetition Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claim**") against the Debtor and its estate. Except for the Carve-Out, the Super-Priority Claim shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the Adequate Protection Term Loan Claims (as defined below)). The Super-Priority Claim shall at all times be senior to the following (collectively, the "**Subordinate Claims and Related Rights**"): the claims and rights of (i) the Debtor or any domestic or foreign subsidiary or affiliate of the Debtor, (ii) any successor trustee or estate representative in the Chapter 11 Case or any Successor

Case, or (iii) except for the Carve-Out, any other creditor or party in interest in the Chapter 11 Case or any Successor Case. The Super-Priority Claim shall be payable from, and have recourse to, all property and assets of the Debtor; provided, however, that notwithstanding anything to the contrary in this Order, the Superpriority Claim shall not be payable from or have recourse to the Avoidance Actions or the Avoidance Action Proceeds.

12. No Reduction or Impairment. No obligation or liability owed, or payment, transfer or grant of security, to the Postpetition Agent, the other Agents under the Postpetition Loan Documents, or any Postpetition Lender under the Interim Order, this Order or any other Postpetition Loan Document shall be stayed, restrained, voidable, impaired, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Chapter 11 Case or any Successor Case. Any Postpetition Obligations, once paid by the Debtor or any other Loan Party, shall be non-refundable. Subject to the terms and conditions of the Prepetition Intercreditor Agreement, the Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders and the Prepetition Debt Lenders shall not be subject to the equitable doctrine of "marshaling", "election of remedies" or any other similar doctrine, or an "equities of the case" claim under section 552(b) of the Bankruptcy Code, in each case with respect to any of its respective interests in the Postpetition Collateral and Prepetition Debt Collateral (as applicable).

13. Carve-Out.

a. Generally. Notwithstanding anything to the contrary contained in the Interim Order or this Order, upon the occurrence of the Carve-Out Trigger Date (as defined below), the liens and claims granted to any of the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, and Prepetition Debt Lenders in the Interim Order, this Order, the Postpetition Loan Documents and/or the Prepetition Debt Loan Documents shall be subject to the

payment, without duplication, of the following fees and claims (collectively, the "**Carve-Out**") to the extent that there are not sufficient, unencumbered funds in the Debtor's estate or in the possession of any other Loan Party to pay such amounts at the time payment is required to be made:

(i) with respect to claims incurred prior to the Carve-Out Trigger Date, the claims of (x) professionals of the Debtor whose retention is approved by this Court during the Chapter 11 Case pursuant to Sections 327, 328 and 363 of the Bankruptcy Code (the "**Debtor's Professionals**") for unpaid fees and expenses which were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date; and (y) individual Creditor's Committee members for out-of-pocket expenses and professionals of the Creditor's Committee (but not professionals of the individual Creditor's Committee members) whose retention is approved by this Court during the Chapter 11 Case pursuant to Section 1103 of the Bankruptcy Code (the "**Committee's Professionals and Members**" and together with the Debtor's Professionals, the "**Retained Professionals and Members**") for unpaid fees and expenses which were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date; <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals and Members are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code, comply with the Approved Budget and are not excluded from the Carve-Out under <u>paragraph 30</u> of this Order (such fees and expenses, the "**Pre-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Pre-Carve-Out Trigger Date Amount**");

(ii) with respect to claims incurred on or after the Carve-Out Trigger Date, the claims of Retained Professionals and Members for unpaid fees and expenses which were incurred on and after the Carve-Out Trigger Date; <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals and Members are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code, are not excluded from the Carve-Out under <u>paragraph 30</u> of this Order and do not exceed $2,800,000 in the aggregate for all of the Retained Professionals and Members (such fees and expenses, the "**Post-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Post-Carve-Out Trigger Date Amount**" and, together with the Pre-Carve-Out Trigger Date Amount, the "**Carve-Out Amount**"); and

(iii) unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the United States Code.

b. <u>Carve-Out Trigger Date</u>. As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Postpetition Agent provides written notice to the Debtor that the Carve-Out is invoked, which notice shall be delivered only on or after the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement.

