DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, D.C. 20005-4213
Telephone: (202) 346-8000
Facsimile: (202) 346-8102
David M. Ross (VSB #42389)

- and -

1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Martin J. Bienenstock, *pro hac vice admission pending*
Timothy Q. Karcher, *pro hac vice admission pending*
Arielle Kane, *pro hac vice admission pending*

*Counsel to the Majority Second Lien Lenders*
*to White Birch Paper Company*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re: | Chapter 11 |
| BEAR ISLAND PAPER COMPANY, LLC | Case No. 10-31202 (DOT) |
| Debtor. | |

**OBJECTION OF MAJORITY SECOND LIEN LENDERS
TO THE MOTION OF BEAR ISLAND PAPER COMPANY, LLC
FOR ENTRY OF AN ORDER APPROVING SALE AND INVESTOR
<u>SOLICITATION PROCESS AND PROCEDURES RELATED THERETO</u>**

Dune Capital LP, Dune Capital International Ltd., and WTA Dune Limited (collectively, the "<u>Majority Second Lien Lenders</u>"), who hold in the aggregate 61.5% of the claims in connection with the $100,000,000 Second Lien Term Loan Agreement, respectfully submit this Objection to the Motion of Bear Island Paper Company, LLC (the "<u>Debtor</u>" or "<u>Bear Island</u>") for Entry of an Order Approving Sale and Investor Solicitation Process and Procedures Related Thereto, dated April 16, 2010 (the "<u>Motion</u>"), and respectfully state as follows:

## Preliminary Statement[1]

Pursuant to the Motion, the Debtor seeks entry of an order approving binding sale and investor solicitation procedures (the "Procedures") for a potential sale of "all or substantially all of [the WB Group's] assets (the 'Assets') under the supervision of the Court," "free of any and all Claims and Interests." The Procedures suggest that the Debtor *already has* satisfied section 363 of the Bankruptcy Code by stating that the Assets will be sold free and clear of liens. This is not true. As such, the Procedures purport to affect substantive rights of the Majority Second Lien Lenders without this Court's authorization and must be revised and/or clarified.

The law in this Circuit is clear. A Debtor may not sell assets free and clear of liens, without the secured creditor's consent, *unless* such liens are satisfied in full. Moreover, this Court has disallowed sales conducted solely for the benefit of the secured creditors.[2] The rights of creditors to object to any sale of the Assets on any grounds, including pursuant to section 363(f), must be preserved.

In addition to asserting that the sale will be free and clear, the Procedures contain 10 pages of seemingly binding and prejudicial requirements, including *inter alia*, procedures for excluding potential purchasers for the Assets from conducting due diligence. Pursuant to the so-called "Participation Requirements," "Potential Bidders" must demonstrate their ability to consummate the "sale of the Assets" before they are granted access to information about the Assets. These Procedures stack the deck against creditors, and other parties in interest, and

---

[1] Capitalized terms used but not defined in the Preliminary Statement have the meanings set forth below.

[2] The Debtor has pre-approved the credit bid of its First Lien Lenders and DIP Lenders (who also happen to be First Lien Lenders). While a credit bid is acceptable under certain circumstances, parties must have the opportunity to object to a sale to the secured creditors where there is no recovery for unsecured creditors.

ultimately chill the bidding process. The *only* requirement the Debtor should impose on prospective bidders at this phase is a willingness to enter into a confidentiality agreement.

In short, while the Debtor represents that it is not seeking "substantive" relief in the Motion, it appears that this statement is not accurate. The Procedures and the order approving the Motion must make clear that no substantive rights are being affected, and all rights are preserved. The Procedures and the Order must state clearly that nothing in the Procedures, the Order, or otherwise, shall affect the rights of secured creditors, including the Majority Second Lien Lenders, or any other party in interest from objecting to any sale pursuant to section 363 of the Bankruptcy Code, or otherwise, that attempts to sell the assets for the sole benefit of secured creditors and that does not provide all secured creditors with payment in full of the face amount of their claims.

