| | |
|---|---|
| Robert S. Westermann (VSB No. 43294) | P. Bradley O'Neill, Esq. |
| Sheila deLa Cruz (VSB No. 65395) | Douglas Mannal, Esq. |
| Hirschler Fleischer, P.C. | Jennifer Sharret, Esq. |
| The Edgeworth Building | Kramer Levin Naftalis & Frankel LLP |
| 2100 East Cary Street | 1177 Avenue of the Americas |
| Richmond, Virginia 23223 | New York, New York 10036 |
| P.O. Box 500 | Phone: (212) 715-9100 |
| Richmond, Virginia 23218-0500 | Facsimile: (212) 715-8000 |
| Phone: (804) 771-9500 | Email: boneill@kramerlevin.com |
| Facsimile: (804) 644-0957 | dmannal@kramerlevin.com |
| Email: rwestermann@hf-law.com | jsharret@kramerlevin.com |
| sdelacruz@hf-law.com | |

*Counsel for Sixth Ave. Investment Co., LLC*

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHDMOND DIVISION**

---

| | | |
|---|---|---|
| **In re:** | : | Chapter 11 |
| | : | |
| **BEAR ISLAND PAPER COMPANY, L.L.C.,** | : | Case No. 10-31202 (DOT) |
| | : | |
| Debtor. | : | |
| | : | |

---

**OBJECTION OF SIXTH AVE. INVESTMENT CO., LLC TO MOTION OF BEAR ISLAND PAPER COMPANY, L.L.C. FOR ENTRY OF ORDERS APPROVING THE (A) FORM OF THE SALE AGREEMENT, (B) BIDDING PROCEDURES, (C) FORM AND MANNER OF NOTICE OF THE AUCTION AND SALE HEARING, (D) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (E) SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (F) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES**

Sixth Ave. Investment Co., LLC ("Sixth Ave."),[1] by and through its undersigned counsel, submits this objection (the "Objection") to the Motion of Bear Island Paper Company, L.L.C. (the "Debtor") for entry of orders approving the (a) form of the sale agreement, (b) bidding procedures, (c) form and manner of notice of the auction and sale hearing, (d) procedures for the assumption and assignment of certain executory contracts and unexpired leases, (e) sale of assets

---

[1] The members of Sixth Ave. Investment Co., LLC are: Blue Mountain Capital Management, LLC, Lombard General Insurance Company of Canada, Macquarie Bank Limited, MFP Partners, L.P., and Steelhead Partners, LLC.

free and clear of liens, claims, encumbrances and interests and (f) assumption and assignment of certain executory contracts and leases (the "Bidding Procedures Motion").[2]

## Preliminary Statement

The proposed Bidding Procedures and sale agreement with BD White Birch Investment, LLC only serves to line the pockets of the proposed stalking horse bidder, without providing any benefit to the estate. Although the proposed stalking horse is BD White Birch Investment, LLC (whose members are the current DIP Lenders), who did its due diligence on the company long ago and has been receiving detailed information since it made its investment, the proposed Bidding Procedures contemplate awarding it $2 million as a breakup fee and, inexplicably, $3 million as an expense reimbursement. These fees would be heaped on top of an additional $5.6 million fee to the proposed stalking horse that is buried in the DIP Credit Agreement and not disclosed in the Bidding Procedures Motion. Simply put, there is no valid commercial reason to award BD White Birch Investment, LLC such outlandish fees in connection with its bid.

Sixth Ave. is prepared to serve as a stalking horse and enter into substantially the same sale agreement on significantly better terms for the estate (including increasing the cash component of the purchase price to $100 million, *without* requesting a breakup fee). In addition, because the DIP Credit Agreement sets unattainable timing milestones and seeks to award yet another fee to the DIP Lenders if they are not the successful bidders, Sixth Ave. is also prepared to provide a replacement DIP Loan on more favorable terms (including reduced pricing and extended maturity dates to accommodate a going-concern sale). The Court should not allow BD White Birch Investment, LLC to hijack the sale process and receive unjustified exorbitant fees that provide no additional value to the sale process or the estate.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Motion.

## Background

1. On August 10, 2010, the Debtor filed the Bidding Procedures Motion, seeking approval of, among other things, a sale agreement between the Sellers and BD White Birch Investment, LLC.

