Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
Telephone:     (757) 687-7768
Facsimile:     (757) 687-1505

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Attorneys for the Debtor and
Debtor in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | Case No. 10-31202 (DOT) |
| Debtor. | |

## BEAR ISLAND PAPER COMPANY, L.L.C.'S SUPPLEMENT TO THE SALE MOTION

**PLEASE TAKE NOTICE THAT** on August 10, 2010, Bear Island Paper Company, L.L.C., the above-captioned debtor and debtor in possession ("Bear Island" or the "Debtor"), in connection with the proposed sale of substantially all the WB Group's[2] assets (the "Assets") filed the *Motion of Bear Island Paper Company, L.L.C. for Entry of Orders Approving the (A) Form of the Sale Agreement, (B) Bidding Procedures, (C) Form and Manner of Notice of the Auction and Sale Hearing, (D) Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and (F) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 403] (the "Sale Motion").

**PLEASE TAKE FURTHER NOTICE THAT**, on September 21, 2010, Bear Island, together with the WB Group, commenced an auction (the "Auction") in accordance with the terms and conditions of, and in compliance with, the procedures (the "Bidding Procedures")

---

[1] The last four digits of the Debtor's federal tax identification number are 0914. The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2] The WB Group is comprised of (a) White Birch Paper Company, (b) Stadacona General Partner Inc., (c) Stadacona Limited Partnership, (d) F.F. Soucy General Partner Inc., (e) Arrimage De Gros Cacouna Inc., (f) Papier Masson Ltee, (g) F.F. Soucy Limited Partnership, (h) F.F. Soucy Inc. & Partners, Limited Partnership and (i) Bear Island (collectively, the "Sellers").

established pursuant to that certain *Order Approving (A) the Form of the Sale Agreement, (B) the Bidding Procedures, (C) the Sale Notice and (D) the Assumption Procedures and Assumption Notice* [Docket No. 469] (the "Bidding Procedures Order"), entered on September 1, 2010 by the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (this "Court").

**PLEASE TAKE FURTHER NOTICE THAT**, on September 21, 2010, the Debtor closed the Auction after determining, in its reasonable business judgment and upon consultation with its advisors, that BD White Birch Investment LLC, in accordance with the terms and conditions of, and in compliance with, the Bidding Procedures, offered the highest and best bid for the Assets (the "Winning Bid"). Attached hereto as **Exhibit A** is the proposed asset sale agreement (the "ASA"), including all amendments thereto, which collectively constitute the terms of the Winning Bid. Additionally, the following chart highlights the materials terms of the Winning Bid and offers a comparison against the terms presented in the form of the sale agreement approved pursuant to the Bidding Procedures Order (the "Stalking Horse Bid").[3]

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Sellers** | White Birch Paper Company, Stadacona General Partner Inc., Stadacona L.P., F.F. Soucy General Partner Inc., F.F. Soucy, Inc. & Partners, Limited Partnership, F.F. Soucy L.P., Arrimage de Gros Cacouna Inc., Papier Masson Ltée and Bear Island Paper Company, L.L.C. (collectively, the "Sellers") | The Winning Bid did not amend this material term. |
| **Purchaser** | BD White Birch Investment LLC (the "Purchaser") | The Winning Bid did not amend this material term. |

---

[3] The descriptions contained in the chart are intended as a summary and are qualified in their entirety by the terms contained in the Winning Bid as set forth on **Exhibit A** attached hereto. The underlined portions contained in the summary are solely intended to highlight the provisions that have been revised pursuant to the Winning Bid.

