# Exhibit D

## Revised Sale Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## ORDER (A) AUTHORIZING AND APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACTS AND (C) GRANTING RELATED RELIEF

Upon the motion, dated August 10, 2010 (the "Sale Motion"), of Bear Island Paper Company, L.L.C., the debtor and debtor in possession in the above-captioned chapter 11 case ("Bear Island" or the "Debtor"), for entry of an order (this "Sale Order") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) authorizing and approving the sale (the "Sale") of the Assets[2] free and clear of all liens, claims, encumbrances and other interests (excluding the Assumed Liabilities) pursuant to the terms and conditions of that certain asset sale agreement (the "Sale Agreement"), dated August 10, 2010, by and between White Birch Paper Company and certain of its subsidiaries, including the Debtor (collectively, the "Sellers") and BD White Birch Investment LLC (the "Purchaser"), **as amended pursuant to**

---

[1] The last four digits of the Debtor's federal tax identification number are 0914. The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2] All capitalized terms used but not otherwise not defined herein shall have the meanings ascribed in the Sale Agreement and the Sale Motion, as applicable. To the extent of any inconsistency, the Sale Agreement shall govern.

*Amendment No. 1 to the Asset Sale Agreement,* dated August 23, 2010 [Docket No. 437], *Amendment No. 2 to the Asset Sale Agreement,* dated August 31, 2010 [Docket No. 460] and *Amendment No. 3 to the Asset Sale Agreement,* dated September 22, 2010; (b) authorizing and approving the assumption and assignment of the Assigned Contracts; and (c) granting related relief; and the Court having entered the *Order Approving (A) the Form of the Sale Agreement, (B) the Bidding Procedures, (C) the Sale Notice and (D) the Assumption and Assignment Procedures* on [●]September 1, 2010 [Docket No. [●]469] (the "Bidding Procedures Order"); and upon adequate and sufficient notice of the Sale Motion, Auction, the hearing before the Court on September 8,30, 2010 (the "Sale Hearing") and any other related transactions having been given in the manner directed by the Court pursuant to the Bidding Procedures Order; and the Court having reviewed and considered (x) the Sale Motion and all relief related thereto, (y) the objections thereto, if any, and (z) the statements of counsel and evidence presented in support of the relief requested by the Debtor at the Sale Hearing; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate and creditors and other parties in interest; and upon the record of the Sale Hearing and all other pleadings and proceedings in this chapter 11 case, including the Sale Motion; and after due deliberation thereon and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

## Jurisdiction, Final Order and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules.

C.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

## Notice of the Sale and Auction

D.    Actual written notice of the Sale Motion was provided to the following parties (the "Notice Parties"): (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Purchaser; (iv) counsel to the Postpetition Agent (as defined in the DIP Order); (v) counsel to the agent under the First Lien Term Loan Agreement; (v) counsel to the majority lenders under the Second Lien Term Loan Agreement; (vii) counsel to counterparties under the Swap Agreements; (viii) the Monitor appointed in the CCAA Cases; (ix) all non-debtor counterparties to the Debtor's executory contracts and unexpired leases; (x) all persons or entities that have requested notice of the proceedings in this chapter 11 case; (xi) all parties who are known to claim liens or other interests upon the Assets; (xii) the Internal Revenue Service and (xiii) all applicable federal, state and local taxing and regulatory authorities.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.     Notice of the auction conducted for the Sale (the "Auction") and the Sale Hearing, served on the Notice Parties on August 10, 2010, was reasonably calculated to provide all interested parties with timely and proper notice of the Auction, Sale and Sale Hearing.

F.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate and sufficient notice of the Sale Motion, Auction, Sale, Sale Hearing and the transactions contemplated thereby, including the assumption and assignment of the Assigned Contracts to the Purchaser, was provided in accordance with orders previously issued by the Court, sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014. The notices ~~described herein were~~**provided by the Debtor are** good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale, Sale Hearing or the assumption and assignment of the Assigned Contracts to the Purchaser is or shall be required.

G.     The disclosures made by the Debtor concerning the Sale Motion, Sale Agreement, Auction, Sale, assumption and assignment of the Assigned Contracts to the Purchaser and Sale Hearing were good, complete and adequate.

H.     A reasonable opportunity to object and be heard with respect to the Sale Motion, Sale and the relief requested therein, including the assumption and assignment of Assigned Contracts to the Purchaser and any Cure Costs related thereto, has been afforded to all interested persons and entities, including the Notice Parties.

