Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
Telephone:      (757) 687-7768
Facsimile:      (757) 687-1505

*Attorneys for the Debtor and
Debtor in Possession*

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Richard M. Goldman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
|  | ) |  |
| Debtor. | ) | **Hearing Date:  October 5, 2011 at 2:00 p.m. (ET)** |
|  | ) | **Objection Deadline:  September 28, 2011 at 5:00 p.m. (ET)** |

**MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER APPROVING
THE DEBTOR'S DISCLOSURE STATEMENT AND RELIEF RELATED THERETO**

Bear Island Paper Company, L.L.C., the debtor and debtor in possession in the above-captioned chapter 11 case ("Bear Island" or the "Debtor"), files this motion (the "Motion") with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court"), seeking the entry of an order, substantially in the form attached hereto as **Exhibit A**, approving the Debtor's Disclosure Statement[2] and relief related thereto.  In support of this Motion, the Debtor respectfully states as follows:

---

[1]   The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]   Capitalized terms used but not defined herein shall have the meanings set forth in the Disclosure Statement.

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 502, 1123(a), 1124, 1125, 1126 and 1128 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 3003-1 and 3016-1 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

## Relief Requested

4.      By this Motion, the Debtor respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A** (the "Disclosure Statement Order"):

(a)      approving the Disclosure Statement;

(b)      fixing, subject to modification as needed the Record Date, the Voting Deadline, the Plan Objection Deadline and the date for the Confirmation Hearing;

(c)      approving (i) procedures by which creditors entitled to vote on the Plan may vote to accept or reject the Plan, which procedures are described herein and set forth in **Exhibit 1** attached to the proposed Disclosure Statement Order (the "Solicitation Procedures"),[3] and (ii) the form of documents to be distributed in connection with solicitation of the Plan (collectively, the "Solicitation Package"); and

(d)      approval of the voting and general tabulation procedures.

---

[3]      To the extent that there are any inconsistencies between this Motion and the Solicitation Procedures, the Solicitation Procedures shall govern.

K&E 18453722.9

**Background**

5.      On February 24, 2010 (the "Petition Date"), Bear Island filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  Bear Island continues to operate its business

and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  On March 3, 2010, pursuant to section 1102 of the Bankruptcy Code, the

United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") appointed an

official committee of unsecured creditors (the "Committee") [Docket No. 90], which was

reconstituted on April 6, 2010 [Docket No. 184].

6.      Also on the Petition Date, certain of the Debtor's Canadian affiliates sought relief

under the *Companies' Creditors Arrangement Act* in the Quebec Superior Court of Justice in

Montreal, Quebec, Canada.  Certain of these affiliates sought further relief under chapter 15 of

the Bankruptcy Code, which cases are being jointly administered by this Court for procedural

purposes only under the following case caption:  In re White Birch Paper Company, et al., Case

No. 10-31234 (DOT).  On March 26, 2010, this Court entered the *Order of Recognition of a*

*Foreign Main Proceeding and Chapter 15 Relief Pursuant to Sections 1504, 1515, 1517 and*

*1520 of the Bankruptcy Code* [Docket No. 55] with respect to the chapter 15 cases.

7.      Pursuant to the terms of its DIP Credit Facility, Bear Island undertook a dual-

track approach to its restructuring, which required Bear Island to contemporaneously pursue (a) a

chapter 11 plan of reorganization in conjunction with a plan of arrangement for the CCAA

Applicants (collectively, the "Cross-Border Plan"), and (b) a going-concern sale of all or

substantially all of its assets pursuant to section 363 of the Bankruptcy Code (the "Sale").

Despite management's good-faith efforts, Bear Island and certain of the CCAA Applicants (as

defined in the Plan, the "WB Group") were unable to satisfy the milestones under the Final DIP

3

Order regarding the Cross-Border Plan. Accordingly, the WB Group focused its efforts towards satisfying the milestones under the DIP Credit Facility regarding consummation of the Sale.

8.      To that end, the Debtor undertook a comprehensive marketing process that resulted in non-binding indications of interest from four potential bidders regarding the purchase of substantially all of the Debtor's Assets. The Debtor and its advisors evaluated these indications of interest, and, based upon such analysis, invited two such parties to participate in further discussions and complete a due diligence process with respect to the Assets, with the intention that one of these parties would eventually serve as the stalking horse bidder for the Sale. Following extensive diligence and active discussions with the Debtor and its advisors, by July 15, 2010, the WB Group had received one offer to purchase all or substantially all of the Assets from BD White Birch Investment LLC ("BD White Birch").

9.      Thereafter, BD White Birch and the WB Group engaged in extensive negotiations regarding the terms of the Sale, which resulted in the WB Group and WD White Birch entering into an asset sale agreement (the "ASA") in accordance with the *Order Approving (A) the Form of the Sale Agreement, (B) the Bidding Procedures, (C) the Sale Notice and (D) the Assumption Procedures and Assumption Notice* (the "Bid Procedures Order"). The Debtor then held a competitive auction, in an effort to sell the Assets for the highest or otherwise best bid. At the conclusion of the auction, the Debtor determined that, in accordance with the terms and conditions of the Bid Procedures Order, BD White Birch was the successful bidder.

10.      On September 30, 2010, this Court held the hearing to approve the sale of the Debtor's assets to BD White Birch. On November 3, 2010, following the conclusion of the Sale Hearing and post-hearing briefing, this Court entered an order approving the sale of the Debtor's assets to BD White Birch pursuant to section 363 of the Bankruptcy Code.

## The Debtor's Plan and Disclosure Statement

11.     The WB Group and BD White Birch are currently finalizing negotiations related to closing the Sale.  Upon the Sale closing, Bear Island shall liquidate any remaining assets not transferred to BD White Birch and, together with the Sale proceeds, distribute such amounts to its creditors.  To that end, Bear Island has contemporaneously filed herewith (a) the *Disclosure Statement for the Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") and (b) the *Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as amended from time to time and including all exhibits and supplements thereto, the "Plan").  The Plan contemplates the post-Sale closing orderly liquidation of the Debtor's assets to be distributed p*ro rata* among holders of claims against the Debtor, including holders of general unsecured claims.

## Basis for Relief

**I.      The Debtor's Disclosure Statement Contains Adequate Information
as Required by Section 1125 of the Bankruptcy Code and Should Be Approved**

12.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide holders of impaired claims and interests entitled to vote on the plan "adequate information" regarding that plan.  Section 1125(a)(1) of the Bankruptcy Code states, in relevant part, that:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

5

11 U.S.C. § 1125(a)(1).

13.    "Adequate information" has been interpreted as information that is "reasonably

practicable" to permit "informed judgment" by impaired creditors and interest holders entitled to

vote on a plan.  *See* 11 U.S.C. § 1125(a)(1); *see also In re Bermuda Bay, L.L.C.*, 2009 WL

5218071, at * 3 (Bankr. E.D. Va. Dec. 31, 2009); *In re A. H. Robins Co., Inc.*, 1998 WL 637401,

at *3 (4th Cir. Aug. 31, 1998) ("The disclosure statement must contain 'adequate information,'

*i.e.*, sufficient information to permit a reasonable, typical creditor to make an informed judgment

about the merits of the proposed plan.   Moreover, the court must assess the disclosure

statement's adequacy and approve it before transmittal.") (internal citations omitted).