c.     Carve-Out Trigger Date Amounts.    Subject to the terms and conditions of this Order and the Postpetition Loan Documents, the Debtor shall be permitted, during the time period prior to the Carve-Out Trigger Date, to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals and Members allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code and that are consistent with the Approved Budget, as the same may be due and payable, that constitute Pre-Carve-Out Trigger Date Expenses and such payments shall not reduce or be deemed to reduce the Post-Carve-Out Trigger Date Amount.    On and after the Carve-Out Trigger Date, the dollar amounts available to be paid under the Carve-Out Amount shall be reduced, dollar-for-dollar, by the aggregate amount of payments made to the Retained Professionals and Members on account of their Pre-Carve-Out Trigger Date Expenses or Post-Carve-Out Trigger Date Expenses (whether from Cash Collateral, any proceeds of the Postpetition Facility, or otherwise).

d.     Reservation of Rights.    Payment of any fees and expenses of the Retained Professionals and Members pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce the Debtor's obligations owed to any of the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, and/or Prepetition Debt Lenders or (ii) subordinate, modify, alter or otherwise affect any of the claims, liens, and security interests of such parties.    The Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, and Prepetition Debt Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals and Members (or of any other Person) incurred in connection with the Chapter 11 Case or any Successor Case, and nothing in the Interim Order, this Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any Retained Professionals and Members or any other Person, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.    Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals and Members.    For the avoidance of doubt, the

Carve-Out described herein is an aggregate carve-out for the Debtor and all respective Loan Parties. Notwithstanding anything in this Order to the contrary, upon the occurrence of the Final Revolving Allowance Date (as defined in paragraph 31(a) below), the Prepetition Revolving Agent and the Prepetition Revolving Lenders shall have no further liabilities or obligations with respect to or regarding the Carve-Out.

14. [Intentionally Omitted.]

15. <u>Chapter 11 Milestones</u>. The Debtor shall comply in all respects with the milestone covenants and deadlines set forth in Section 5.19 of the Postpetition Credit Agreement, for which time is of the essence. Subject to the terms and conditions of the Postpetition Loan Documents, the Prepetition Intercreditor Agreement, the Prepetition Debt Loan Documents and applicable law, the respective rights of the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, and Prepetition Debt Lenders to credit bid all or any portion of the Postpetition Obligations and Prepetition Debt Obligations (as applicable) under section 363(k) of the Bankruptcy Code and other applicable law in connection with any proposed sale of Prepetition Debt Collateral or Postpetition Collateral (other than the sale of Inventory in the ordinary course of the Debtor's business), or to object to such proposed sale or other Asset Sale, are preserved.

16. <u>Landlord Agreements</u>. All landlord agreements to which any of the Prepetition Debt Agents is a party shall be deemed amended to include the Postpetition Agent as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the Postpetition Agent against, and binding upon, each landlord party thereto in accordance with, and subject to, its respective terms and conditions until the Postpetition Obligations shall have been paid in full in cash and the Postpetition Credit Agreement shall have been terminated.

17. <u>Adequate Protection Senior Obligations</u>. Until the indefeasible repayment in full in cash of the Prepetition Senior Obligations, as adequate protection for the Prepetition Senior Agent's interest in the Prepetition Senior Collateral, the Prepetition Senior Agent, for its

benefit and the benefit of the Prepetition Senior Lenders and the Qualified Counterparties, is hereby granted the following:

a.  <u>Replacement Liens</u>.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, to the extent set forth in subsection (d) hereof, the Prepetition Senior Agent, for its benefit and the benefit of the Prepetition Senior Lenders and the Qualified Counterparties, is hereby granted by the Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral (the "**Adequate Protection Senior Liens**").  The Adequate Protection Senior Liens shall: (a) be subordinate only to: (1) the Carve-Out, (2) the Postpetition Liens, and (3) the Prior Liens; and (b) be senior and superior to the Subordinate Liens and Related Rights.  The Adequate Protection Senior Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Case and any Successor Case.  Except as described in clause (a) above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or <u>pari</u> <u>passu</u> with the Adequate Protection Senior Liens in the Chapter 11 Case or any Successor Case.

b.  <u>Adequate Protection Senior Claim</u>.  To the extent set forth in subsection (d) hereof, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Senior Agent, for its benefit and the benefit of the Prepetition Senior Lenders and the Qualified Counterparties, shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Senior Claim**") against the Debtor and its estate.  The Adequate Protection Senior Claim shall: (a) be subordinate only to: (1) the Carve-Out, and (2) the Super-Priority Claim; and (b) be senior and superior to the Subordinate Claims and Related Rights.  Except as described in clause (a) above, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in the Chapter 11 Case or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or <u>pari</u> <u>passu</u> with, the Adequate Protection Senior Claim.