**Background**

1. On February 24, 2010 (the "Petition Date"), the Debtor commenced a case in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On the same date, White Birch Paper Holding Company ("White Birch"), the Debtor's indirect parent, and ten Canadian subsidiaries of White Birch (together with the Debtor, the "WB Group") obtained an Initial Order under the Companies Creditors' Arrangement Act ("CCAA") from the Quebec Superior Court, District of Montreal. Six of the Canadian subsidiaries also commenced cases in this Court under chapter 15 of the Bankruptcy Code.

2. As described in the Debtor's *Motion for Entry of Interim and Final Orders (A) Authorizing Debtor to Obtain Secured Postpetition Financing on Super-Priority Priming Lien Basis, Granting Adequate Protection for Priming and Modifying the Automatic Stay, (B) Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection for Use*

3

*Thereof, (C) Authorizing Debtor to Repay Existing ABL Revolver Indebtedness Upon Interim Approval, and (D) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing* [Docket No. 26] (the "DIP Motion"), the WB Group's main prepetition debt obligations arise under the First Lien Term Loan Agreement, the Second Lien Term Loan Agreement, the Swap Agreements, and the Revolving ABL Agreement (the latter obligations were extinguished with the proceeds of the interim borrowings approved by the Court by order dated February 26, 2010 (the "Interim Order") [Docket No. 66]), (each as defined in the DIP Motion).

### The Liens

3. The Debtor is a guarantor of the WB Group's obligations to the lenders under the First Lien Term Loan Agreement (the "First Lien Lenders"). The obligations to the First Lien Lenders are secured by first priority liens and security interests in substantially all of the WB Group's assets (including assets of the Debtor) (the "Term Loan Collateral"), other than certain inventory, accounts receivable, and cash, on which the Postpetition Lenders (defined below) have a first priority lien. As of the Petition Date, approximately $428 million in principal and $9.8 million in interest remains outstanding under the First Lien Term Loan Agreement.

4. The Debtor is also a guarantor of the WB Group's obligations to the lenders under the Second Lien Term Loan Agreement (the "Second Lien Lenders"). The obligations to the Second Lien Lenders are secured by second priority liens and security interests in the Term Loan Collateral. As of the Petition Date, approximately $100 million in principal and $4 million in interest remain outstanding under this agreement.

### The DIP Financing

5. As described in the DIP Motion, a subset of the First Lien Lenders (the "Postpetition Lenders," and together with the First Lien Lenders, the "Black Diamond Entities")

NYC 711167.4

agreed to backstop a $140 million postpetition term loan facility (the "DIP Loan") pursuant to that certain Senior Secured Super-Priority Debtor-in-Possession Term Loan Credit Agreement (the "Postpetition Credit Agreement"). Amounts borrowed under the DIP Loan have super-priority status and are secured by priming liens and new liens on substantially all assets of the WB Group (collectively, the "Postpetition Collateral").

6. The Debtor furnished adequate protection to the Second Lien Lenders in the form of doubly-subordinated replacement liens in the Postpetition Collateral and an allowed super-priority administrative expense claim subordinate to that of the First Lien Lenders.[3]

## The Debtor's Procedures Affect Substantive Rights

7. The Procedures affect substantive rights of the Majority Second Lien Lenders and other parties in interest in several ways. For example, the Procedures (i) offer the sale of all or substantially all of the Debtor's assets "free and clear" of liens without the consent of secured creditors and without any requirement that secured creditors' claims be satisfied in full; (ii) contain procedures for excluding potential bidders from receiving information concerning the sale; and (iii) pre-approves the "credit bid" of the Black Diamond Entities, but does not similarly preserve the rights of the Debtor's other secured creditors.