2. BD White Birch Investment, LLC is comprised of the following entities: Black Diamond Capital Management, LLC and its affiliates ("Black Diamond"), Credit Suisse Loan Funding LLC and its affiliates ("Credit Suisse"), and Caspian Capital Advisors, LLC and its affiliates ("Caspian", collectively with Black Diamond and Credit Suisse, the "Proposed Stalking Horse Group"). These entities hold approximately 65.5% of the First Lien Term Loan debt, secured by a lien on certain fixed assets. In addition, as the only named lenders to the DIP Credit Agreement, the Proposed Stalking Horse Group has a blanket lien on substantially all of the Debtor's assets.

3. On August 10, 2010, the Canadian Monitor filed a report (the "Canadian Monitor Report", attached hereto as Exhibit A) detailing its assessment of the sale agreement with the Proposed Stalking Horse Group. In the report, the Canadian Monitor asserts that the purchase price under the current sale agreement represents only **liquidation value**. See Canadian Monitor Report, at ¶ 34.

4. The Bidding Procedures Motion seeks to award the Proposed Stalking Horse Group $5 million to serve as stalking horse, in the form of a $2 million Breakup Fee if they are not deemed the winning bidder and a $3 million Expense Reimbursement as a super priority administrative expense. While the Bidding Procedures Motion inexplicably fails to disclose it, the members of the Proposed Stalking Horse Group (in their capacity as DIP Lenders) are also entitled to a substantial second fee, buried in the text of the DIP Credit Agreement. In particular, the Proposed Stalking Horse Group will *also* receive an additional $5.6 million "Prepayment Fee" if they are not the winning bidder. This multi-million dollar Prepayment Fee will only be waived if

the DIP obligations are paid in full upon the closing of a sale of substantially all the Debtor's assets and <u>if</u> the sale is approved by 2/3 of the Prepetition Lenders under the First Lien Term Loan Credit Agreement. <u>See</u> Section 2.4(d) of the DIP Credit Agreement. But, the Proposed Stalking Horse Group (now in their capacity as Prepetition Lenders) controls 2/3 of the First Lien Term Loan debt. If they are not the winning bidder, they can thus trigger the Prepayment Fee in their discretion.[3] As such, the Proposed Stalking Horse Group members are effectively asking for a $10.6 million fee (almost 12% of the cash component of their bid) in the event they are not the successful bidder.

5. On August 26, 2010, Sixth Ave. submitted a proposal to the Debtor's management (attached hereto as <u>Exhibit B</u>) to serve as an actual stalking horse bidder and detailing the terms of a higher purchase price without a Breakup Fee.

**The Terms of the Bidding Procedures Should Be Modified**

*The Proposed Stalking Horse Group is Not Entitled to Stalking Horse Protections*

6. The Debtor has failed to demonstrate that the Proposed Stalking Horse Group is entitled to the requested stalking horse bid protections. A breakup fee must satisfy the § 503(b) administrative expense standard and be "actually necessary to preserve the value of the estate." <u>Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Environmental Energy, Inc.)</u>, 181 F.3d 527, 535 (3d Cir. 1999); <u>In re Tropea</u>, 352 B.R. 766, 768 (Bankr. N.D. W. Va. 2006). Courts look to a variety of factors, including whether the fee hampers or encourages competitive bidding and whether the fee correlates with a maximization of value to the estate. <u>In re O'Brien</u>, 181 F.3d at 536. Here, the Breakup Fee and Expense Reimbursement (the "<u>Stalking Horse Protections</u>") simply put more money in the Proposed Stalking Horse Group's pockets without any value to the estate.

---

[3] This Prepayment Fee is triggered notwithstanding that a successful sale to Sixth Ave. would generate sufficient cash proceeds to pay down the DIP Loan in full. Sixth Ave. believes, among other things, that such Prepayment Fee is a disguised break-up fee proposed in bad faith and reserves its right to argue that the Prepayment Fee should not be paid out of the proceeds of the sale. The Bidding Procedures currently state that the Seller cannot select a bid as the Winning Bid unless such bid provides for the payment in