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Purchase Price**<br>§ 2.2.1 | In consideration for the sale of the Assets, the Purchaser shall (a) assume from the Sellers and become obligated to pay, perform and discharge the Assumed Liabilities, (b) pay to the Sellers $90,000,000.00 in cash, (c) pay the Reserve Payment Amount, (d) pay all requisite filing fees with respect to any filing or application of obtaining Regulatory Approvals and (e) deliver the Wind-Down Amount. | In consideration for the sale of the Assets, the Purchaser shall <u>(a) cause the Majority Lenders under the First Lien Credit Agreement to direct the Agents to credit bid the amount of principal due under the Loans, due under the First Lien Credit Agreement and the principal amount due to all Qualified Counterparties by $78,000,000, solely with respect to the Assets located in Canada and pledged as security under the First Lien Credit Agreement</u> (b) assume from the Sellers and become obligated to pay, perform and discharge the Assumed Liabilities, (c) pay to the Sellers $90,000,000.00 in cash, (d) pay the Reserve Payment Amount, (e) <u>pay the Fixed Asset Cash Amount,</u> (f) pay all requisite filing fees with respect to any filing or application of obtaining Regulatory Approvals and (g) deliver the Wind-Down Amount. |

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Assets to be Purchased**<br><br>§ 2.1.1 | At the closing, the Purchaser will acquire all of the Assets which include, among others: (i) all cash and cash equivalents; (ii) accounts receivable, trade accounts, credit receivables, notes receivable, book debts and other debts due or accruing due to any Seller as of the Closing; (iii) the Owned Inventory; (iv) the Owned Equipment; (v) the Owned Real Property; (vi) the Assigned Contracts; (vii) the Transferred Intellectual Property; (viii) the Consents of Government Entities to the extent transferable at Law; (ix) all Products, including all products in development by Sellers; (x) all pre-paid expenses of the Business; (xi) all Purchased Deposits; (xii) all goodwill associated with the Business or the Assets; (xiii) certain equity interests; (xiv) all membership interests in SP Newsprint Holdings LLC held by Sellers; (xv) with respect to the U.S. Debtors; (xvi) all rights to Tax refunds, credits or similar benefits relating the to the Assets of the Business; (xvii) all of the rights and claims of the U.S. Debtor available to the U.S. Debtor under the U.S. Bankruptcy Code, of whatever kind or nature, as set forth in sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the U.S. Bankruptcy Code with respect to trade obligations paid prior to the Petition Date, and any related claims and actions arising under such sections by operation of Law or otherwise, including any and all proceeds of the foregoing (such rights and claims not to be prosecuted by the Purchaser or any other entity); and (xviii) all other assets of the Sellers not specifically included in the definition of Excluded Assets pursuant to section 2.1.2 of the Agreement. | The Winning Bid did not amend this material term. |

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Excluded Assets**<br><br>§ 2.1.2 | Sellers shall retain their respective right, title and interest in and to certain assets, including, among others: (i) the Seller Employee Plan, except with respect to the Transferred Employee Plan; (ii) any rights under any Contract or Lease other than the Assigned Contracts; (iii) rights and claims of the Sellers against any director, officer or shareholder of the Sellers or Affiliates of the Canadian Debtors or Bear Island; (iv) all intercompany rights and claims between any Sellers or any other Canadian Debtor; (v) all rights under sections 544 through 551 of the Bankruptcy Code and equivalent rights and claims under the CCAA or other Laws; and (vi) all Tax Refunds or similar benefits of the Canadian Debtors<br><br>At any time at least five (5) Business Days prior to the Closing, the Purchaser, by written notice to Sellers, may exclude any Contracts or Leased Real Property and such shall be Excluded Assets under the Agreement. At any time at least three (3) Business Days prior to the date of the Auction, Purchaser may, in its discretion by written notice to Sellers, designate any of the Assets as additional Excluded Assets; <u>provided, however</u>, Purchaser may designate any Owned Real Property as an Excluded Asset at any time at least five (5) Business Days prior to the Closing. There shall be no reduction in the Purchase Price if Purchaser elects to designate any Assets as Excluded Assets. | The Winning Bid amended this material term to reflect the inclusion of "trade payables" in the definition of Assets to be Purchased (§2.1.1) described above. |