### Capital Structure and Credit Bidding

I.     The Sellers, including Bear Island, are indebted to certain lenders (the "First Lien Term Lenders") under that certain First Lien Term Loan Credit Agreement, dated on or about April 8, 2005 (as amended and restated on January 27, 2006 and May 8, 2007) by and between White Birch Paper Company and White Birch Paper  Holding Company, as borrowers, Credit

Suisse First Boston, as sole lead arranger, sole bookrunner, syndication agent and documentation agent, Credit Suisse First Boston Toronto Branch, as Canadian collateral agent and administrative agent, TD Securities (USA) LLC, as co-arranger and the lender parties thereto (the "First Lien Term Loan Agreement").

J.      In addition, the Sellers, including Bear Island, are indebted to certain lenders (the "DIP Lenders") under that certain $140,000,000 Senior Secured Super-Priority Debtor in Possession Term Loan Agreement, as amended, modified, supplemented or otherwise in effect from time to time, as approved by the Initial CCAA Order and by an order of this Court, dated March 31, 2010 (the "DIP Credit Agreement," and, together with the First Lien Term Loan Agreement, the "Loan Documents").

## Good Faith of Purchaser

K.      The Sale Agreement was negotiated, proposed and entered into by the Sellers, including Bear Island, and the Purchaser without collusion, in good faith and from arms'-length bargaining positions.

L.      The Purchaser is not an "insider" or "affiliate" of the Debtor as those terms are defined in the Bankruptcy Code. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the aggregate price paid by Purchaser for the Assets (the "Purchase Price") was not controlled by any agreement among the bidders.

M.      The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Indeed, the Purchaser proceeded in good faith in connection with all aspects of the Sale, including: (i) the Bidding Procedures Order; (ii) neither inducing nor causing the Debtor's chapter 11 filing; and (iii) disclosing all payments to

5

be made by the Purchaser in connection with the Sale. Accordingly, the Purchaser is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code

## Highest and Best Offer

N.     The Debtor conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets.

## No Fraudulent Transfer

O.     As evidenced by Debtor's extensive marketing efforts, the consideration provided by the Purchaser pursuant to the Sale Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery to the Debtor's estate than would be provided by any other available alternative and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. No other person, entity or group of entities has offered to purchase the Assets for greater economic value to the Debtor's estate than the Purchaser. The Debtor's determination that the Sale Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Sale Motion and the Sale Agreement, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors and other parties in interest.

P.    The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtor.

### Validity of Transfer

Q.    The Debtor has (i) full corporate power and authority to execute and deliver the Sale Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Sale Agreement, and (iii) taken all corporate action necessary to authorize and approve the Sale Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Sale Agreement, are required for the Debtor to consummate the Sale, the Sale Agreement or the transactions contemplated thereby.

R.    The Sale Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Purchaser is fraudulently entering into the transaction contemplated by the Sale Agreement.

S.    The Debtor and the other Sellers have good and marketable title to the Assets and are the lawful owners of the Assets. Subject to section 363(f) of the Bankruptcy Code, the transfer the Assets to the Purchaser will be, as of the closing of the transactions contemplated by the Sale Agreement (the "Closing Date"), a legal, valid and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title and interest of the Sellers to the Assets free and clear of (i) all liens and encumbrances relating to, accruing or arising any time prior to the Closing

7

Date (collectively, "Liens") and (ii) all debts arising under, relating to or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code and herein), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the Debtor's or the Purchaser's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (ii), "Claims"), relating to, accruing or arising any time prior to the Closing Date, with the exception of Permitted Encumbrances and Assumed Liabilities (as those terms are defined in the Sale Agreement).

## Section 363(f) is Satisfied

T.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Assets free and clear of any interest in the property. The Purchaser would not have entered into the Sale Agreement and would not consummate the transactions contemplated thereby if the Sale and the assumption of liabilities and obligations as set forth in the Sale Agreement by the Purchaser were not free and clear of all Liens and Claims, other than the Permitted Encumbrances and Assumed Liabilities.

U.     Unless otherwise expressly included in the Permitted Encumbrances or Assumed Liabilities, the Purchaser shall not be responsible for any Liens or Claims, including in respect of

the following, unless otherwise prohibited by applicable law or statute: (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) intercompany loans and receivables between the Debtor and any non-debtor subsidiary, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors; (vi) Claims or Liens arising under any Environmental Laws with respect to any assets owned or operated by Debtor or any of its corporate predecessor at any time prior to the Closing Date and any of the Debtor's liabilities other than the Assumed Liabilities; (vii) any bulk sales or similar law; (vii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (ix) any theories of successor liability (as further defined in the Sale Agreement, the "Excluded Liabilities").