14.    The determination of whether a disclosure statement includes adequate

information is made on a case-by-case basis, and courts exercise broad discretion when

evaluating whether a disclosure statement contains adequate information.  *See Bermuda Bay*,

2009 WL 5218071, at *4 ("[D]etermination of whether the disclosure statement has adequate

information is made on a case-by-case basis and is largely within the discretion of the

bankruptcy court.") (internal citations omitted); *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 696

(4th Cir. 1989); *Quality Inns Intern., Inc. v. L.B.H. Assoc. Ltd. P'ship*, 1990 WL 116761, at *2

(4th Cir. July 26, 1990).

15.    Here, the Disclosure Statement is the product of the circumstances leading to, and

other significant events that occurred during, this chapter 11 case, including the Sale and the

transactions and agreements related thereto.  In addition, the Disclosure Statement reflects the

Debtor's thorough analysis of the Plan, the distributions to Holders of Claims, the effect of the

Plan on Holders of Claims and Equity Interests, and other parties in interest, and the resulting

liquidation of the Debtor's estate in the event the Plan is confirmed and consummated.  In

performing these analyses, the Debtor sought and received input from their advisors.  The Debtor

also sought and received input from its major constituents, including the Creditors' Committee,

and such constituents' advisors.

16.     Specifically, the Disclosure Statement contains the pertinent information

necessary for Holders of Claims to make an informed decision regarding whether to vote to

accept or reject the Plan, including, among other things, information regarding:

(a)     the Plan;

(b)     the history of the Debtor, including certain events leading to the
commencement of this chapter 11 case;

(c)     the operation of the Debtor's business and significant events that occurred
during this chapter 11 case, including the Sale;

(d)     the Debtor's corporate structure;

(e)     the Debtor's prepetition capital structure and indebtedness;

(f)     Claims asserted against the Debtor's estate and the procedures for the
resolution of contingent, unliquidated and Disputed Claims;

(g)     the classification and treatment of Claims and Equity Interests under the
Plan;

(h)     certain risk factors to consider that may affect the Plan;

(i)     certain federal income tax consequences of the Plan;

(j)     the provisions governing distributions under the Plan;

(k)     the means for implementation of the Plan;

(l)     identification of Remaining Causes of Action under the Plan; and

(m)     settlement, release, injunctive and exculpative provisions of the Plan.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing the factors

courts have considered when determining the adequacy of information provided in a disclosure

statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same).

K&E 18453722.9

17.    In light of the foregoing, the Debtor respectfully submits that the Disclosure Statement contains more than sufficient information for a hypothetical investor to make an informed decision about the Plan and complies with all aspects of section 1125 of the Bankruptcy Code.  Moreover, to the extent that this Court deems it necessary, the Debtor shall demonstrate at the hearing on this Motion, scheduled for **October 5, 2011 at 2:00 p.m. prevailing Eastern Time** (the "Disclosure Statement Hearing"), that the Disclosure Statement addresses the information set forth above in a manner that provides holders of impaired Claims entitled to vote to accept or reject the Plan with adequate information within the meaning of section 1125 of the Bankruptcy Code.  Accordingly, the Debtor respectfully requests that this Court approve the Disclosure Statement.

## II.    This Court Should Establish the Proposed Record Date, the Voting Deadline, Deadline to Object to Plan Confirmation and Procedures for Such Objections, and the Date of the Confirmation Hearing

18.    The Debtor respectfully requests that, in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rules 3017(d) and 3018(a), this Court approve the setting of certain dates described herein.

### A.    Establishing the Record Date

19.    Bankruptcy Rule 3017(d) provides that, upon approval of a disclosure statement, except to the extent that a court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders, the debtor shall mail to all creditors and equity security holders, and the U.S. Trustee, a copy of the plan, the disclosure statement, notice of the voting deadline and such other information as the court may direct.  Fed. R. Bankr. P. 3017(d).  For purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed

by the court, for cause, after notice and a hearing." *Id.* Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a).

20.     In accordance with the foregoing, the Debtor requests that this Court establish October 5, 2011 — the date the Disclosure Statement Hearing is scheduled to commence — as the record date for purposes of determining which creditors and equity holders are entitled to vote on the Plan (the "Record Date").[4]

21.     Furthermore, the Debtor proposes that with respect to any Claim transfer filed pursuant to Bankruptcy Rule 3001(e), such Claim transferee shall be entitled to receive the applicable notice or Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim so long as (a) the documentation evidencing such transfer was docketed by this Court on or before 21 days before the Record Date, (b) the Claim transferor did not timely file an objection with respect to such transfer and (c) all actions otherwise necessary to effectuate the Claim transfer pursuant to Bankruptcy Rule 3001(e) are completed by the Record Date. In the event that a Claim is transferred after the Record Date, or in a manner other than as described above, the Debtor proposes that such Claim transferee be bound by any vote on the Plan made by the Holder of such Claim as of the Record Date.

22.     Finally, to avoid the potential for any confusion, the Debtor believes the Record Date should be the sole record date established for all Holders of Claims. The Confirmation

---

[4]     The Debtor's request for the establishment of a Record Date is for voting purposes only and shall have no impact with respect to which persons or Entities are entitled to receive distributions under the Plan.

Hearing Notice (as defined herein and attached hereto as **Exhibit B**) shall prominently state the Record Date.

**B.      Establishing the Voting Deadline**

23.      Bankruptcy Rule 3017(c) provides, in relevant part, that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan."  Fed R. Bankr. P. 3017(a).  The Debtor respectfully requests that this Court establish **November 14, 2011 at 2:00 p.m. prevailing Eastern Time** as the voting deadline ("Voting Deadline").  The Voting Deadline shall provide Holders of Claims with not less than 30 days to determine whether to accept or reject the Plan.  The Debtor proposes that for votes to be counted, all Ballots must be delivered by the Voting Deadline as specified in section D.3 of the Solicitation Procedures.  The Confirmation Hearing Notice shall prominently state the Voting Deadline.

**C.      Establishing Procedures for Filing Objections to Confirmation of the Plan**

24.      The Debtor also requests that this Court direct the manner in which objections to Confirmation of the Plan shall be made.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  In the Confirmation Hearing Notice, the Debtor intends to state that objections to Confirmation of the Plan, or requests for modifications to the Plan, if any, must:

      (a)      be in writing;

      (b)      conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

      (c)      state the name and address of the objecting party and the amount and nature of such Entity's Claim or Equity Interest;

      (d)      state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and

(e)     be filed, contemporaneously with a proof of service, with this Court and served so that it is **actually received** by the notice parties identified in the Confirmation Hearing Notice on or before the Plan Objection Deadline.[5]

25.     The Debtor respectfully requests that this Court establish **November 14, 2011 at 2:00 p.m. prevailing Eastern Time** as the deadline to for filing and service of objection to the Plan (the "Plan Objection Deadline").  The Debtor believes that the proposed Plan Objection Deadline will afford this Court, the Debtor and other parties in interest with reasonable time to consider the objections and proposed modifications of the Plan before the Confirmation Hearing.