c.    Payment.  As further adequate protection, and without limiting any rights of the Prepetition Senior Agent, the Prepetition Senior Lenders and the Qualified Counterparties under section 506(b) of the Bankruptcy Code (including, without limitation, the right to seek postpetition interest and attorneys' fees), which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Senior Agent (acting at the direction of the Majority Lenders under the Prepetition Senior Credit Agreement) and the Qualified Counterparties to the extent required by the Prepetition Senior Loan Documents or other applicable law to the entry of this Order and the Debtor's consensual use of Cash Collateral as provided herein, the Debtor shall (i) on the Closing Date and on a monthly basis thereafter, pay or reimburse the Prepetition Senior Agent for any and all of its accrued and outstanding fees, costs, expenses and charges payable under the Prepetition Senior Loan Documents, including, without limitation, the reasonable attorneys' and other professional fees, costs and expenses of the Prepetition Senior Agent, whether accrued prepetition or postpetition (in each instance, in addition to any retainers or other amounts paid prior to the Petition Date), all without further notice, motion or application to, order of, or hearing before, this Court, and (ii) within five business days of entry of this Order, reimburse Kingsland Capital in the amount of $100,000, TD in the amount of $115,000 and ML in the amount of $10,000 (in each instance, in addition to any retainers or other amounts paid prior to the Petition Date) for their respective accrued and outstanding fees, costs, expenses and charges payable under the Prepetition Senior Loan Documents, including, without limitation, their respective reasonable attorneys' and other professional fees, costs and expenses, whether accrued prepetition or anytime postpetition until entry of this Order, all without further notice, motion or application to, order of, or hearing before, this Court.  The payments described in this paragraph 17(c) shall be provisional in nature pending ultimate allowance under Section 506(b) of the Bankruptcy Code.  Upon entry of a final non-appealable order by the Court determining that any payments described in this paragraph 17(c) were not proper pursuant to

Section 506(b) of the Bankruptcy Code, such payments may be reapplied or recharacterized as the Court may order.

        d.     <u>Adequate Protection Senior Obligations</u>.  The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall only secure the payment of the Prepetition Senior Obligations in an amount equal to any diminution in the value of the Prepetition Senior Agent's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Senior Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtor of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral attributable to the Prepetition Senior Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise.  If the Adequate Protection Senior Claim satisfies the requirements of section 507(b) of the Bankruptcy Code, the Adequate Protection Senior Claim shall be payable from, and have recourse to, all property and assets of the Debtor, including, without limitation, the Avoidance Action Proceeds; <u>provided</u> that the Avoidance Action Proceeds shall be substantially the last property used to repay the Adequate Protection Senior Claim.

        18.     <u>Adequate Protection Junior Obligations</u>.  Until the indefeasible repayment in full in cash of the Prepetition Junior Obligations, as adequate protection for the Prepetition Junior Agent's interest in the Prepetition Junior Collateral, the Prepetition Junior Agent, for its benefit and the benefit of the Prepetition Junior Lenders, is hereby granted the following:

        a.     <u>Replacement Liens</u>.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, to the extent set forth in subsection (c) hereof, the Prepetition Junior Agent, for its benefit and the benefit of the Prepetition Junior Lenders, is hereby granted by each Debtor continuing valid, binding, enforceable and perfected, liens and security interests in

and on all of the Postpetition Collateral (the "**Adequate Protection Junior Liens**" and, together with the Adequate Protection Senior Liens, the "**Adequate Protection Term Loan Liens**"). The Adequate Protection Junior Liens shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Adequate Protection Senior Liens under this Order, except that such Adequate Protection Junior Liens shall be junior and subordinate in right of payment to the Prepetition Senior Liens and the Adequate Protection Senior Liens.

b.    *Adequate Protection Junior Claim*.    To the extent set forth in subsection (c) hereof, pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Junior Agent, for its benefit and the benefit of the Prepetition Junior Lenders, shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Junior Claim**" and, together with the Adequate Protection Senior Claim, the "**Adequate Protection Term Loan Claims**") against the Debtor and its estate. The Adequate Protection Junior Claim shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Adequate Protection Senior Claim under this Order, except that such Adequate Protection Junior Claim shall be junior and subordinate in right of payment to the Adequate Protection Senior Claim.