8. The Debtor relies solely on section 105(a) of the Bankruptcy Code for the relief requested in the Motion. It is well established, however, that section 105(a) cannot be used, on its own, to affect substantive rights. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2005) ("[T]he equitable powers authorized by § 105(a) are not without limitation, and courts

---

[3] The Majority Second Lien Lenders objected to the adequacy of the protection granted to the Majority Second Lien Lenders in the DIP Motion and continue to maintain that given, among other things, the control over these proceedings apparently exercised by the Black Diamond Entities, the interests of the Majority Second Lien Lenders are not being adequately protected.

have cautioned that this section does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." (quotations omitted)).

9. For example, the Debtor has not cited section 363 of the Bankruptcy Code, which governs the sale of estate assets. As set forth in the Procedures, the Debtor proposes to sell the Debtor's assets free and clear of the interests of the Majority Second Lien Lenders and other secured parties. (Procedures ¶ 6.) Section 363(f) of the Bankruptcy Code provides that a debtor may sell property "free and clear of any interest in such property of an entity other than the estate," only if—

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

10. The Debtor has not satisfied section 363 of the Bankruptcy Code with respect to any the liens, including the liens of the Majority Second Lien Lenders, for the following reasons.

11. First, there is no applicable nonbankruptcy law that would permit the sale free and clear of interests of secured creditors.

12. Second, there is no indication that the secured creditors, including the Majority Second Lien Lenders, have consented to any sale that does not satisfy, in full, the aggregate value of all liens on the assets. With respect to the Majority Second Lien Lenders, the Debtor

will likely raise Section 6.1 of the Second Amended and Restated Intercreditor Agreement (the "Intercreditor Agreement"), which provides, in part, that:

> The Second Lien Collateral Agent on behalf of the Second Lien Claimholders, agrees that it will not raise any objection or oppose a motion to sell or otherwise dispose of any Collateral free and clear of its Liens or other claims under section 363 of the Bankruptcy Code or under any similar provision of any other Bankruptcy Law if the requisite First Lien Lenders have consented to such sale or disposition of such assets, and such motion does not impair the rights of the Second Lien Claimholders under Section 363(k) of the Bankruptcy Code….

Intercreditor Agreement § 6.1.

13. This provision of the Intercreditor Agreement is inapplicable to the instant Motion as there is no indication, suggestion, or statement that the "requisite First Lien Lenders have consented" to any sale of the Debtor's assets.[4] Moreover, the Motion is not a section 363 Motion to sell or otherwise dispose of collateral. Should the Debtor attempt to raise this provision of the Intercreditor Agreement in connection with any motion pursuant to section 363 of the Bankruptcy Code, or otherwise, to sell assets without satisfying secured claims in full, the Majority Second Lien Lenders reserve their rights to assert that, *inter alia*, section 8.2 of the Intercreditor Agreement provides for the severability of "prohibited and unenforceable" provisions, including any provision that would authorize the sale of an asset solely for the benefit of a secured creditor, such as a credit bid by the Black Diamond Entities where no other bids were made, in violation of the Bankruptcy Code.

14. Section 363(f)(3) of the Bankruptcy Code prevents a trustee from selling property of the estate when the aggregate value of the liens on the property exceeds its sale price. *See* 11

---

[4] Indeed, the Debtor makes no mention of having secured the consent of *any* party with liens on the Assets to a sale "free and clear" of such interests. Moreover, it appears that the "requisite" First Lien Lenders requires all such lenders to consent, not just those that are party to the DIP.

U.S.C. § 363(f)(3). Here, the Debtor has provided no valuation for the assets to be marketed and sold pursuant to the Procedures. It is well settled that, absent special circumstances, the Court should not sanction a sale of property of the estate that benefits only secured creditors. *See In re Silver*, 338 B.R. 277, 282 (Bankr. E.D. Va. 2004); *In re Oglesby*, 196 B.R. 938 (Bankr. E.D. Va. 1996) (ordering restructuring of a sale in which aggregate value of interests, $1,337,280.44, exceeded property's sale price, $1,250,000.00); *King v. Bd. of Supervisors of Fairfax County (In re A.G. Van Metre, Jr., Inc.)*, 155 B.R. 118 (Bankr. E.D. Va. 1993) (reaffirming order authorizing sale of property in which sale price, $785,000.00, exceeded aggregate value of interests, $718,000.00); *see also In re Collins*, 180 B.R. 447, 451 (Bankr. E.D. Va. 1995) (relevant inquiry for special circumstances includes "what chapter the case is filed under, whether this is a major or sole asset of the estate, whether the proposed sale is a piecemeal substitution for a plan of reorganization, and the overall benefit to the estate."). No such special circumstances are present here.