7. While a break-up fee is justified when it "encourages a reluctant prospective bidder to perform its due diligence and make the first bid, thereby opening a vigorous auction," In re On-Site Sourcing, Inc., 412 B.R. 817, 822 n.5 (Bankr. E.D. Va. 2009), that patently is not the case here. The proposed Breakup Fee did not induce a bid from the Proposed Stalking Horse Group that provided any additional value to the estate. In their capacity as DIP Lenders, the members of the Proposed Stalking Horse Group will simply deduct the amounts owed to them under the DIP Loan from the $90 million cash purchase price. See Section 2.2.1 of the Sale Agreement. As set forth in the Canadian Monitor's Report, the proposed sale agreement is only providing liquidation value for the current assets. The members of the Proposed Stalking Horse Group are not entitled to a Breakup Fee for agreeing to a distribution they would have otherwise received if there was no sale or auction. In addition, both the Breakup Fee and Expense Reimbursement are unjustified here where the members of the Proposed Stalking Horse Group were not required to conduct additional due diligence to formulate their bid, having already received reports on the company in their capacity as DIP Lenders since the inception of the case.

8. Courts in similar situations have declined to approve stalking horse protections. For example, in On-Site Sourcing, the DIP lender and sole pre-petition secured creditor sought to serve as the stalking horse bidder. The Court noted that the stalking horse had made its decision to purchase the company when it purchased the bank loan and pre-petition debt and needed no other incentive to open the bidding. On-Site Sourcing, 412 B.R. at 822 n.5. On this basis, the court struck the breakup fee from its bidding procedures order. Id. at 830.

*Sixth Ave. Should be the Stalking Horse*

9. In stark contrast to the proposed stalking horse agreement, Sixth Ave. is prepared to serve as the stalking horse bidder and increase the floor cash purchase price by $10 million beyond the present bid. In addition, Sixth Ave. is not seeking any breakup fee and only

---

full in cash all obligations under the DIP Credit Agreement. The Bidding Procedures should be clarified to carve-out payment of the Prepayment Fee from this condition.

5

asks for a minimal Expense Reimbursement of $1.5 million. This alternate sale proposal will provide a greater recovery to the Debtor's creditors while removing impediments created by the current stalking horse bid.

10. The Debtor should not be authorized to enter into an abusive stalking horse agreement forced upon them by the DIP Lenders who have a stranglehold over the bankruptcy process. The Debtor has already defaulted on the sale milestones laid out in the DIP Credit Agreement. If they are not selected as either the stalking horse bidder or the successful bidder, the members of the Proposed Stalking Horse Group are unlikely to continue waiving the existing default, thus requiring the company to obtain an alternative source of funding. As set forth in Sixth Ave.'s letter to management, Sixth Ave. is ready, willing, and able to provide alternate financing if the DIP is in default.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**Conclusion**

For the reasons set forth herein, Sixth Ave. respectfully requests that the Court: (i) deny the Bidding Procedures Motion to the extent it provides Stalking Horse Protections to BD White Birch Investment, LLC, or approves BD White Birch Investment, LLC as the Stalking Horse Bidder; (ii) approve a modified Bidding Procedures Order with Sixth Ave. as the Stalking Horse Bidder; (iii) to the extent necessary, approve Sixth Ave. as replacement DIP Lenders; and (iv) grant any other relief appropriate.

Dated: August 27, 2010                                         SIXTH AVE. INVESTMENT CO., LLC

                                                               By:   /s/   Robert S. Westermann
                                                                             Counsel

Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957
Email:  rwestermann@hf-law.com
        sdelacruz@hf-law.com

AND

P. Bradley O'Neill, Esq.
Douglas Mannal, Esq.
Jennifer Sharret, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Phone: (212) 715-9100
Facsimile: (212) 715-8000
Email:  poneill@kramerlevin.com
        dmannal@kramerlevin.com
        jsharret@kramerlevin.com

*Counsel for Sixth Ave. Investment Co., LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2010, a true and complete copy of the foregoing Objection was filed and served electronically using the Bankruptcy Court's ECF System and was sent by first class mail, postage prepaid, to the parties below at the addresses indicated:

Christopher J. Marcus, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Counsel for the Debtor

Jonathan L. Hauser, Esq.
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Counsel for the Debtor

Kimberly A. deBeers, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Counsel for the Proposed Stalking Horse

Keith A. Simon, Esq.
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Counsel for the Post-Petition Agent

Tyler P. Brown, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Counsel for the Official Committee of Unsecured Creditors

Robert B. VanArsdale, Esq.
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219

    /s/ Robert S. Westermann
    Counsel