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Assumed Liabilities**<br><br>§ 2.1.3 | On the terms and subject to the conditions set forth in the Agreement, at the Closing, the Purchaser shall, and shall cause the relevant Designated Purchasers to, assume and become responsible for, and perform, discharge and pay when due, the Assumed Liabilities, as described in section 2.1.3 of the Agreement, which include, among others: (i) all Liabilities of the Sellers with respect to all trade obligations of the Sellers arising in the Ordinary Course on or after the Petition Date which would be the type of trade obligations entitled to administrative expense priority pursuant to Section 503(b) of the U.S. Bankruptcy Code and existing immediately prior to the Closing that would be included in the line item "Accounts Payable and Accrued Liabilities" in a consolidated balance sheet of the Business (as defined in the Agreement, the "Assumed Trade Payables"); (ii) all Liabilities of the Sellers under the Assigned Contracts arising after the Closing and any Cure Costs payable pursuant to section 2.1.6 of the Agreement in an amount not to exceed the Cure Cost Cap, and Seller's shall pay overage of any such amount; (iii) tax liabilities pursuant to Article VI; (iv) capital leases not to exceed $1,600,000; (v) liabilities under any Transferred Employee Plan; (vi) the Other Trade Payables, (vii) accrued and unpaid wages of U.S. Employees that are priority claims and administrative expenses (viii) the allowed administrative expense claims of the U.S. Debtors pursuant to section 503(b)(9) of the Bankruptcy Code from the list of potential claims set forth on 2.1.3(a)(ix) of the Sellers Disclosure Letter.<br><br>The Sellers and Purchaser agree that the Purchaser shall be responsible for all Liabilities with respect to the post-Closing operation or ownership of the Assets. | The Winning Bid did not amend this material term. |

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Closing**<br><br>§ 2.3 | The Closing shall take place no later than two (2) Business Days after the day upon which all of the Closing Conditions set forth under Article VIII of the Agreement have been satisfied or waived, or on such date and time mutually agreed upon by the Purchaser and the Sellers; provided, however, the Closing Date be no later than November 19, 2010. | The Winning Bid modified the Stalking Horse Bid to include the following provision:<br><br>"The Purchaser shall deliver to the Monitor, in the case of the Canadian Debtors, and the Bear Island Estate, in the case of the U.S. Debtor, as distribution agents for the Sellers, (i) an amount equal to the Cash Component (minus amounts deemed paid pursuant to Section 2.2.1 and the Deposit which shall be disbursed to the Sellers pursuant to the terms of the Deposit Escrow Agreement) by wire transfer in immediately available funds to accounts designated at least two (2) Business Days prior to the Closing Date by the Sellers in a written notice to the Purchaser; provided that the Wind-Down Amount shall be delivered to and held in trust by the Monitor and the Bear Island Estate, as applicable and (ii) evidence, in form and substance reasonably satisfactory to Sellers, that the amount of principal due under the Loans due under the First Lien Credit Agreement and the principal amount due to all Qualified Counterparties under the Specified Hedge Agreements as specified in paragraph D(a)(3)(iv) of the DIP Order have been credited by $78,000,000;" |

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Fixed Asset Cash Amount**<br><br>§ 5.22 | The Stalking Horse Bid did not contain this provision. | "The Fixed Asset Cash Amount shall be first allocated to the Owned Real Property to which the claims comprising such amount relate and be used to satisfy such claim, if determined payable, in accordance herewith. Such claims shall be paid to the extent the Canadian Court finally determines by Closing that all or a portion of such claims rank senior in priority to the claims of the lenders under the First Lien Credit Agreement. If any claim is unresolved at Closing, such Fixed Asset Cash Amount shall be deposited into escrow pending resolution thereof. To the extent that (a) any portion of the Fixed Asset Cash Amount is determined not to be senior in priority to the claims of the lenders under the First Lien Credit Agreement or (b) it is finally determined that a claimant is entitled to a recovery of less than the full amount of such claim, such portion of the Fixed Asset Cash Amount shall be disbursed from the escrow to the Sellers as part of the Cash Component hereunder."<br><br>The Winning Bid defines "Fixed Asset Cash Amount" as "the amount of: (a) any claim in favor of KSH Solutions Inc. in connection with the Superior Court of Quebec file numbers 200-17-007138-068 and 200-17-007328-065 not to exceed CDN$2,727,585; (b) any claim in favor of Service d'Impartition Industriel Inc. in connection with its notice of exercise of a hypothecary right against certain Owned Real Property to secure sums allegedly due for work on immovables located on such Owned Real Property not to exceed CDN$1,748,857; and (c) for any excess amounts, the U.S. dollar amount equal to the amount, if any, by which $4,500,000 U.S. dollars exceeds the U.S. dollar equivalent of the amounts in (a) and (b), provided that for greater certainty, the total Fixed Asset Cash Amount is and shall not exceed $4,500,000 U.S. dollars." |