V.     The Debtor may sell the Assets free and clear of all Liens and Claims against the Debtor, its estate or any of the Assets (except the Assumed Liabilities and Permitted

Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtor, its estate or any of the Assets who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

### Compelling Circumstances for an Immediate Sale

W.      Good and sufficient reasons for approval of the Sale Agreement and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest. The Debtor has demonstrated (i) good, sufficient and sound business purposes and justifications for approving the Sale Agreement and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code and (b) a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors.

X.      To maximize the value of the Assets and preserve the viability of the business to which the Assets relate, it is essential that the Sale occur within the time constraints set forth in the Sale Agreement. Time is of the essence in consummating the Sale.

Y.      Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the Purchase Price under the Sale Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

Z.      The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither

impermissibly restructures the rights of Debtor's creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

AA.    The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m) and 365 thereof.

## Adequate Assurance of Future Performance

BB.    The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

## General Provisions

1.    The relief requested in the Sale Motion, including the Sale, is granted and approved to the extent set forth in this Sale Order.

2.    Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, settled by announcement during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled with prejudice.  Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

## Approval of the Sale Agreement

3.    The Sale Agreement, all Ancillary Agreements and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate

11

the Sale pursuant to, and in accordance with, the terms and conditions of the Sale Agreement, (ii) close the Sale as contemplated in the Sale Agreement and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement and fully close the Sale Agreement, including the assumption and assignment of the Assigned Contracts to the Purchaser, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement and the Sale.

5.     This Sale Order shall be binding in all respects upon (a) the Debtor, (b) its estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) any holders of Liens, Claims or other interests in, against or on all or any portion of the Assets (whether known or unknown), (e) the Purchaser and all successors and assigns of the Purchaser, (f) the Assets and (g) any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion of this case to chapter 7 under the Bankruptcy Code. This Sale Order and the Sale Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

### Transfer of the Assets

6.     Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Assets to the Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Assets and shall vest Purchaser with title to the respective Assets and, upon the Debtor's receipt of the Purchase Price, other than Permitted Encumbrances and Assumed Liabilities, shall be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including successor or successor in interest liability and Claims in respect of the Excluded Liabilities, with such Liens, Claims and interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets. Upon the Closing, the Purchaser shall take title

to and possession of the Assets subject only to the Permitted Encumbrances and Assumed Liabilities.

7.    Except with respect to Permitted Encumbrances and Assumed Liabilities, all persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser or its assignee at the Closing. The provisions of this Sale Order authorizing the sale of the Assets free and clear of Liens, Claims and other interests (other than the Permitted Encumbrances and Assumed Liabilities), shall be self-executing and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

8.    The Debtor is hereby authorized to take any and all actions necessary to consummate the Sale Agreement, including any actions that otherwise would require further approval by shareholders or its board of directors without the need of obtaining such approvals.

9.    A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those Assumed Liabilities or Permitted Encumbrances.

10.    If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Assets (other than statements or documents with respect to Permitted Encumbrances) shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby

13

authorized and directed, and the Purchaser is hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

11.     On the Closing Date, this Sale Order shall be construed, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims and other interest of any kind or nature whatsoever existing as to the Assets prior to the Closing Date, other than Permitted Encumbrances and Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; provided, that such Liens, Claims and other interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreement.

12.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and

governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing Date.

13.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the Debtor's chapter 11 case or the consummation of the transactions contemplated by the Sale Agreement.

### Prohibition of Actions Against the Purchaser

14.     Except for the Permitted Encumbrances and Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Sale Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets.

15.     Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Sale Agreement, and unless otherwise prohibited by applicable law or statute, the Purchaser shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including pursuant to any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including liabilities on account of warranties, intercompany loans and receivables between the Debtor and any non-debtor subsidiary, liabilities relating to or arising from any Environmental Laws, and any taxes arising, accruing or payable under, out of, in connection with or in any way relating to the operation of any of the Assets prior to the Closing.

16.     Except with respect to Permitted Encumbrances and Assumed Liabilities, all persons and entities, including all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of their affiliates, their successors or assigns, their property or the Assets, such persons' or entities' Liens, Claims or interests in and to the Assets, including, the following actions:  (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, its successors, assets or properties; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser, any of its affiliates or successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, other orders of the Court, the Sale Agreement or actions contemplated or taken in respect thereof; or (f) revoking, terminating, failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

17.     On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims and other interests in or on the Assets (except Permitted Encumbrances and Assumed Liabilities), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

18.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the Sale Agreement and this Sale Order.