**D.     Establishing the Confirmation Hearing**

26.     In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code (requiring a confirmation hearing with respect to any chapter 11 plan), the Debtor has requested **November 22, 2011 at 2:00 p.m. prevailing Eastern Time** for a hearing on Confirmation of the Plan (the "Confirmation Hearing").  The Debtor proposes that the Confirmation Hearing may be continued from time to time by this Court or the Debtor without further notice other than announcing such adjournment in open court, or filing a notice of adjournment with this Court and serving such notice upon the Core Group, the 2002 List and the Entities who have filed objections to the Plan, without further notice to other parties in interest.

**III.    Approval of the Solicitation and Notice Procedures**

27.     To conduct an effective solicitation of votes to accept or reject the Plan in a manner that is consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and due process, the Debtor seeks approval of the Solicitation Procedures described herein and set forth on **Exhibit 1** attached to the proposed Disclosure

---

[5]     The proposed date for objections to Confirmation and the date for the Confirmation Hearing will provide all parties in interest with no fewer than 28 days notice of the Plan Objection Deadline, as required by Bankruptcy Rule 2002(b).

K&E 18453722.9

Statement Order.  The Debtor believes that the Solicitation Procedures are well-designed and specifically-tailored to effectively solicit votes to accept or reject the Plan.  To the extent that circumstances require further modifications of, or amendments to, the Solicitation Procedures, the Debtor reserves the right to supplement or amend the Solicitation Procedures to further facilitate the Plan solicitation process.

### A.   Duties of the Voting and Claims Agent

28.     On February 26, 2010, this Court entered the *Order Authorizing the Debtor to Employ and Retain The Garden City Group, Inc. as Notice, Claims and Solicitation Agent* [Docket No. 65], which authorized the Debtor to retain The Garden City Group, Inc. (the "Voting and Claims Agent") to, among other things, act as claims agent and solicitation agent in connection with the solicitation of confirmation of any chapter 11 plan.  In accordance therewith, the Debtor respectfully requests that this Court authorize the Voting and Claims Agent (to the extent not already authorized) to assist the Debtor to (a) distribute Solicitation Packages, (b) receive, tabulate and report on Ballots cast by Holders of Claims against the Debtor to accept or reject the Plan, (c) respond to inquiries from Holders of Claims and Equity Interests, and other parties in interest, relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Procedures and the Solicitation Package and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, and for objecting to the Plan, (d) solicit votes on the Plan and (e) if necessary, contact creditors and Holders of Claims and Equity Interests regarding the Plan.

### B.   Approval of the Solicitation Package and Distribution Thereof

29.     The Debtor proposes, pursuant to Bankruptcy Rule 3017(d), to distribute the Solicitation Package to those parties entitled to vote on the Plan in the form and manner described herein and set forth in section C.2 of the Solicitation Procedures.

12

30.     Specifically, the Solicitation Package shall contain copies of the following:

(a)     a cover letter, substantially in the form attached hereto as **Exhibit C**: (i) describing the contents of the Solicitation Package and instructions on how paper copies of any materials that may be provided in CD-ROM format can be obtained at no charge; and (ii) recommending the Holders of Claims in each of the Voting Classes to vote to accept the Plan;

(b)     the Disclosure Statement Order and Solicitation Procedures;

(c)     an appropriate form of Ballot and Ballot instructions, if applicable (with a pre-addressed, postage pre-paid return envelope);

(d)     the Confirmation Hearing Notice (as defined herein);

(e)     the approved form of the Disclosure Statement (together with the Plan, which is **Exhibit A** to the Disclosure Statement) in either paper or CD-ROM format; and

(f)     such other materials as this Court may direct.

31.     Considering that the Disclosure Statement and Plan total more than 100 pages without accounting for exhibits, and the cost and expense to estate resources to distribute the Disclosure Statement, Plan, and Solicitation Package in paper format, the Debtor respectfully requests the option to serve the Disclosure Statement, the Plan and certain the Solicitation Package in CD-ROM format instead of paper format to.[6]

32.     Through the Voting and Claims Agent, the Debtor intends to distribute the appropriate notices and Solicitation Packages 28 calendar days before the Plan Objection Deadline (the "Solicitation Date"). The Debtor submits that distribution of the Solicitation Packages 28 calendar days prior the Plan Objection Deadline will provide the requisite materials

---

[6]     The Debtor reserves the right to send paper copies of any documents, if preferred. Moreover, any Entity who receives a CD-ROM, but who desires a paper copy of any documents provided only in CD-ROM format may request a copy of such documents from: (a) the Voting and Claims Agent (i) at its website at www.gardencitygroup.com/cases/bip/, (ii) by writing to WBP Bankruptcy Administration, c/o GCG, PO Box 9550, Dublin Ohio 43017-4850, (iii) calling (888) 291-9927 or (iv) by emailing wbpsolicitation@gcginc.com; or (b) for a fee via PACER at http://www.vaeb.uscourts.gov.

K&E 18453722.9

to all creditors and equity security holders in accordance with Bankruptcy Rules 2002(b) and 3017(d). *See* Fed. R. Bankr. P. 3017(d) (providing that, after approval of a disclosure statement, a debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, the time for filing objections and the hearing to consider the confirmation of a chapter 11 plan and any other information that the court may direct to all creditors and equity security holders); *see also* Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the confirmation of a chapter 11 plan).

### C.  Approval of the Forms of Ballots

33.    In accordance with Bankruptcy Rule 3018(c), the Debtor has prepared and customized Ballots for Holders of Claims entitled to vote to accept or reject the Plan (substantially in the forms attached hereto as **Exhibit D**) to tabulate acceptances and rejections of the Plan. The forms of the Ballots are based on Official Form No. 14 and have been modified to (a) address the particular circumstances of this chapter 11 case and (b) include certain additional information that the Debtor believes to be relevant and appropriate for each Class of Claims entitled to vote to accept or reject the Plan. *See* Fed. R. Bankr. P. 3017(d) (debtors shall mail a form of ballot conforming to the appropriate Official Form to creditors and equity security holders).

34.    Pursuant to the Solicitation Procedures, the Voting and Claims Agent shall distribute Solicitation Packages with the appropriate Ballots to Holders of Claims in Classes 2, 3, 4 and 5 (collectively, the "Voting Classes"). Class 1 Claims are Unimpaired and are conclusively presumed to have accepted the Plan. Accordingly, Holders of Claims in Class 1 shall receive the Non-Voting Status Notice - Deemed to Accept (as defined and discussed below, and attached hereto as **Exhibit E-1**) and the Confirmation Hearing Notice in lieu of the

14

Solicitation Package.  Class 6 Equity Interests are Impaired and receiving no distribution under the Plan.  Thus Class 6 Equity Interests are conclusively presumed to reject the Plan.  Holders of Equity Interests in Class 6 shall receive the Non-Voting Status Notice - Deemed to Reject (as defined and discussed below, and attached hereto as **Exhibit E-2**) and the Confirmation Hearing Notice, in lieu of the Solicitation Package.

35.     The Debtor submits that the forms of the Ballots comply with Bankruptcy Rule 3018(c).  Accordingly, the Debtor respectfully requests that this court approve the forms of Ballots.