c.    *Adequate Protection Junior Obligations*.    The Adequate Protection Junior Liens and Adequate Protection Junior Claim shall only secure the payment of the Prepetition Junior Obligations in an amount equal to any diminution in the value of the Prepetition Junior Agent's interests in the Prepetition Junior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Junior Obligations**" and, together with the Adequate Protection Senior Obligations, the "**Adequate Protection Term Loan Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Junior Collateral, including, without limitation, the Cash Collateral attributable to the Prepetition Junior Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition,

shrinkage, or decline in market value of the Prepetition Junior Collateral or otherwise. If the Adequate Protection Junior Claim satisfies the requirements of section 507(b) of the Bankruptcy Code, the Adequate Protection Junior Claim shall be payable from, and have recourse to, all property and assets of the Debtor, including, without limitation, the Avoidance Action Proceeds; provided that the Avoidance Action Proceeds shall be substantially the last property used to repay the Adequate Protection Junior Claim.

19. **Adequate Protection Revolving Obligations**. Due to the occurrence of the Revolving Repayment Date (as defined in paragraph 4(c) of the Interim Order), the Debtor is no longer required to provide adequate protection to the Prepetition Revolving Agent or Prepetition Revolving Lenders on account of the Prepetition Revolving Obligations (or liens securing the same).

20. **Subordination of Prepetition Obligations**. Notwithstanding anything in the Interim Order or this Order to the contrary, any and all claims and liens of the Postpetition Agent, the other Agents under the Postpetition Loan Documents, and Postpetition Lenders arising with respect to or in connection with the Interim Order, this Order or Postpetition Loan Documents (the "**Superior Obligations**"), including, without limitation, the Postpetition Obligations, Postpetition Liens, and Super-Priority Claims, must and shall be indefeasibly paid and satisfied in full in cash and all lending commitments under the Postpetition Loan Documents must be terminated before any payment or distribution, whether pursuant to a plan of reorganization, setoff or otherwise, may or can be made to or retained by any of the Prepetition Term Loan Agents or Prepetition Term Loan Lenders (in their respective capacities as such) arising with respect to or in connection with this Order (except with respect to any payments described in paragraph 17(c) of the Interim Order or this Order) and/or the Prepetition Term Loan Documents (collectively, the "**Subordinate Obligations**").

21. **Waiver of Section 506(c) Claims**. No costs or expenses of preserving or disposing of the Postpetition Collateral shall be imposed against the interests of the Postpetition

Agent or Postpetition Lenders in the Postpetition Collateral under section 506(c) of the Bankruptcy Code, and the Debtor hereby irrevocably waives any and all such rights, remedies and benefits under section 506(c) of the Bankruptcy Code. Nothing in this Order shall be deemed a waiver of the Debtor's rights under section 506(c) of the Bankruptcy Code against any property to the extent it secures an allowed prepetition secured claim (or be deemed a waiver of any objection thereto).

22. <u>Other Waivers</u>. Except for the Carve-Out and Prior Liens or as otherwise expressly permitted by the Prepetition Intercreditor Agreement, the Postpetition Loan Documents or the Prepetition Debt Loan Documents (as applicable), no claim or lien having a priority superior to or <u>pari passu</u> with those granted pursuant to the Interim Order or this Order to the Postpetition Agent, the Postpetition Lenders, the Prepetition Senior Agent, the Prepetition Senior Lenders and the Qualified Counterparties, respectively, shall be granted or allowed while any portion of the Postpetition Facility (or any refinancing thereof), the Commitments (as defined in the Postpetition Credit Agreement) thereunder, the Postpetition Obligations and/or the Adequate Protection Senior Obligations remain outstanding. Except as expressly permitted by the Postpetition Credit Agreement, but subject to the terms and conditions of the Prepetition Intercreditor Agreement, the Debtor shall not grant mortgages, security interests, or liens in the Postpetition Collateral to any parties other than the Postpetition Agent, the other Agents under the Postpetition Loan Documents and Postpetition Lenders (in their capacities as such) pursuant to section 364(d) of the Bankruptcy Code or otherwise.