15. Finally, for the reasons espoused by this Court in *In re Silver*, the Majority Second Lien Lenders (and other secured creditors) cannot be compelled pursuant to Bankruptcy Code section 363(f)(5), in a legal or equitable proceeding, to accept a money satisfaction of such interest unless they receive full payment. *See Richardson v. Pitt County (In re Stroud Wholesale, Inc.)*, 47 B.R. 999 (E.D.N.C. 1985), *aff'd*, 983 F.2d 1057 (4th Cir. 1993) (A trustee cannot sell property under authority of § 363(f)(5) if the interests to which the property is subject cannot be satisfied fully in a compelled legal or equitable proceeding). This Court, in *In re Silver*, agreed with the reasoning of *Stroud*, and interpreted section 363(f)(5) as requiring *actual full payment* of the interests in the subject property. *See In re Silver*, 338 B.R. at 282. The Majority Second Lien Lenders and the Debtor's other creditors are entitled to nothing less.

**Conclusion**

Because the secured creditors have not consented to the sale of the Assets free and clear of their interests, and the Debtor has made no showing that it can sell free and clear of all liens on the Assets to be sold, the Motion should be denied until the Procedures are clarified. The Procedures should not promise what the Debtor cannot deliver.

Moreover, the Procedures should not chill participation in the bidding by excluding potential bidders before they know the identity of the Assets. In addition, the Procedures must make clear that the rights of all other entities with liens on the Assets to credit bid are preserved and, while the Black Diamond Entities may credit bid their claims, they cannot purchase the assets free and clear of all interests in the assets without satisfying all lienholders in full, or otherwise satisfying the requirements of the Bankruptcy Code.

In sum, the Procedures and the order approving the Motion must make clear that no substantive rights are being affected, and all rights are preserved. It can do so by including the provision that nothing in the Procedures, the Order, or otherwise, shall affect the rights of secured creditors, including the Majority Second Lien Lenders, or any other party in interest from objecting to any sale pursuant to section 363 of the Bankruptcy Code, or otherwise, that attempts to sell the Assets free and clear of all liens, claims, and encumbrances, that does not

NYC 711167.4

provide all secured creditors with payment in full of the face amount of their claims, and otherwise complies with the Bankruptcy Code.

Dated: April 23, 2010  
       Washington, D.C.

Respectfully Submitted,

/s/ David M. Ross  
David M. Ross (VSB #42389)  
DEWEY & LEBOEUF LLP  
1101 New York Avenue, NW  
Washington, D.C. 20005-4213  
Telephone: (202) 346-8000  
Facsimile: (202) 346-8102

- and -

1301 Avenue of the Americas  
New York, New York 10019  
Telephone: (212) 259-8000  
Facsimile: (212) 259-6333  
Martin J. Bienenstock, *pro hac vice admission pending*  
Timothy Q. Karcher, *pro hac vice admission pending*  
Arielle Kane, *pro hac vice admission pending*

*Counsel to the Majority Second Lien Lenders to White Birch Paper Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2010, a copy of the foregoing Objection of Majority Second Lien Lenders to the motion of Bear Island Paper Company, LLC for Entry of an Order Approving Sale and Investor Solicitation Process and Procedures Related Thereto was served by U.S. Mail, First Class, postage prepaid, or by electronic means through the Court's ECF system or email on the following, constituting all necessary parties:

Jonathan L. Hauser, Esq.
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
P.O. Box 61185
Virginia Beach, VA 23466-1185
jonathan.hauser@troutmansanders.com
*Co-Counsel to Debtor Bear Island Paper Company, LLC*