| Material Term | Provision of Stalking Horse Bid | Provision of Winning Bid |
|---|---|---|
| **Breakup Fee** § 9.2 | In the event that the Agreement is terminated pursuant to section 9.1(a)(iv), then the Sellers shall pay to the Purchaser, or to such Person as the Purchaser may direct, the Break-Up Fee, a cash fee equal to $5,000,000.00 which shall be payable upon consummation of the Alternative Transaction and otherwise subject to the Stalking Horse and Bidding Procedures Order.

The Break-Up Fee, if paid, and the return of the Deposit will be the sole and exclusive remedy of the Purchaser, whether at Law or in equity, for any breach by the Sellers or any of their Affiliates of the terms and conditions of the Agreement. | The Winning Bid does not contain this material term. |
| **Expense Reimbursement** § 9.3 | Notwithstanding anything in the Agreement to the contrary, and subject to Bankruptcy Court, Sellers agree to pay all reasonable costs and expenses of the Purchaser and the Designated Purchasers incurred in connection with development and execution of the Agreement, including approval by the Courts, and the consummation of the transactions contemplated therein, in an amount not to exceed the lesser of such actual costs and expenses and $3,000,000.00 (the "Expense Reimbursement").

The Expense Reimbursement shall constitute (a) a super priority administrative expense under section 503(b)(1) of the Bankruptcy Code, junior only to the claims of the lenders, the Adequate Protection Senior Claim and any Carve-Out under the DIP Credit Agreement and (b) in the CCAA Cases, a priority charge against all assets of the Canadian Debtors, junior only to the DIP Charge, the Directors Charge and the Administration Charge. | The Winning Bid did not amend this material term. |

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor determined and identified as the alternative bidder (the "Alternative Bidder") a group comprised of BlueMountain Capital Management, LLC (as investment advisor to several funds managed by it) and its affiliates, Steelhead Partners, LLC and its affiliates, Lombard General Insurance Company of Canada and its affiliates, Macquarie Bank Limited and its affiliates, and MFP Partners, L.P. and its affiliates, which group collectively holds, in the aggregate, approximately 10% of the debt under the First Lien Credit Agreement. The Alternative Bidder submitted a bid (the "Alternative Bid") of $175 million in cash to be allocated in accordance with the schedule provided by the Alternative Bidder, attached hereto as **Exhibit B**.

K&E 17510028

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor intends to assume and assign to BD White Birch Investment LLC the executory contracts and unexpired leases set forth on **Exhibit C** attached hereto.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor will conduct a hearing before the Court, scheduled for 2:30 p.m. prevailing Eastern Time on September 30, 2010, to approve the revised *Order (A) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of the Assigned Contracts and (C) Granting Related Relief* (the "Sale Order"), a copy of which is attached hereto as **Exhibit D**.[4]

*[Remainder of Page Intentionally Left Blank]*

---

[4] **Exhibit C** illustrates in blackline form a comparison of modifications made to the proposed Sale Order that was attached as Exhibit B to the Sale Motion as filed on August 10, 2010.

**BEAR ISLAND PAPER COMPANY, L.L.C.**

| | |
|---|---|
| Dated: September 27, 2010<br>Richmond, Virginia | By: /s/ *Jonathan L. Hauser*<br>Of Counsel |

Jonathan L. Hauser, Esquire
VSB No. 18688
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7768
Facsimile: (757) 687-1505

- and -

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Michael A. Cohen (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for the Debtor and
Debtor in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was sent either electronically or by overnight mail, postage prepaid, this 27th day of September, 2010, to all necessary parties.

*/s/ Jonathan L. Hauser*

K&E 17510028