19.     The Purchaser has given substantial consideration under the Sale Agreement for the benefit of the Debtor, its estate and creditors. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Sale Order, including under Paragraphs 14-18 hereof, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against the Debtor or any of the Assets, other than holders of Liens or Claims relating to the Assumed Liabilities and Permitted Encumbrances. The consideration provided by the Purchaser for the Assets under the Sale Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

20.     Effective as of the Closing, the Purchaser, its successors and assigns, shall be designated and appointed the Debtor's true and lawful attorney and attorneys, with full power of substitution, in the Debtor's name and stead, on behalf of and for the benefit of the Purchaser, its successors and assigns, for the sole and limited purposes as follows: have the power to demand and receive from any third party any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute against

third parties for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Assets.

## Assumption and Assignment of Assigned Contracts

21.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Sale Agreement, of the Assigned Contracts is hereby approved and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

22.     The Debtor is hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date of the Sale, the Assigned Contracts free and clear of all Claims, Liens or other interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

23.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.  In addition, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to, and assumption by, the Purchaser, except as provided in the Sale Agreement.

24.     All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured pursuant to the terms of the Sale Agreement on the Closing Date or as soon thereafter as reasonably practicable.

25.     To the extent a counterparty to an Assigned Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts shall have any force and effect with respect to the Sale and assignments authorized by this Sale Order. Such provisions constitute unenforceable, anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code. No assignment of any Assigned Contract pursuant to the terms of the Sale Agreement shall in any respect constitute a default under any Assigned Contract. The non-debtor party to each Assigned Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Purchaser shall enjoy all of the Debtor's rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

26.     With respect to objections to any Cure Amounts that remain unresolved as of the Sale Hearing, such objections shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order.

27.     Nothing in this Sale Order, the Sale Motion or in any notice or any other document is or shall be deemed an admission by the Debtor that any contract is an executory contract or must be assumed and assigned pursuant to the Sale Agreement or in order to consummate the Sale.

28.     The failure of Debtor or Purchaser to enforce at any time one or more terms or conditions of any Contract shall not be a waiver of such terms or conditions or of the Debtor's and Purchaser's rights to enforce every term and condition of such Contract.

29.     All parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach, Claim, pecuniary loss or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities.

**Other Provisions**

30.     This Sale Order, the Sale Agreement and the Ancillary Agreements shall be binding in all respects upon all creditors and equity-holders of the Debtor, all non-debtor parties to the Assigned Contracts, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's chapter 11 case or upon a conversion of this case to chapter 7 under the Bankruptcy Code. The Sale Agreement and the Ancillary Agreements shall not be subject to rejection or avoidance under any circumstances.

31.     The Sale Agreement and the Ancillary Agreements may be modified, amended or supplemented by the parties thereto, in a writing signed by the parties and in accordance with the

terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

32. Except to the extent expressly included in the Assumed Liabilities, or by applicable law or statue, the Purchaser and its affiliates shall have no liability, obligation or responsibility under the WARN Act (29 U.S.C. §§ 210 *et seq*.), the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment or Environmental Law by virtue of the Purchaser's purchase of the Assets or assumption of the Assumed Liabilities.

33. On the Closing Date, prior to payment or repayment of any other claims, interests or obligations of the Debtor, other than the Carve-Out (as defined under the DIP Credit Agreement) if triggered, all outstanding Obligations (as defined in the DIP Credit Agreement) owed by the Debtor under the DIP Credit Agreement will be paid in full and in cash from the proceeds of the Sale pursuant to the Sale Agreement.

34. The consideration provided by the Purchaser to the Debtor pursuant to the Sale Agreement for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

35. The transactions contemplated by the Sale Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith

buyer within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

36.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this chapter 11 case, (b) any subsequent chapter 7 case into which this chapter 11 case may be converted or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Sale Agreement or the terms of this Sale Order.

37.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

38.     The failure to specifically include any particular provision of the Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Sale Agreement (including all Ancillary Agreements) and this Sale Order.   Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

39.     The Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Sale Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Purchaser, (b) interpret, implement and enforce the provisions of this Sale Order, (c) protect Purchaser against any Liens, Claims or other interest in or against the Debtor or the Assets

of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under section 363 or 365 of the Bankruptcy Code with respect to the Assigned Contracts.

40. Any amounts payable by the Debtor under the Sale Agreement shall (a) be paid in the manner provided in the Sale Agreement without further order of this Court, (b) be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, (c) have the other protections provided in the Bidding Procedures Order and (d) not be discharged, modified or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with Purchaser, its successors or assigns.

**41. Nothing in this Sale Order or the Sale Agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order. Nothing in this Sale Order or the Sale Agreement authorizes the transfer to the Purchaser of any license, permit, registration or government authorization or approval without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.**

**42.** 41. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**43.** 42. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Sale Order shall govern.

**44.** 43. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Sale Motion is hereby waived.

Dated: _____, 2010
Richmond, Virginia

_____
Chief Judge Douglas O. Tice, Jr.
United States Bankruptcy Judge