**D.     Approval of the Form of the Confirmation Hearing Notice**

36.     Bankruptcy Rules 2002(b) and (d) require not less than 28 days' notice to all holders of claims or equity interests of the time fixed for filing objections and the hearing on confirmation of a chapter 11 plan.  Fed. R. Bankr. P. 2002(b); (d).  To satisfy this requirement, the Debtor intends to send a solicitation document, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Hearing Notice") to all parties in the creditor database maintained by the Voting and Claims Agent.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Confirmation Hearing Notice shall contain, among other things:  (a) instructions to Holders of Claims and Equity Interests, and parties in interest, regarding how such Entities may view or obtain copies of the Disclosure Statement (with all appendices thereto, including the Plan), the Disclosure Statement Order, the Solicitation Procedures and all other materials in the Debtor's Solicitation Package; (b) a disclosure regarding the settlement, third party release, exculpation and injunction language in Article X of the Plan; (c) the Record Date; (d) the procedures for the temporary allowance of Claims pending objection; (e) the Voting Deadline; (f) the Plan Objection Deadline; and (g) the Confirmation Hearing date and time.  Additionally, the Confirmation Hearing Notice shall inform Entities that the Solicitation Package (excluding

15

Ballots) can be obtained from:  (a) the Voting and Claims Agent (i) at its website at www.gardencitygroup.com/cases/bip, (ii) by writing WBP Bankruptcy Administration, c/o GCG, PO Box 9550, Dublin, Ohio, 43017-4850, (iii) calling (888) 291-9927 or (iv) by emailing wbpsolicitation@gcginc.com; or (b) from the Court's website, for a fee via PACER, at www.vaeb.uscourts.gov.

37.     In addition, Bankruptcy Rule 2002(l) permits this Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." Fed. R. Bankr. P. 2002(l).  In accordance with Bankruptcy Rule 2002(l), the Debtor proposes to publish the Confirmation Hearing Notice (in a format modified for publication) in *The Wall Street Journal* and *Richmond Times-Dispatch* on a date that is no fewer than 21 days before the Plan Objection Deadline. The Debtor believes that publishing the Confirmation Hearing Notice will provide sufficient notice of the Disclosure Statement, the Confirmation Hearing, the Record Date, the Voting Deadline and the Plan Objection Deadline to Entities who may not otherwise receive notice by mail as provided in the Solicitation Procedures.

38.     In light of the foregoing, the Debtor respectfully requests that this Court find that the Confirmation Hearing Notice complies with the requirements of Bankruptcy Rules 2002(b), (c)(3) and (d).  The Debtor further requests that this Court determine that the Confirmation Hearing Notice contains sufficient disclosure regarding the settlement, third party release, exculpation and injunction language in Article X of the Plan.

E.     **Non-Voting Status**

39.     In compliance with section 1123(a)(1) of the Bankruptcy Code, and as reflected in Article II of the Plan, Administrative Claims and Priority Tax Claims are not classified under the Plan.   See 11 U.S.C. § 1123(a)(1) (providing for classification of claims other than administrative and priority tax claims).  As such, these unclassified Claims are not entitled to

16

vote on the Plan.  In addition, Article III of the Plan provides that Class 1, which is an Unimpaired Class of Claims, is deemed to accept the Plan, and, thus, Holders of Class 1 Claims are not entitled to vote on the Plan.  Further, Article III of the Plan provides that Class 6 Equity Interests, which are Impaired and receiving no distribution under the Plan, are conclusively deemed to reject the Plan, and thus, not entitled to vote on the Plan.

40.    The Debtor does not intend to solicit votes from unclassified Claims, Class 1 Unimpaired Claims or Class 6 Equity Interests.  The Debtor shall, however, send a Confirmation Hearing Notice and a Notice of Non-Voting Status (as defined herein) with Respect to Unclassified Claims and Unimpaired Classes of Claims Deemed to Accept the Plan, substantially in the form attached hereto as **Exhibit E-1** (the "Non-Voting Status Notice–Deemed to Accept"), in lieu of the Solicitation Package to the Holders of such Claims.  The Debtor shall also send a Confirmation Hearing Notice and a Notice of Non-Voting Status with Respect to Class 6 Equity Interests Deemed to Reject the Plan, substantially in the form attached hereto as **Exhibit E-2** (the "Non-Voting Status Notice–Deemed to Reject," and together with the Non-Voting Status Notice-Deemed to Accept, the "Non-Voting Status Notices"), in lieu of the Solicitation Package to the Holders of such Equity Interests.  The Non-Voting Status Notices shall explain to such Holders their non-voting status and that such Holder may obtain certain materials in the Solicitation Package from the Voting and Claims Agent.

41.    The Debtor respectfully submits that the Non-Voting Status Notices comply with the Bankruptcy Code and respectfully requests that this Court approve such notices.

## IV.    Voting and General Tabulation Procedures

42.    The Debtor respectfully requests that this Court approve the voting and tabulation procedures described in section D of the Solicitation Procedures, which the Debtor submits are in

accordance with Bankruptcy Rule 3018(a) and section 1126(c) of the Bankruptcy Code, which

provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).

## A.        Approval of the Voting Procedures

43.        The Debtor proposes that only the Holders of Claims set forth in section D.1 of

the Solicitation Procedures shall be entitled to vote.  The assignee of any transferred or assigned

Claim shall be permitted to vote such Claim only if the transfer or assignment has been fully

effectuated pursuant to the procedures dictated by Bankruptcy Rule 3001(e) and such transfer is

reflected on the claims register of the Voting and Claims Agent as of the Record Date.

## B.        Approval of the General Tabulation Procedures

44.        In tabulating votes, the Debtor proposes to use the hierarchy described in section

D.2 of the Solicitation Procedures to determine the amount of the Claim associated with each

Holder's vote.  The amount of the Claim established pursuant to section D.2 of the Solicitation

Procedures shall control for voting purposes only and shall not constitute the Allowed amount of

any Claim or the amount of any Claim for any other purpose.  The Debtor also proposes to use

the voting procedures and standard assumptions in tabulating Ballots as set forth in section D.3

of the Solicitation Procedures.

45.        The Debtor believes that the requested Solicitation Procedures and other relief

requested herein are cost-effective, provide adequate notice and opportunity to be heard and are

in the best interests of the Debtor's Estate, Holders of Claims, and other parties in interest.

Accordingly, the Debtor submits that it has shown good cause for the relief requested herein.

K&E 18453722.9

### C.      Temporary Allowance of Claims for Voting Purposes

46.      Pursuant to section 1126(a) of the Bankruptcy Code, only "holder[s] of claim[s] or interest[s] allowed under section 502 . . . may accept or reject a plan."  11 U.S.C. § 1126(a). Under section 502(a) of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Based on the foregoing, Holders of Claims for which an objection is pending are not entitled to vote on the Plan.

47.      Notwithstanding section 1126(a) of the Bankruptcy Code, Bankruptcy Rule 3018(a) provides for temporary allowance of claims or interests for which an objection is pending at the time when plan votes are solicited so that holders may vote such claims or interests at a temporarily allowed amount.  *See* Fed. R. Bankr. P. 3018(a).  In accordance with Bankruptcy Rule 3018(a), the Debtor shall send Holders of Claims whose Claims are subject to an objection as of the Record Date a Confirmation Hearing Notice and a Notice of Non-Voting Status with Respect to Disputed Claims (the "Disputed Claim Notice"), substantially in the form attached hereto as **Exhibit F**, in lieu of the Solicitation Package.