23. <u>Automatic Perfection</u>.

a. The Postpetition Liens and the Adequate Protection Term Loan Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further notice, act or action of or by any Person or entity, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents. If

the Postpetition Agent or Prepetition Debt Agents hereafter requests that the Debtor execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under the Interim Order or this Order, then the Debtor shall promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Postpetition Agent and Prepetition Debt Agents (as applicable) are hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order, but with the priorities as set forth herein. The Postpetition Agent and Prepetition Debt Agents may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of the Interim Order, but with the priorities as set forth herein.

b.     Notwithstanding anything in the Interim Order or this Order to the contrary, (i) the Prepetition Senior Agent and Prepetition Senior Lenders shall not request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in the Interim Order or this Order, unless the Postpetition Agent shall theretofore have done so or consented thereto and (ii) the Prepetition Junior Agent and Prepetition Junior Lenders shall not request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in the Interim Order or this Order, unless the Prepetition Senior Agent shall theretofore have done so or consented thereto.

c.     To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests

and liens authorized or created under or in connection with the Interim Order, this Order or the Postpetition Loan Documents, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

24. <u>Default Under Other Documents</u>.  Except as otherwise expressly provided herein or in the Prepetition Intercreditor Agreement, notwithstanding anything to the contrary contained in any prepetition or postpetition agreement, contract, document, note or instrument to which the Debtor is a party or under which the Debtor is obligated or bound, any provision that restricts, conditions, prohibits, limits or impairs in any way the Debtor from granting the Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders, and the Prepetition Debt Lenders, the postpetition security interests or liens upon any of its assets, properties or other Postpetition Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of the Interim Order, this Order and Postpetition Loan Documents shall be unenforceable against the Debtor, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to such parties pursuant to the Interim Order, this Order and/or the Postpetition Loan Documents (as applicable).

25. <u>Successors and Assigns</u>.  The provisions of the Interim Order, this Order and the Postpetition Loan Documents shall, as applicable, be binding upon and inure to the benefit of the Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders, the Prepetition Debt Lenders and the Debtor and its estate, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtor or its estate, whether in the Chapter 11 Case or any Successor Case.

26. <u>Survival</u>.  The provisions of the Interim Order, this Order and any actions taken pursuant thereto: (a) shall survive the entry of any order: (i) converting the Chapter 11 Case

to a case under chapter 7 of the Bankruptcy Code; or (ii) dismissing or closing the Chapter 11 Case; and (b) shall continue in full force and effect notwithstanding the entry of any such order. Pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor hereby waives any discharge as to the Postpetition Obligations and such Postpetition Obligations shall be paid in full in cash on the effective date of any plan of reorganization confirmed in the Chapter 11 Case (if not already paid).

27.    <u>Section 364(e); Effect of Modification or Appeal</u>.  Based on the findings set forth in the Interim Order and this Order, in consideration for the continued financing provided under Postpetition Facility, the Postpetition Agent, the other Agents under the Postpetition Loan Documents, and the Postpetition Lenders are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the Postpetition Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by the Interim Order or this Order in the event that this Order or any reaffirmation, authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders, or the Prepetition Debt Lenders reaffirmed, authorized, created or granted pursuant to this Order and outstanding immediately prior to the actual receipt of written notice by the Postpetition Agent and Prepetition Debt Agents of the effective date of such stay, modification, reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations and other financial accommodations made or reaffirmed pursuant to this Order, all Postpetition Obligations incurred and uses of Cash Collateral pursuant hereto or the Interim Order prior to the actual receipt of written notice by the Postpetition Agent and the Prepetition Debt Agents of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Order and such agents (and the respective related lenders) shall be entitled to all of the rights, privileges,

remedies, protections and benefits contained or granted in section 364(e) of the Bankruptcy Code, the Postpetition Loan Documents and this Order (as applicable), including, without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection Term Loan Liens, and Adequate Protection Term Loan Claims (as applicable).

28.     Modification of Automatic Stay; Other Remedies.

a.      Subject to sub-paragraph (c) below, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Postpetition Agent and Postpetition Lenders to the extent necessary to permit them to perform in accordance with, provide any notice under, and exercise, enjoy and enforce their respective rights, benefits, privileges and remedies pursuant to the Interim Order, this Order and the other Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. Subject to sub-paragraph (c) below, regardless of any change in circumstances (whether or not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Postpetition Agent's or Postpetition Lenders' exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies as and to the extent provided in the Interim Order or this Order.