Heather Hays Lockerman, Esq.
Troutman Sanders LLP
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
heather.lockerman@troutmansanders.com
*Co-Counsel to Debtor Bear Island Paper Company, LLC*

Christopher J. Marcus, Esq.
Richard M. Cieri, Esq.
Michael A. Cohen, Esq.
Adam Goldstein, Esq.
Richard M. Goldman, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
christopher.marcus@kirkland.com
richard.cieri@kirkland.com
michael.a.cohen@kirkland.com
adam.goldstein@kirkland.com
richard.goldman@kirkland.com
*Co-Counsel to Debtor Bear Island Paper Company, LLC*

Robert B. Van Arsdale, Esq.
W. Clarkson McDow, Jr., Esq.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov
USTPRegion04.RH.ECF@usdoj.gov

*United States Trustee*

Edward D. Sherrick
Brant Industries
80 Field Point Road, 3rd Floor
Greenwich, CT 06830
*Debtor Designee*

Jason William Harbour, Esq.
Tyler P. Brown, Esq.
Benjamin C. Ackerly, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 E. Byrd St.
Richmond, VA 23219
jharbour@hunton.com
tpbrown@hunton.com
backerly@hunton.com
*Counsel to the Official Committee of Unsecured Creditors of Bear Island Paper Co.*

David Heller, Esq.
Keith A. Simon, Esq.
Adam J. Goldberg, Esq.
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
david.heller@lw.com
keith.simon@lw.com
adam.goldberg@lw.com
*Co-Counsel to Credit Suisse AG*

Robert H. Chappell, III, Esq.
Neil E. McCullagh, Esq.
Jennifer J. West, Esq.
Erin E. Kessel, Esq.
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
rchappell@spottsfain.com
nmccullagh@spottsfain.com
jwest@spottsfain.com
ekessel@spottsfain.com
*Co-Counsel to Credit Suisse AG*

Peter G. Zemanian, Esq.
Zemanian Law Group

150 Boush Street, Suite 600
Norfolk, Virginia 23510
pete@zemanianlaw.com
*Counsel to Suffolk Sales and Service Corporation*

Dion W. Hayes, Esq.
Lori M. Scott, Esq.
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
lscott@mcguirewoods.com
*Counsel to The Toronto-Dominion Bank*

Rebecca B. Randolph, Esq.
Assistant County Attorney
Hanover County
Post Office Box 470
7516 County Complex Road
Hanover, Virginia 23069-0470
rbrandolph@co.hanover.va.us
*Counsel to Hanover County Attorney's Office*

Russell R. Johnson III, Esq.
John M. Craig, Esq.
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, VA 23103
russj4478@aol.com
johncraigg@aol.com
*Counsel to Rappahannock Electric Cooperative*

Shari D. Williams, Esq.
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW
Washington, D.C. 20005-4026
williams.shari@pbgc.gov
efile@pbgc.gov
*Counsel to Pension Benefit Guaranty Corporation*

Peter J. Barrett, Esq.
Matthew J. Kurz, Esq.
Kutak Rock LLP
1111 East Main Street, Suite 800
Richmond, VA 23219-3500

13

NYC 711167.4

peter.barrett@kutakrock.com
matthew.kurz@kutakrock.com
*Counsel to WM Recycle America, LLC*

Jay Epstein
White Birch Paper Company
80 Field Point Road
Greenwich, Connecticut 06830
jepstein@whitebirchpaper.com

Angela L. Batterson, Esq.
King & Spalding
1185 Avenue of Americas
New York, NY 10036-4003
abatterson@kslaw.com

Benjamin B. Iselin, Esq.
McGuire Woods LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105-0106
biselin@mcguirewoods.com

Scott D. Talmadge, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
stalmadge@kayescholer.com

/s/ David M. Ross
David M. Ross (VSB #42389)
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, D.C. 20005-4213
Telephone: (202) 346-8000
Facsimile: (202) 346-8102
Email: dross@dl.com