48.      The Disputed Claim Notice shall inform Holders that (a) their Claims are subject to an objection and (b) the Holder of such Claim cannot vote any Disputed portion of its Claim unless one or more of the following events have taken place at least five Business Days before the Voting Deadline:  (i) this Court enters an order, pursuant to section 502(b) of the Bankruptcy Code, and after notice and a hearing, allowing such claim; (ii) this Court enters an order, after notice and a hearing, temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a); (iii) execution of a stipulation or other agreement between the Holder of such Claim and the Debtor resolving the objection and allowing such Claim in an agreed upon amount; (iv) execution of a stipulation or other agreement between the Holder of such Claim and

19

the Debtor temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon

amount; or (v) the Debtor voluntarily withdraws the pending objection to such Claim (each, a

"Resolution Event").  No later than two Business Days after a Resolution Event, the Voting and

Claims Agent shall distribute a Solicitation Package with a Ballot and a pre-addressed, postage

pre-paid envelope to the relevant Holder of such a Claim, which must be returned according to

the instructions on the Ballot included in the Solicitation Package by no later than the Voting

Deadline.

49.     If the Holder of a Claim receives a Solicitation Package and the Debtor objects to

such Claim after the Record Date but at least 15 days before the Confirmation Hearing, the

Debtor's notice of objection shall inform such Holder of the rules applicable to Claims subject to

a pending objection and the procedures for temporary allowance for voting purposes.

Additionally, if the Holder of a Claim receives a Solicitation Package and the Debtor objects to

such Claim less than 15 days before the Confirmation Hearing, the Claim shall be deemed

temporarily allowed for voting purposes only without further action by the Holder of such Claim

and without further order of this Court.

50.     The Debtor submits that the foregoing procedures concerning Claims subject to a

pending objection satisfy the requirements under the Bankruptcy Code and the Bankruptcy Rules

and respectfully request that this Court approve such procedures.

**D.      Returned Solicitation Packages and Notices**

51.     The Debtor anticipates that, in certain instances, notice of the Disclosure

Statement Hearing may be returned by the United States Postal Service or other carrier as

undeliverable.  The Debtor believes that it would be costly and wasteful to mail Solicitation

Packages to the same addresses to which the notice of Disclosure Statement was returned as

undeliverable.  Additionally, the Debtor believes that if a Holder of a Claim or an Equity Interest

20

has changed its mailing address after the Petition Date, the burden should be on the Holder, not

the Debtor, to advise the Voting and Claims Agent and the Debtor of the new address.

Accordingly, the Debtor seeks this Court's approval for a departure from the notice rule

requiring the Debtor to mail Solicitation Packages to those Entities listed at stale addresses,

unless the Debtor, through the Voting and Claims Agent (as a result of such Entity writing to

WBP Bankruptcy Administration, c/o GCG, PO Box 9550, Dublin, Ohio, 43017-4850), is

provided with accurate addresses for such Entities not less than 10 Business Days before the

Solicitation Date.

## **Notice**

52.    Notice of this Motion, in the form attached hereto as **Exhibit G**, has been given to

the Core Group, the 2002 List, Holders of Claims, Holders of Equity Interests and all of the

Debtor's known creditors and equity security holders.   In light of the nature of the relief

requested, the Debtor respectfully submits that no further notice is required.

## **No Prior Request**

53.    No prior motion for the relief requested herein has been made to this or any other

court.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this Court enter the Disclosure Statement Order, substantially in the form attached hereto as **Exhibit A**, (a) approving the Debtor's Disclosure Statement and the relief related thereto, and (b) granting such other and further relief as this Court deems just and proper.

**BEAR ISLAND PAPER COMPANY, L.L.C.**

Dated: August 24, 2011          By: */s/ Jonathan L. Hauser*
Richmond, Virginia                         Of Counsel

Jonathan L. Hauser, Esquire
VSB No. 18688
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
Telephone:    (757) 687-7768
Facsimile:    (757) 687-1505

    - and -

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Richard M. Goldman (admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Attorneys for the Debtor and*
*Debtor in Possession*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading was sent either electronically or by first class mail, postage prepaid, this 24th day of August, 2011, to all necessary parties.


*/s/ Jonathan L. Hauser* _____

K&E 18453722.9

## EXHIBIT A

**Disclosure Statement Order**

Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
Telephone:      (757) 687-7768
Facsimile:      (757) 687-1505

*Attorneys for the Debtor and
Debtor in Possession*

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Richard M. Goldman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | ) | Case No. 10-31202 (DOT) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER APPROVING THE DEBTOR'S
DISCLOSURE STATEMENT AND RELIEF RELATED THERETO**

Upon the motion dated August 24, 2011 (the "Motion"),[2] of Bear Island Paper Company, L.L.C., the debtor and debtor in possession in the above-captioned chapter 11 case ("Bear Island" or the "Debtor"), seeking the entry of an order (the "Order") approving the Debtor's Disclosure Statement and relief related thereto, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this

---

[1]     The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]     Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

District pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Debtor having provided adequate notice of the Motion and the opportunity for a hearing on the Motion such that no further or additional notice is required; and this Court having reviewed the Motion and heard the statements in support of the relief requested therein at the Disclosure Statement Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Disclosure Statement Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted in its entirety.

2.      The Disclosure Statement meets all of the requirements of section 1125 of the Bankruptcy Code and is approved.

3.      The Disclosure Statement Hearing notice, in the form attached to the Motion as **Exhibit G**, is approved.

4.      The Debtor has provided adequate notice of the time fixed for filing objections and the hearing to consider approval of the Disclosure Statement in accordance with Bankruptcy Rules 2002 and 3017, and Local Bankruptcy Rules 2002-1 and 3016-1(A).

5.      In compliance with Bankruptcy Rule 3016(c), the Disclosure Statement, the Plan and the Ballots provide Holders of Claims and Equity Interests, and other parties in interest, with sufficient notice regarding the settlement, third-party release, exculpation and injunction provisions contained in the Plan.

6.      Any objections to the approval of the Disclosure Statement that were not otherwise withdrawn or resolved at or before the Disclosure Statement Hearing are overruled.

K&E 18453722.9

7.      The date of the Disclosure Statement Hearing shall be the Record Date for determining:  (a) the Holders of Claims (including "holders of bonds, debentures, notes and other securities") that are entitled to receive the Solicitation Package pursuant to the Solicitation Procedures; (b) the Holders of Claims entitled to vote to accept the Plan; and (c) whether Claims have been properly transferred or assigned to a transferee pursuant to Bankruptcy Rule 3001(e) such that the transferee may vote on the Plan as the Holder of such Claim.

8.      The Voting Deadline shall be **5:00 p.m. prevailing Eastern Time on November 14, 2011**.

9.      The Plan Objection Deadline shall be **5:00 p.m. prevailing Eastern Time on November 14, 2011**.

10.      Any objections to the Plan must be filed by the Plan Objection Deadline and must:  (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of such Entity's Claim; (d) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed, contemporaneously with a proof of service, with this Court and served so that it is **actually received** by the notice parties identified in the Confirmation Hearing Notice (attached to the Motion as **Exhibit B**) no later than the Plan Objection Deadline.