b.      Subject to sub-paragraph (c) below, the Postpetition Agent and Postpetition Lenders are hereby authorized and granted leave from the automatic stay under section 362 of the Bankruptcy Code to do the following on and after the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement (or otherwise on and after the Maturity Date), in each case without further notice, motion or application to, order of, or hearing before, this Court (except as expressly provided below):

(i)      terminate any obligation of Postpetition Agent or Postpetition Lenders to make loans or other extensions of credit under the Postpetition Loan Documents, the Interim Order or this Order;

(ii)               declare all Postpetition Obligations immediately due and payable in full in cash;

(iii)              revoke the Debtor's right, if any, under the Interim Order, this Order and/or the other Postpetition Loan Documents to use Cash Collateral (after providing three (3) business day's prior written notice to the Debtor, the Creditors' Committee, the U.S. Trustee and the Prepetition Debt Agents); and

(iv)              receive and apply proceeds of Postpetition Collateral to the Postpetition Obligations in accordance with the terms and conditions of the Interim Order, this Order and the Postpetition Loan Documents.

c.      Upon the occurrence and during the continuation of an Event of Default, or upon the occurrence of the Maturity Date, and after providing five (5) business days' prior written notice to the Debtor, the Creditors' Committee, the U.S. Trustee and the Prepetition Debt Agents, the Postpetition Agent (acting at the direction of the Majority Lenders under the Postpetition Loan Agreement) shall, unless prohibited by this Court at a hearing held during such five (5) business day period, be entitled to foreclose or otherwise enforce its respective liens on any or all of the Postpetition Collateral and/or to exercise any other default-related rights and remedies under the Postpetition Loan Documents, the Interim Order, this Order and applicable law to the extent not already permitted pursuant to the terms of this Order, all without further notice, motion or application to, hearing before, or order from this Court as the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Postpetition Agent. The Debtor acknowledges and agrees, and this Court hereby orders, that the only issue to be determined and decided at any Court hearing regarding such matters is whether an Event of Default has occurred and is continuing under the Postpetition Credit Agreement or whether the Maturity Date has occurred and notice of such hearing need only be given to the Debtor, the Creditors' Committee, the U.S. Trustee and the Prepetition Debt Agents.

29.    <u>No Waiver of Rights</u>.

a. <u>Generally</u>. Without limiting the terms and conditions of <u>paragraphs 9</u> through <u>12</u> and <u>20</u> of this Order, none of the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, or Prepetition Debt Lenders waives, and each expressly reserves, any and all claims, liens, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of their respective loan documents, the Prepetition Intercreditor Agreement, any other intercreditor or subordination agreement, the Bankruptcy Code and/or under applicable law against or with respect to the Debtor, the Loan Parties and any other Person or entity.

b. <u>Relative Priorities; Prepetition Intercreditor Agreement</u>. In determining the relative priorities, rights and remedies of the Prepetition Term Loan Agents and Prepetition Term Loan Lenders (including, without limitation, the relative priorities and rights of such parties with respect to the replacement liens and administrative expense claims granted, or amounts payable, by the Debtor under the Interim Order or this Order and the modification of the automatic stay), such priorities, rights and remedies shall, pursuant to section 510 of the Bankruptcy Code, continue to be governed by the Prepetition Intercreditor Agreement. Without limiting the terms and conditions of <u>paragraphs 9</u> through <u>12</u> and <u>20</u> of this Order, nothing in the Interim Order, this Order or the Postpetition Loan Documents shall, or shall be deemed to, alter, amend, modify, impair, diminish or otherwise affect the terms and conditions of the Prepetition Intercreditor Agreement, which terms and conditions remain in full force and effect as between or among such parties. Furthermore, pursuant to section 510 of the Bankruptcy Code, any other intercreditor or subordination agreement between and/or among the Prepetition Debt Agents, any Prepetition Debt Lender, the Debtor or other Loan Party and any other non-Debtor party thereto, and any other applicable inter-creditor or subordination provisions contained in any credit agreement, security agreement, indenture or related document, remain in full force and effect and are not amended, altered or modified by the terms of the Interim Order, this Order or the Postpetition Loan Documents.

c. **Additional Rights Preserved**. Without limiting the generality of this paragraph 29, but subject to the Prepetition Intercreditor Agreement, the Postpetition Loan Documents and the Prepetition Debt Loan Documents, the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, and Prepetition Debt Lenders may, as applicable, petition this Court for any such additional protection they may require with respect to their respective rights, liens and claims, including, without limitation, their rights to request additional adequate protection, to terminate or modify exclusivity and to modify or terminate the automatic stay. Entry of the Interim Order and this Order shall not in any way constitute agreement, consent, or acquiescence by any Person to the terms of any plan of reorganization filed in the Chapter 11 Case.