11.      The Confirmation Hearing shall commence on **November 22, 2011 at 2:00 p.m. prevailing Eastern Time**, which hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with this Court and served on the Core Group, the 2002 List and the Entities who have filed objections to the Plan, without further notice to parties in interest.

3

12.     The Confirmation Hearing Notice, substantially in the form attached to the Motion as **Exhibit B**, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d) and 3017(d), and is approved.

13.     The Solicitation Procedures attached hereto as **Exhibit 1** and incorporated by reference herein are approved in their entirety; provided, however, that the Debtor reserves the right to amend or supplement the Solicitation Procedures to better facilitate the solicitation process.

14.     The procedures for distribution of the Solicitation Packages as set forth in the Motion and the Solicitation Procedures satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.  The Debtor shall distribute Solicitation Packages or cause Solicitation Packages to be distributed to all Entities entitled to vote to accept or reject the Plan.

15.     The Debtor's letter to the Voting Classes, substantially in the form attached to the Motion as **Exhibit C**, is approved.

16.     All votes to accept or reject the Plan must be cast by using the appropriate Ballot. The Ballots, substantially in the forms attached to the Motion as **Exhibit D**, are approved.  The Ballot instructions, substantially in the form included in the Ballots is approved.  All Ballots must be properly executed, completed and delivered according to their applicable Ballot instructions by:  (a) first class mail, in the return envelope provided with each Ballot; (b) overnight courier; or (c) personal delivery, so that the Ballots are **actually received** by the Voting and Claims Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot.

4

17.     The Non-Voting Status Notices, substantially in the forms attached to the Motion as **Exhibit E-1** and **Exhibit E-2**, are approved.

18.     The Debtor need not provide Ballots and copies of the Plan and Disclosure Statement to:  (a) Holders of Claims who are in Unimpaired Classes or who are unclassified under the Plan, and therefore, are deemed to accept the Plan; or (b) Holders of Equity Interests who will not receive any distribution, and therefore, are conclusively deemed to reject the Plan.

19.     The form of the Disputed Claim Notice, substantially in the form attached to the Motion as **Exhibit F**, is approved.

20.     The Debtor shall be excused from mailing Solicitation Packages to those Entities to whom the Debtor mailed a notice regarding the Disclosure Statement Hearing and received a notice from the United States Postal Service or other carrier that such notice was undeliverable, unless such Entity provides the Debtor, through the Voting and Claims Agent, an accurate and updated address not less than 10 Business Days before the Solicitation Date.  If an Entity has changed its mailing address since the Petition Date, the burden is on such Entity, not the Debtor, to advise the Debtor and the Voting and Claims Agent of the new address.

21.     The terms of this Order shall be binding upon the Debtor, all Holders of Claims and Equity Interests, and any trustees appointed under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Debtor and all other parties in interest.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

5

24.     The Debtor is authorized to make non-material changes to the Disclosure Statement, the Plan and related documents without further order of the Court, including changes to correct typographical and grammatical errors, and to make conforming changes in the Solicitation Packages, Non-Voting Status Notices, Disputed Claim Notices and any other materials before their mailing.

25.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26.     The Court shall retain jurisdiction, even after the closing of the chapter 11 case, with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2011          _____
        Richmond, Virginia              Chief Judge Douglas O. Tice, Jr.
                                         United States Bankruptcy Judge


6

I ASK FOR THIS:

*/s/ Jonathan L. Hauser*
Jonathan L. Hauser
VSB No. 18688
**TROUTMAN SANDERS LLP**
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462
Telephone:     (757) 687-7768
Facsimile:     (757) 687-1505


- and -

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Richard M. Goldman (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Attorneys for the Debtor and*
*Debtor in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.


*/s/ Jonathan L. Hauser*

**EXHIBIT 1** to **EXHIBIT A**

**Solicitation Procedures**

Jonathan L. Hauser
VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
Telephone:      (757) 687-7768
Facsimile:      (757) 687-1505

Richard M. Cieri (admitted *pro hac vice*)
Christopher J. Marcus (admitted *pro hac vice*)
Richard M. Goldman (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Attorneys for the Debtor and
Debtor in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BEAR ISLAND PAPER COMPANY, L.L.C.,[1] | Case No. 10-31202 (DOT) |
| Debtor. | |

## SOLICITATION PROCEDURES

On August 24, 2011, Bear Island Paper Company, L.L.C., the debtor and debtor in possession in the above-captioned chapter 11 case ("Bear Island" or the "Debtor") filed:  (a) the *Motion of the Debtor for an Order Approving the Debtor's Disclosure Statement and Relief Related Thereto* [Docket No. •] (the "Motion"); (b) the *Disclosure Statement for the Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. •] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"); and (c) the *Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. •] (as amended from time to time and including all exhibits and supplements thereto, the "Plan").  On [•], this Court entered an *Order Approving the Debtor's Disclosure Statement and Relief Related Thereto* [Docket No. •] (the "Disclosure Statement Order") approving the Motion and the Solicitation Procedures set forth herein.[2]

---

[1]   The last four digits of the Debtor's federal tax identification number are 0914.  The principal address for the Debtor is 10026 Old Ridge Road, Ashland, Virginia 23005.

[2]   Capitalized terms used but not defined herein shall have the meanings set forth in the Motion or the Disclosure Statement, as applicable.  A copy of the Motion, the Disclosure Statement and the Plan can be obtained from: (a) the Voting and Claims Agent (i) at its website at www.gardencitygroup.com/cases/bip, (ii) by writing to WBP Bankruptcy Administration, c/o GCG, PO Box 9550, Dublin, Ohio, 43017-4850, (iii) by calling (888) 291-9927 or (iv) by emailing wbpsolicitation@gcginc.com; or (b) for a fee via PACER at http://www.vaeb.uscourts.gov/.

## A.     The Record Date

The Court has approved **October 5, 2011**, as the voting record date (the "Record Date") for purposes of determining, among other things, which Holders of Claims are entitled to vote on the Plan.

## B.     The Voting Deadline

The Court has approved **November 14, 2011 at 5:00 p.m. prevailing Eastern Time**, as the deadline by which Holders of Claims entitled to vote to accept or reject the Plan must deliver Ballots voting to accept or reject the Plan (the "Voting Deadline").  To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by using the return envelope provided or by delivery by:  (a) first class mail; (b) overnight courier; or (c) personal delivery, so that they are **actually received** no later than the Voting Deadline by the Voting and Claims Agent, The Garden City Group, Inc. ("GCG").  The Ballots must clearly indicate the appropriate return address.  Ballots returnable to GCG should be sent either by mail to:  WBP Bankruptcy Administration, c/o GCG, PO Box 9550, Dublin, Ohio, 43017-4850; or by overnight courier or hand delivery to WBP Bankruptcy Administration, c/o GCG 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017.