30. **Restriction on Use of Lenders' Funds**. No portion of the Postpetition Facility, the Postpetition Collateral, the Prepetition Debt Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims, actions or causes of action against any of the Postpetition Agent, Postpetition Lenders, Prepetition Debt Agents, or Prepetition Debt Lenders, including, without limitation, any action or the filing or prosecution of any pleading (i) challenging, contesting or raising any defenses or objections to the Postpetition Obligations or the Prepetition Debt Obligations (or liens securing the same), (ii) seeking or requesting, or obtaining approval for, the non-consensual use of Cash Collateral or proceeds of the Postpetition Facility or (iii) seeking or requesting, or obtaining approval for, the imposition of any non-consensual lien or claim senior to, or pari passu with, the Postpetition Liens, Super-Priority Claims, Adequate Protection Term Loan Liens, Adequate Protection Term Loan Claims, and/or Prepetition Debt Liens; provided, that no more than $100,000 in the aggregate of the proceeds of the Postpetition Facility or the Postpetition Collateral (including the Cash Collateral) may be used by the Creditors' Committee to investigate the Prepetition Debt Obligations and the Prepetition Debt Liens.

31. **Release of Claims**.

a.    The stipulations and admissions contained in <u>Paragraph D</u> of this Order, and repayment of the Prepetition Revolving Obligations, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee (and any subsequent trustee of the Debtor's estate), unless, and solely to the extent that, (i) a party in interest with standing and requisite authority has timely filed a complaint and commenced an adversary proceeding (subject to the limitations set forth in <u>paragraph 30</u> of this Order) challenging the amount, validity, or enforceability of the Prepetition Debt Obligations, or the perfection or priority of the Prepetition Debt Liens (as applicable), in each case no later than seventy-five (75) days after the Debtor files its schedules and statements of financial affairs (as such date may be extended with respect to the applicable Prepetition Debt Lenders from time to time in the sole discretion of the applicable Prepetition Debt Agent or pursuant to further order of this Court as provided below, the "**Complaint Filing Deadline**"), and (ii) this Court rules in favor of the plaintiff in any such timely and properly commenced adversary proceeding.

b.    If no such adversary proceeding is timely and properly commenced by the Complaint Filing Deadline, or to the extent such adversary proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the acknowledgments of the Debtor contained in <u>paragraph D</u> of this Order, then, without the requirement or need to file any proof of claim with respect thereto and without further notice, motion or application to, order of, or hearing before, this Court, but in all cases subject to the Prepetition Intercreditor Agreement and <u>paragraph 29</u> of this Order, the acknowledgments of the Debtor contained in <u>paragraph D</u> of this Order, and repayment of the Prepetition Revolving Obligations, shall be binding, conclusive and final on the Creditors' Committee (and any subsequent trustee of the Debtor's estate) and any other Person, entity or party-in-interest in the Chapter 11 Case and any Successor Case and (i) the

claims, liens and security interests of the Prepetition Debt Agents and the Prepetition Debt Lenders shall be deemed to be finally allowed for all purposes in the Chapter 11 Case and any Successor Case and shall not be subject to challenge by any party in interest as to validity, priority or otherwise (and the repayment of the Prepetition Revolving Obligations shall not be subject to disgorgement, reduction or other challenge (such date with respect to the Prepetition Revolving Obligations, the "**Final Revolving Allowance Date**")), and (ii) the Debtor and its estate shall be deemed to have forever released any and all claims or causes of action against the Prepetition Debt Agents and the Prepetition Debt Lenders with respect to the Prepetition Debt Loan Documents or any related transactions. Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely commenced, the stipulations contained in paragraph D hereof shall nonetheless remain binding on all parties in interest and preclusive (as provided in this paragraph 31) except to the extent that such stipulations are expressly challenged in such adversary proceeding. Except as provided below with respect to the Creditors' Committee, nothing in this Order confers or grants (or adversely affects) standing of any Person or entity (other than the Debtor and its affiliates) to file and prosecute any such claims or causes of action released in this Order.

c. The Creditors' Committee may, upon notice and further order of this Court, request and obtain one or more extensions of the Complaint Filing Deadline for "cause shown"; provided that any such request shall be made in writing and filed with this Court, and served upon counsel to the Debtors and the Prepetition Debt Agents, respectively, by no later than the expiration of the then current Complaint Filing Deadline. For the avoidance of doubt, the Creditors' Committee is hereby granted standing by this Court to file and pursue any claims and actions of the type contemplated by this paragraph 31.