## C.     Solicitation Procedures

1.     The Solicitation Package:  The following documents and materials constitute the solicitation package (the "Solicitation Package"):

> a.     a cover letter, substantially in the form attached as **Exhibit C** to the Motion:  (i) describing the contents of the Solicitation Package and instructions on how paper copies of any materials that may be provided in CD-ROM format can be obtained at no charge; and (ii) urging the Holders in each of the Voting Classes to vote to accept the Plan;

> b.     if applicable, a letter from the Debtor's significant constituents recommending the Holders in each of the Voting Classes to vote to accept the Plan and otherwise support the Plan and all transactions contemplated thereby;

> c.     the Disclosure Statement Order and Solicitation Procedures;

> d.     an appropriate form of Ballot and Ballot instructions, if applicable (with a pre-addressed, postage pre-paid return envelope);

> e.     the Confirmation Hearing Notice;

K&E 18453722.9

      f.      the approved form of the Disclosure Statement (together with the Plan, which is **Exhibit A** to the Disclosure Statement) in either paper or CD-ROM format; and

      g.      such other materials as this Court may direct.

2.    <u>Distribution of the Solicitation Packages</u>:  The Solicitation Packages shall be served on the following entities:

      a.      Holders of Claims for which Proofs of Claim have been timely Filed, as reflected on the Claims Register as of the Record Date; <u>provided</u>, <u>however</u>, that Holders of Claims to which an objection is pending at least 15 days before the Confirmation Hearing shall not be entitled to vote on the disputed portion of their Claim unless such Holders become eligible to vote through a Resolution Event in accordance with section D.4 below;

      b.      all Entities listed in the Schedules shall receive Solicitation Packages with the exception of those Claims that are scheduled as contingent, unliquidated or Disputed, or in zero or unknown amount, or any combination thereof (excluding such scheduled Claims that have been superseded by a timely Filed Proof of Claim); <u>provided</u> <u>however</u>, that Holders of Claims that are scheduled as contingent, unliquidated or Disputed for which the applicable General or Governmental Bar Date for such Holder has not passed shall receive Solicitation Packages;[3] and

      c.      Holders whose Claims arise pursuant to an agreement or settlement with the Debtor, as reflected in a document Filed with this Court, in an order of this Court or in a document executed by the Debtor pursuant to authority granted by this Court, in each case regardless of whether a Proof of Claim has been Filed or whether the Claim is included in the Schedules.

The Debtor shall make every reasonable effort to ensure that Holders of more than one Claim in a single Voting Class receive no more than one Solicitation Package on account of such Claims.

3.    <u>Distribution of Materials to the Core Group, the 2002 List and Counterparties to Executory Contracts</u>:  The Core Group, the 2002 List as of the Record Date, and counterparties to executory contracts and unexpired leases that have not been assumed or rejected as of the

---

[3]    Pursuant to Bankruptcy Rule 3003(c)(2), with respect to all Entities that are listed on the Schedules as having a Claim or a portion of a Claim that is contingent, unliquidated or Disputed, or any combination thereof, where such Entity did not timely File a Proof of Claim, the Debtor shall not distribute any documents or notices on account of such Claim, except a Confirmation Hearing Notice.

K&E 18453722.9

Record Date shall be served a copy of the Disclosure Statement Order with the Solicitation Procedures, the Confirmation Hearing Notice, and either, paper copies of, or a CD-ROM containing, the Disclosure Statement and all exhibits to the Disclosure Statement, including the Plan.  Any Entity that receives a CD-ROM but desires a paper copy of these documents, and any other Entity that desires a CD-ROM or a paper copy of the Solicitation Package (except the Ballots), may request such copies from the Voting and Claims Agent in accordance with footnote 3 hereof.

4.    <u>Publication of Confirmation Hearing Notice</u>:  To provide notice to those persons or Entities that may not receive notice of the Confirmation Hearing by mail, the Debtor shall, following the Disclosure Statement Hearing, publish the Confirmation Hearing Notice, which shall contain, among other things, the Plan Objection Deadline, the Voting Deadline and the date that the Confirmation Hearing is first scheduled in *The Wall Street Journal* and *Richmond Times-Dispatch* on a date that is no less than 21 days before the Plan Objection Deadline.

**D.    Voting and General Tabulation Procedures**

1.    <u>Who May Vote</u>:  Only the following Holders of Claims in Voting Classes are entitled to vote:

a.    Holders of Claims for which Proofs of Claim have been timely Filed, as reflected on the Claims Register as of the Record Date; <u>provided</u>, <u>however</u>, that Holders of Claims subject to a pending objection shall not be entitled to vote the disputed portion of their Claim unless they become eligible to vote through a Resolution Event, as set forth in more detail in section D.4 below;

b.    Holders of Claims that are listed in the Debtor's Schedules, with the exception of those Claims that are scheduled as contingent, unliquidated or Disputed or in a zero or unknown amount (excluding such scheduled Claims that have been superseded by a timely Filed Proof of Claim);

c.    Holders whose Claims arise pursuant to an agreement or settlement with the Debtor, as reflected in a document Filed with this Court, in an order of this Court or in a document executed by the Debtor pursuant to authority granted by this Court, in each case regardless of whether a Proof of Claim has been Filed or whether the Claim is included in the Schedules; and

d.    the applicable transferee of a transferred claim or nominee, as reflected in the relevant records as of the Record Date.

The assignee of any transferred or assigned Claim shall be permitted to vote such Claim only if the transfer or assignment has been fully effectuated pursuant to the procedures dictated by Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on or before the Record Date.

4

       2.    <u>Establishing Claim Amounts</u>:  In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each vote:

       a.    the amount of the Claim settled and/or agreed upon by the Debtor, as reflected in a court pleading, stipulation, agreement or other document Filed with this Court, in an order of this Court or in a document executed by the Debtor pursuant to authority granted by this Court;

       b.    the amount of the Claim Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth herein;

       c.    the amount of the Claim contained in a Proof of Claim that has been timely Filed by the applicable Bar Date (or deemed timely Filed by this Court) except for any amounts in such Proofs of Claim asserted on account of any interest accrued after the Petition Date; <u>provided</u>, <u>however</u>, that Ballots cast by Holders whose Claims are not listed on the Schedules, but who timely File a Proof of Claim in an unliquidated or unknown amount that are not the subject of an objection, shall count towards satisfying the numerosity requirement under section 1126(c) of the Bankruptcy Code and shall count as Ballots for Claims in the amount of $1.00 for the sole purpose of satisfying the dollar amount provisions under section 1126(c) of the Bankruptcy Code; <u>provided</u> <u>further</u>, <u>however</u>, that to the extent the amount of the Claim contained in the Proof of Claim is different from the amount of the Claim set forth in a document Filed with this Court as referenced in section D.1.c. herein, the amount of the Claim in the document Filed with this Court shall supersede the amount of the Claim set forth on the respective Proof of Claim; and

       d.    the amount of the Claim listed in the Schedules; <u>provided</u>, <u>however</u>, that such Claim is not scheduled as contingent, unliquidated or Disputed or in a zero or unknown amount, and has not been paid; <u>provided</u> <u>further</u>, <u>however</u>, that if the Holder of a contingent, unliquidated or Disputed Claim or a Claim in a zero or unknown amount is allowed to vote its Claim because the applicable Bar Date has not passed, the amount of such Claim shall be the amount listed in the Schedules.

       The amount of the Claim established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts that the Debtor provides on the Ballot through the Voting and Claims Agent are not binding for any purposes, including for purposes of voting and distribution.