32.     <u>No Liability to Third Parties</u>.  In making decisions to advance loans to the Debtor, in administering any loans, in permitting the Debtor to continue to use Cash Collateral, in approving any budget or in taking any actions permitted by the Interim Order, this Order or the Postpetition Loan Documents, as applicable, the Postpetition Agent, the Postpetition Lenders, the Prepetition Debt Agents, and the Prepetition Debt Lenders shall not (i) be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor, and/or (ii) owe any fiduciary duty to the Debtor, its respective creditors or its respective estate, and their relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership with the Debtor.

33.     <u>No Direction of Application</u>.  Notwithstanding anything to the contrary contained in the Interim Order or this Order, and regardless of the manner in which payments on account of any Postpetition Obligations or Prepetition Debt Obligations or other receipts of Cash Collateral are characterized as between the Debtor and Loan Parties, on the one hand, and the Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders and the Prepetition Debt Lenders, on the other hand, the provisions of the Postpetition Loan Documents, the Prepetition Intercreditor Agreement, and the Prepetition Debt Loan Documents shall continue to govern, as between or among the Postpetition Agent, the Prepetition Debt Agents, the Postpetition Lenders and the Prepetition Debt Lenders, the manner in which any such payments or receipts are applied, distributed or characterized.

34.     <u>Authorized Signatories</u>.  The signature of Jay Epstein or Ed Sherrick, each an officer of the Debtor (or their designee), appearing on any one or more of the Postpetition Loan Documents shall be sufficient to bind the Debtor and each other Loan Party.  No board of directors, shareholder or other approval or resolutions shall be necessary or required to consummate any of the transactions contemplated in the Interim Order or this Order.

35.     <u>Master Proof of Claim</u>.  The Prepetition Debt Agents are authorized (but not required) to file a master proof of claim against the Debtor (the "**Master Proof of Claim**") on behalf of itself and its respective Prepetition Debt Lenders, on account of their prepetition claims arising under their respective Prepetition Debt Loan Documents, and such agents and their respective counsel shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.  If a Prepetition Debt Agent so files a Master Proof of Claim, then such agent (on its behalf and on behalf of each applicable Prepetition Debt Lender), as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the aggregate amount set forth therein in each of the Chapter 11 Case and any Successor Case, and the claims of the applicable Prepetition Debt Agent and each applicable Prepetition Debt Lender, as the case may be, (and their respective successors and assigns) contained in the Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in the Chapter 11 Case in the aggregate amount set forth therein.  Subject to the Prepetition Intercreditor Agreement, each Prepetition Debt Agent shall further be authorized to amend its respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims.  Subject to the Prepetition Intercreditor Agreement, the provisions set forth in this Paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

36.     <u>Information to the Creditors' Committee</u>.  All documents, notices, reports, financial statements or information exchanged between the Debtor, on the one hand, and the Postpetition Agent, the Postpetition Lenders, the Prepetition Debt Agents or the Prepetition Debt Lenders, on the other hand, that are required to be provided in connection with the Postpetition

Facility shall be contemporaneously provided by the Debtors to counsel to the Creditors' Committee.

37.  <u>Management Fee</u>.  Nothing in this Order shall be deemed (i) to approve the payment of the Management Fee to Brant Industries, Inc.; (ii) to assume the Management Agreement of Brant Industries, Inc.; or (iii) to otherwise affect or waive any rights or claims against Brant Industries, Inc.

Dated:  March ___, 2010.

_____
Chief Judge Douglas O. Tice, Jr.
United States Bankruptcy Court

I ASK FOR THIS:

___<u>/s/ Jonathan L. Hauser</u>_____
Jonathan L. Hauser
VSB No. 18688
**TROUTMAN SANDERS LLP**
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:     (757) 687-7768
Facsimile:     (757) 687-1505

**LOCAL BANKRUPTCY RULE 9022-1(C) CERTIFICATION**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

_<u>/s/   Jonathan L. Hauser</u>_____
____

398173v1