       3.    <u>General Ballot Tabulation</u>:  The following voting procedures and standard assumptions shall be used in tabulating ballots:

a.      except as otherwise provided herein, unless the Ballot being furnished is timely submitted to the Voting and Claims Agent on or before the Voting Deadline, the Debtor shall reject such Ballot as invalid and decline to count such Ballot in connection with Confirmation of the Plan;

b.      the Voting and Claims Agent shall date and time-stamp all Ballots when received.  The Voting and Claims Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court;

c.      an original executed Ballot is required to be submitted to the Voting and Claims Agent.  A Ballot delivered to the Voting and Claims Agent by facsimile, email or any other electronic means is not valid and shall not be counted in connection with Confirmation of the Plan;

d.      the Debtor shall File a voting report (the "Voting Report") with this Court no later than five calendar days before the Confirmation Hearing.  The Voting Report shall, among other things, delineate every irregular Ballot including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures, lacking necessary information, received via facsimile or electronic mail, or damaged.  The Voting Report shall indicate the Debtor's intentions with regard to such irregular Ballots;

e.      the Debtor, subject only to contrary order of this Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the expiration of the Voting Deadline, and any such waivers shall be documented in the Voting Report;

f.      neither the Debtor, nor any other Entity, shall be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any such Entities incur any liability for failure to provide such notification; provided, however, that the Voting and Claims Agent shall be authorized, but not required, to contact any Holders of Claims who submit Ballots that are defective or irregular, but curable, to alert such Holders that their Ballots will not be counted absent curative action;

g.      subject to any contrary order of this Court, the Debtor reserves the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtor, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections shall be documented in the Voting Report;

h.      the method of delivery of Ballots to the Voting and Claims Agent is at the election and risk of each Holder of a Claim or Equity Interest.  Except as

otherwise provided herein, such delivery shall be deemed made only when the Voting and Claims Agent **actually** **receives** the originally-executed Ballot;

i.     no Ballot should be sent to the Debtor, the Debtor's agents (other than the Voting and Claims Agent), or the Debtor's financial or legal advisors, and if so sent, shall not be counted;

j.     if multiple Ballots are received from the same Holder of a Claim with respect to the same Claim before the Voting Deadline, the last valid Ballot received will supersede and revoke any earlier-received Ballot;

k.     Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any such votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan shall not be counted.  Further, if a Holder has multiple Claims within the same Class, the Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

l.     a person signing a Ballot in the capacity of a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or other fiduciary or representative of a Holder of a Claim must indicate such capacity when signing, and if required or requested by the Voting and Claims Agent, the Debtor or this Court, must submit proper evidence to the requesting party to so act on behalf of such Holder;

m.     unless otherwise waived by the Debtor, and subject only to contrary order of this Court, any defects or irregularities in connection with deliveries of Ballots must be cured before the Voting Deadline or such Ballots shall not be counted;

n.     if a Claim has been estimated or otherwise Allowed for voting purposes by an order of this Court pursuant to Bankruptcy Rule 3018(a), such Claim shall be temporarily Allowed in the amount so estimated, or Allowed by this Court for voting purposes only, and not for purposes of distribution;

o.     if an objection to a Claim is Filed, such Claim shall be treated in accordance with the procedures set forth herein; and

p.     the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot received by the Voting and Claims Agent after the Voting Deadline; (ii) any Ballot received by the Voting and Claims Agent by facsimile, email or any other electronic means; (iii) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (iv) any Ballot cast by

7

an Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (v) any Ballot cast for a Claim scheduled as contingent, unliquidated or Disputed for which the applicable Bar Date has passed and no Proof of Claim was timely Filed; (vi) any unsigned Ballot, or Ballot without an original signature; (vii) any Ballot not marked to accept or reject the Plan, or any Ballot marked both to accept and reject the Plan; and (viii) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein.

4.      Temporary Allowance of Claims for Voting Purposes:  If a Holder of a Claim is subject to a pending objection as of the Record Date, the Holder of such Claim cannot vote unless one or more of the following events have taken place at least five Business Days before the Voting Deadline:  (a) this Court enters an order, pursuant to section 502(b) of the Bankruptcy Code, and after notice and a hearing, allowing such claim; (b) this Court enters an order, after notice and a hearing, temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a); (c) execution of a stipulation or other agreement between the Holder of such Claim and the Debtor resolving the objection and allowing such Claim in an agreed upon amount; (d) execution of a stipulation or other agreement between the Holder of such Claim and the Debtor temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or (e) the Debtor voluntarily withdraws the pending objection to such Claim (each, a "Resolution Event").  No later than two Business Days after a Resolution Event, the Voting and Claims Agent shall distribute a Solicitation Package with a Ballot and a pre-addressed, postage pre-paid envelope to the relevant Holder of such a Claim, which must be returned according to the instructions on the Ballot included in the Solicitation Package by no later than the Voting Deadline.

If the Holder of a Claim receives a Solicitation Package and the Debtor objects to such Claim after the Record Date but at least 15 days before the Confirmation Hearing, the Debtor's notice of objection shall inform such Holder of the rules applicable to Claims subject to a pending objection and the procedures for temporary allowance for voting purposes.  Additionally, if the Holder of a Claim receives a Solicitation Package and the Debtor objects to such Claim less than 15 days before the Confirmation Hearing, the Claim shall be deemed temporarily allowed for voting purposes only without further action by the Holder of such Claim and without further order of this Court.

5.      Forms of Notices to Unclassified Claims, Unimpaired Classes and Equity Interests:  Holders of Claims that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code and Holders of Class 1 Claims that are Unimpaired are not entitled to vote because they are Unimpaired or are otherwise deemed to accept the Plan under section 1126(f) of the Bankruptcy Code, and shall only receive the Confirmation Hearing Notice and the Non-Voting Status Notice-Deemed to Accept.  Holders of Class 6 Equity Interests are also not entitled to vote on the Plan, given that they are receiving no distribution under the Plan, and are conclusively deemed to reject the Plan, and shall only receive the Confirmation Hearing Notice and the Non-Voting Status Notice-Deemed to Reject.   The Non-Voting Status Notices,

K&E 18453722.9

substantially in the forms attached to the Motion as **Exhibit E-1** and **Exhibit E-2**, shall instruct the Holders how they may obtain copies of the Solicitation Package (excluding Ballots).

**E.      Third Party Release, Exculpation and Injunction Language in the Plan**

**THE SETTLEMENT, THIRD PARTY RELEASE, EXCULPATION AND INJUNCTION LANGUAGE IN ARTICLE X OF THE PLAN SHALL BE INCLUDED IN THE DISCLOSURE STATEMENT AND FURTHER NOTICE WITH RESPECT TO SUCH PROVISIONS IS PROVIDED IN THE SOLICITATION NOTICE.**

**F.      Amendments to the Plan and the Solicitation Procedures**

**THE DEBTOR EXPRESSLY RESERVES THE RIGHT FROM TIME TO TIME TO AMEND THE TERMS OF THE PLAN IN ACCORDANCE WITH THE TERMS THEREOF (SUBJECT TO COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1127 OF THE BANKRUPTCY CODE).   THE DEBTOR EXPRESSLY RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THE SOLICITATION PROCEDURES TO BETTER FACILITATE THE SOLICITATION PROCESS.**

K&E 18453722.9